IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:09-CR-216-FL

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | **UNITED STATES' MEMORANDUM** |
| | ) | **IN SUPPORT OF PROPOSED** |
| DANIEL PATRICK BOYD, a/k/a | ) | **PROTECTIVE ORDER** |
| "Saifullah" | ) | |
| HYSEN SHERIFI | ) | |
| ANES SUBASIC | ) | |
| ZAKARIYA BOYD, a/k/a/ "Zak;" | ) | |
| DYLAN BOYD, a/k/a "Mohammed;" | ) | |
| MOHAMMAD OMAR ALY HASSAN; | ) | |
| and | ) | |
| ZIYAD YAGHI, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

The United States of America, by and through the United States Attorney for the Eastern District of North Carolina, hereby submits this memorandum in support of the proposed protective order submitted as D.E. 149-2 on September 25, 2009. For the reasons explained below, the Court should grant "other appropriate relief" pursuant to Rule 16 of the Federal Rules of Criminal Procedure, and include in the protective order the provision that the Court may consult with the United States regarding the defendants' request to disseminate sensitive but unclassified materials to third parties in relation to the case.

## I. STATEMENT OF THE CASE

The Government and Defense have agreed to stipulate to many protections which satisfy most of the Government's concerns regarding the protection of national security interests. These protections involve obtaining <u>in</u> <u>camera</u>, <u>ex</u> <u>parte</u> permission from the Court to disclose SBU materials to potential third-party witnesses and then providing a copy of the protective order itself to these potential witnesses. Nonetheless, there remains a final protective measure which the Defense is unwilling to accept: in an instance in which the Judge determines that providing SBU materials to a proffered defense witness raises a potential risk to national security, the Judge ***may*** consult with the Government after first giving the Defense the option of withdrawing their request. The Defense is concerned that this disclosure to the Government would interfere with "confidential planning and strategy and would significantly hamper their ability to best defend themselves." <u>See</u> Joint Report of Efforts to Provide Proposed Protective Order, D.E. 149, at 3.

In addressing this disagreement, it is first important to note the efficiencies that will be gained if the United States is able to declassify all of the materials subject to discovery in this case. Because of the necessary but burdensome requirements of the Classified Information Protection Act (CIPA), providing classified

matters in their classified form will be restrictive upon the defense, extremely burdensome upon the defense, and will take much longer to provide to the defense. Indeed, should the defense seek disclosure of classified information in pretrial or trial proceedings, the government's attorney and the Court must be notified, and the government has the opportunity to request a hearing on the proposed use.[1]  Therefore, the Government has sought to declassify those materials that under any reasonable argument could be deemed relevant and helpful to the defense. These materials, once declassified, nonetheless remain sensitive.

Arguably, much of this evidence is not relevant and helpful to the defense; however, the Government is attempting to avoid the necessity of an in camera and ex parte review by the Judge as to substantial amounts of materials, which would take place under the procedures set forth in CIPA. While it certainly will be necessary to hold CIPA proceedings, the Government is seeking to limit the amount of materials to be addressed through such proceedings and to provide anything that bears the remote possibility of being discoverable.  Such an expansive approach is possible to accomplish where certain protective measures are in place.

In making such an effort, the Government has many factors to consider. One overriding factor is risk to national security. The

---

[1] For a summary of the CIPA protections afforded materials that remain classified, see United States v. Abu Ali, 528 F.3d 210, 245-248 (4th Cir. 2008).

3

concerns of the United States Intelligence Community (IC) very much guide the Government's decisions in determining what risks may exist to national security if certain classified matters become declassified and publicly distributed. Indeed, the IC must be consulted during the declassification process. In this particular instance, the Defense has agreed to stipulate to the fact that these materials are SBU materials insofar as "such material may include information relevant to ongoing national security investigations and prosecutions; information provided to the United States by foreign law enforcement, some of which may have led to prosecutions in other countries that are sensitive to pre-trial publicity; and materials implicating the privacy interests the defendant and third parties." See Proposed Protective Order, D.E. 149-2, at 1-2. In this particular instance, the very reason for this stipulation rises from the fact that "the government believes in good faith that it has a compelling interest in preventing certain sensitive but unclassified discovery materials from being disclosed to anyone not a party to the court proceedings in this matter." Id.

The Government, including the IC, becomes greatly concerned where potential exists for disclosure of SBU materials to those that are not a party to the criminal proceedings and who are unforeseeable recipients of the SBU materials, and there are insufficient protections in place. When such protections are not in place, the likelihood of successfully obtaining declassification

is diminished. Thus, what could otherwise be declassified and provided to the defense much earlier bears the possibility of instead being supplied under a CIPA framework. At this point it is worth emphasizing that the issue is not whether certain materials are, or are not, required discovery under either statute or case law, but only the means by which certain materials will be provided.

## II. ARGUMENT

Under Federal Rule of Criminal Procedure 16(d), "At any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief." In determining whether such restriction is appropriate, "district courts may consider, inter alia, 'the protection of information vital to the national security.'" United States v. Lindh, 198 F. Supp. 2d 739, 742 (E.D. Va. 2002), citing Rule 16, Fed. R. Crim. P., Advisory Committee Notes to 1966 Amendment; Alderman v. United States, 394 U.S. 165, 185 (1969). The Government seeks for this Court to grant "other appropriate relief" in the form of a protective order that sufficiently protects the Government's concerns that disclosure of SBU materials may cause risk to national security. Here, the defense has agreed to stipulate to the existence of those concerns insofar as the Government believes they exist in good faith. See Proposed Order, D.E. 149-2 and 149-3, at 1-2.

Similar to the present instance, in Lindh, the District Court for the Eastern District of Virginia addressed a situation in which

5

the Government and defense were unable to come to a final stipulation for a protective order addressing SBU materials relating to national security. Lindh, 198 F. Supp. at 742. The defense in Lindh likewise asserted that the prohibition against defense counsel disclosing information contained in redacted interview reports to any potential witnesses who are not experts or investigators, without notice to the government and Court approval, infringed on its ability to prepare for trial. The defense argued that requiring disclosure to the government of the identity of the witnesses who would be receiving such information impermissibly burdened the right to prepare and present a full defense at trial. Id. at 743

While taking into account that "courts should weigh the impact this [protective order] might have on a defendant's due process right to prepare and present a full defense at trial," the Court concluded that in such instances where the defense sought to disclose SBU materials to a detainee, "it may be appropriate for the issue to be decided by the Court with notice to the government, to assure that the Court is fully apprised of the risks attendant to disclosure of unclassified protected information to a specific detainee." Id. at 742-43.

As in Lindh, the protective measure currently sought by the Government provides the Court with the ability to make an informed decision. This safety measure will greatly benefit the overall discovery process. If the protective measure at issue is not in

6

place, and there exists a situation where the Court has any concerns regarding national security, the Court may simply deny a defense request to provide SBU materials as to that potential witness in order to ensure the protection of national security interests. The protective measure at issue, however, allows for the Court to address that concern with the Government. This in turn allows for a much more informed decision by the Court; and where the Government either has no objection or an objection that the Court finds unpersuasive, the Defense will be able to proceed. The alternative is a simple denial because the Court had no ability to confer with the Government.

While <u>Lindh</u> dealt with allowing the Court to confer with the Government where the potential witnesses to receive SBU materials were detainees and the present instance involves a greater class of people (i.e., any potential witness who is not the author of the SBU materials), that fact is of little relevance. In the present instance, the Government has refrained from naming a specific class of people or specific individuals. The entire point of the protective order is to avoid any risk to national security. As such, the Government is comfortable that the Court will recognize such a situation should it exist; therefore attempting to identify specific individuals or a class of individuals bears the risk of being overly inclusive, particularly when the concern is providing SBU materials to unforeseeable individuals.

Finally, this is not an issue involving the inability of the

Defense to consider or make use of the SBU materials. Certainly, the Defense has the ability to avoid the situation altogether by framing their questions and interviews with potential witnesses in such a manner as to avoid disclosure of the SBU materials. While this may not be possible in every instance, it reasonably would seem to exist for many situations. This is particularly the case when the only SBU materials at issue are those for which the potential witness is not the author.

This Court has the power under Rule 16 to order limitations upon discovery. The present disputed limitation is a protective measure sought for good cause, national security concerns. This protective measure applies to an extremely limited scenario; in fact, there currently exists no reason to believe that it will ever be necessary to utilize this protective measure. There is no reason to believe that the protective order sought by the Government is reasonably likely to hamper the ability of the defense to defend themselves. In reality, just the opposite is true. The assurance that exists by presence of this protective measure will likely result in a greater amount of declassified evidence. Additionally, the existence of this measure presents a greater likelihood that this Court would permit disclosure of SBU materials because in the instance that this Court did have a concern that rose to the level requiring input from the Government, there exists a good possibility that the Government could simply inform the Court that no concern exists and the SBU materials may

be disclosed.

III. CONCLUSION

For these reasons, the proposed security measure at issue should be included in the protective order entered by the Court. Such inclusion will facilitate the declassification and production process and ultimately assist, rather than hamper, the defense's preparation for trial.

Respectfully submitted this 20th day of October, 2009.

>GEORGE E. B. HOLDING
>United States Attorney
>
>BY:/s/Barbara D. Kocher
>BARBARA D. KOCHER
>JASON H. COWLEY
>Assistant U.S. Attorneys
>310 New Bern Avenue, Suite 800
>Raleigh, NC 27601
>Tel: 919-856-4530
>Fax: 919-856-4487
>Email: barb.kocher@usdoj.gov
>State Bar No.  16360
>Email: jason.cowley@usdoj.gov
>State Bar No.  32636
>
>JASON KELLHOFER
>Trial Attorney
>U.S. Department of Justice
>National Security Division
>Counter-Terrorism Section
>10th St. And Penn. Ave., N.W.
>Room 2740
>Washington, DC 20530
>Tel: (202 353-7371
>Fax: (202) 353-0778
>Email: jason.kellhofer@usdoj.gov
>OH Bar No.  0074736

CERTIFICATE OF SERVICE

This certifies that on this 20th day of October, 2009, I have served a copy of the foregoing on the defendants in this action by electronic filing as follows:

| | |
|---|---|
| Debra C. Graves<br>Federal Public Defender<br>150 Fayetteville St. Mall<br>Suite 450<br>Raleigh, NC 27601-88005 | R. Daniel Boyce<br>Boyce & Isley, PLLC<br>P.O. Box 1990<br>Raleigh, NC 27602-1990 |
| Rosemary Godwin<br>Federal Public Defender<br>150 Fayetteville St. Mall<br>Raleigh, NC 27601-2919 | John D. McCullough<br>Stubbs & Perdue, PA<br>310 Craven St.<br>P.O. Box 1654<br>New Bern, NC 28563 |
| Robert J. McAfee<br>McAfee Law, P.A.<br>P.O. Box 905<br>New Bern, NC 28563 | Myron T. Hill, Jr.<br>Browning & Hill<br>200 E. Fourth St.<br>Greenville, NC 27835 |
| John Keating Wiles<br>133 Fayetteville Street<br>P.O. Box 1029<br>Raleigh, NC 27602 | Joseph E. Zeszotarski,Jr.<br>Poyner & Spruill<br>P.O. Box 10096<br>Raleigh, NC 27605 |

BY:  /s/ Barbara D. Kocher
Assistant U.S. Attorney
310 New Bern Avenue, Suite 800
Raleigh, NC 27601
Tel: 919-856-4530
Fax: 919-856-4487
Email: barb.kocher@usdoj.gov
State Bar No.  16360