UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:09-CR-216-FL

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DANIEL PATRICK BOYD, ET AL. | DEFENDANTS' JOINT MEMORANDUM IN SUPPORT OF A FAIR PROTECTIVE ORDER |

      On behalf of defendant Daniel Patrick Boyd, and with the consent of counsel for Mr. Boyd's co-defendants in the above-captioned case, undersigned co-counsel respectfully submit this joint response to the government's proposed protective order. Specifically, defendants object to the government's insistence upon provisions that require defendants to identify potential witnesses and specify information shared with those persons, and those that authorize the pre-trial disclosure of this privileged information to the government. Such provisions would unnecessarily and unfairly deprive defendants of their due process rights to prepare and present a complete defense and Sixth Amendment rights to effective assistance of counsel, and erode the protection afforded by the attorney work-product privilege.

**BACKGROUND**

      On September 25, 2009, the government submitted a report summarizing the parties' efforts to provide the Court with a jointly proposed protective order regarding unclassified or declassified information which the government categorized as "sensitive discovery materials." (Docket Entry

("DE") 149).[1] The report identified one provision on which the parties could not agree. *Id.* That provision would require the defendants to seek authorization from the Court before disseminating information from "sensitive discovery materials" to potential fact witnesses, and would permit the government to have pretrial access to the names of these potential witnesses and the content of any "sensitive" information disseminated to these witnesses. *Id.*[2]

On October 7, 2009, following submission of this status report, the Court entered an order requesting supporting memoranda from the government and from defendants regarding the parties'

---

[1] The government does not delimit the scope of "sensitive" information, which it describes as:

> material [that] may include information relevant to ongoing national security investigations and prosecutions; information provided to the United States by foreign law enforcement, some of which may have led to prosecutions in other countries that are sensitive to pre-trial publicity; and materials implicating the privacy interests [of] the defendant and third parties.

(DE 168, p. 4); *see also*, DE 149, p. 3.

[2] The disputed provisions read:

> [I]t is expressly understood that counsel for the defendant or co-counsel may not disseminate any of such sensitive materials to witnesses or potential witnesses that are not statements of said witnesses or potential witnesses. The defendant may seek relief from this provision as to a particular item or items of discovery by application to the Court of intent to disseminate particular identified item(s) to a witness which are not the witnesses own statements and the purpose in doing so. The application shall be under seal. No disclosure of the item(s) to the witness(es) shall be made until the Court so permits. The Court, after notifying the defense and giving the defense the opportunity to withdraw its application to disseminate the particular item(s) to the particular witness(es), may consult with the Government regarding any dissemination requests pursuant to this paragraph.

(DE 149, pp. 2-3). The government only identifies the final sentence as a disputed provision, *id.*, but this final sentence necessarily relates to and depends upon the entire passage quoted here.

respective positions on the disputed provision. (DE 161). The government filed its supporting memorandum on October 20, 2009. (DE 168).

## ARGUMENT

Rule 16(d) of the Federal Rules of Criminal Procedure provides in relevant part:

> At any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief. The court may permit a party to show good cause by a written statement that the court will inspect *ex parte*. If relief is granted, the court must preserve the entire text of the party's statement under seal.

Fed. R. Crim. P. 16(d)(1).

As this provision expressly requires, the party seeking a protective order must demonstrate "good cause" for the requested controls or limits. *See United States v. Wecht*, 484 F.3d 194, 211 (3rd Cir. 2007) (applying Rule 16(d)(1) and concluding, "[g]ood cause is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking closure") (internal quotations and citation omitted). If the government relies upon national security grounds to control or restrict defendant's access to or use of discoverable information, the government must show such controls are "*vital* to national security." Fed. R. Crim. P. 16, Advisory Committee Notes to 1966 Amendment (emphasis added); *see also*, *United States v. Lindh*, 198 F. Supp. 2d 739, 741-42 (E.D. Va. 2002). Moreover, even if the government can show good cause to restrict or control discovery in order to protect "vital" national security interests, "courts should take care to ensure that the protection afforded to such information is no broader than is necessary to accomplish the national security goals." *Id.* at 741. Finally, a court must also consider whether the restriction or control sought by the government negatively impacts "a defendant's due process right to prepare and present a full defense at trial." *Id.* at 742 (emphasizing a court must consider defendant's due process rights when determining whether to restrict defendant's use of or access to discoverable

information and when determining the scope of such a restriction).

For the following reasons, application of these principles demonstrates the government cannot show good cause to support its requested pretrial access to defendants' use of unclassified information the government categorizes as "sensitive." First, the invasive restriction and controls sought by the government are unnecessarily over-broad, and rest upon merely speculative, not demonstrable, risks. Second, less-intrusive means exist that address the government's concerns and preserve defendants' essential trial rights.

First, the restrictions sought by the government are over-broad and lack sufficient specificity to demonstrate anything more than mere speculation that these restrictions are "vital" to our national security. Contrary to the *Lindh* case, where the government identified particular potential witnesses (13 suspected al Qaeda members detained at Guantanamo), *id.* at 741, here the government has not identified any person or group of persons to whom disclosure of information it categorizes as sensitive would endanger "vital" national security interests. DE-168, p. 7 ("In the present instance, the Government has refrained from naming a specific class of people or specific individuals."). The government contends its decision not to provide this Court with the same specificity it provided the court in *Lindh* is to avoid "being overly inclusive." (DE 168, p. 7). Such a counter-intuitive explanation lacks common sense support. One does not avoid over-breadth with the absence of any limitation on the persons or groups of persons. Rather, this absence of specificity means the restrictions and controls sought by the government could apply to any person in the world who might have information relevant to this case.

The government's proposed restrictions and controls would also encompass an equally over-broad category of "sensitive" information. Unlike in *Lindh*, where the protective order identified specific information (13 detainee interview reports), 198 F. Supp. 2d at 741-42, here the government

has asserted that a broad and amorphous category of unclassified information is sufficiently sensitive to implicate vital national security interests. Clearly, comparing information from al Qaeda detainees at a time when recently committed US armed forces were actively searching for Usama bin Laden on the battlefield, with the expansive description of "sensitive" information the government purports to use in this case is like comparing apples to oranges. Such over-breadth renders any purported national security risk as merely speculative. Even the government apparently concedes any risk of dissemination in this case is sheer speculation. (DE 168, pp. 5, 8) (stating, "disclosure of [sensitive] materials *may cause risk* to national security," and asserting, "there *currently exists no reason to believe* that it will ever be necessary to utilize this protective measure") (emphasis added). In sum, the government's reliance on these speculative risks does not satisfy its burden to demonstrate a "clearly defined and serious" injury that a good cause showing requires. *Wecht*, 484 F.3d at 211.

Second, even if the government could demonstrate any credible risks, less restrictive means exist that address the government's concerns without violating defendants' trial rights. Here, the government seeks to exert even more control over the parties' preparation for trial than it did in the *Lindh* case.[3] There the court found that requiring defendants' potential witnesses to sign a

---

[3] Here, the prosecution also attempts to use the government's classification authority to exert control over the provisions of the protective order, stating that if its version of the protective order is not accepted and entered by the Court, then "what could otherwise be declassified and provided to the defense much earlier bears the possibility of instead being supplied under a CIPA framework." (DE 168, pp. 4-5). The defendants object to the notion that the government can essentially penalize the defense, and make the discovery review much more cumbersome, by arguing that it simply will not declassify materials if the Court does not accept the government's proposals. The protective order process suggested by the defendants provides sufficient security to alleviate the government's concerns, without impinging upon the legitimate defense issues raised herein, and provides sufficient safeguards to permit declassification of the materials at issue. The government should not be permitted to dictate the terms of protective order by threatening to refuse to declassify information (or to classify previously "unclassified"

memorandum of understanding regarding material subject to the protective order and to submit that to the court *ex parte* sufficiently addressed the government's concerns for national security. *Lindh*, 198 F. Supp. 2d at 742-43. Of equal importance, this mechanism protected the defendant's "right to prepare and present a full defense at trial . . .." *Id.* at 743.

Employment of a similar mechanism in this case adequately addresses the government's concerns and protects the defendants' due process rights, Sixth Amendment rights to effective assistance of counsel, and their attorney work-product material. Specifically, defendants propose a provision that would oblige counsel to submit, *ex parte* and under seal, a memorandum of understanding regarding dissemination of "sensitive" material signed by each potential witness who is not an expert or an investigator prior to dissemination of sensitive information to that person. As in the *Lindh* case, here the government would not have pretrial access to such filings, the information contained therein, or to defendants' list of potential witnesses, just as defendants will not have pretrial access to this information from the government.

**CONCLUSION**

For all the above reasons, the government has failed to demonstrate good cause to warrant imposition of its proposed intrusion into defendants' pretrial use of unclassified information. To more fully and fairly address the parties' disputed issues, defendants respectfully request a hearing in this matter.

---

material, DE 168, pp. 1, 4) if its specific requests are not accepted, where the alternatives provided by the defense more than satisfy any legitimate government security concerns.

Respectfully submitted this 3rd day of November of 2009.

        THOMAS P. McNAMARA
        Federal Public Defender

        */s/ Rosemary Godwin*
        ROSEMARY GODWIN
        Assistant Federal Public Defender
        Attorney for Defendant
        Office of the Federal Public Defender
        150 Fayetteville Street, Suite 450
        Raleigh, North Carolina 27601
        Telephone: 919-856-4236
        Fax: 919-856-4477
        E-mail: Rosemary_Godwin@fd.org
        N.C. State Bar No. 18217
        LR 57.1 Counsel
        Appointed

        */s/ Debra Carroll Graves*
        DEBRA CARROLL GRAVES
        Assistant Federal Public Defender
        Senior Trial Attorney
        Attorney for Defendant
        Office of the Federal Public Defender
        150 Fayetteville Street, Suite 450
        Raleigh, North Carolina 27601
        Telephone: 919-856-4236
        Fax: 919-856-4477
        E-mail: Debra_Graves@fd.org
        N.C. State Bar No. 13513
        LR 57.1 Counsel
        Appointed

*CERTIFICATE OF SERVICE*

   I HEREBY CERTIFY that a copy of the foregoing was served upon:

BARBARA D. KOCHER
Assistant United States Attorney
Suite 800, Federal Building
310 New Bern Avenue
Raleigh, NC 27601-1461

and

JASON HARRIS COWLEY
Assistant United States Attorney
Suite 800, Federal Building
310 New Bern Avenue
Raleigh, NC 27601-1461

by electronically filing the foregoing with the Clerk of Court on November 3, 2009, using the CM/ECF system which will send notification of such filing to the above.

   This the 3rd day of November, 2009.

                ***/s/ Rosemary Godwin***
                ROSEMARY GODWIN
                Assistant Federal Public Defender
                Attorney for Defendant
                Office of the Federal Public Defender
                150 Fayetteville Street, Suite 450
                Raleigh, North Carolina 27601
                Telephone: 919-856-4236
                Fax: 919-856-4477
                E-mail: Rosemary_Godwin@fd.org
                N.C. State Bar No. 18217
                LR 57.1 Counsel
                Appointed

*/s/ Debra Carroll Graves*
DEBRA CARROLL GRAVES
Assistant Federal Public Defender
Senior Trial Attorney
Attorney for Defendant
Office of the Federal Public Defender
150 Fayetteville Street, Suite 450
Raleigh, North Carolina 27601
Telephone: 919-856-4236
Fax: 919-856-4477
E-mail: Debra_Graves@fd.org
N.C. State Bar No. 13513
LR 57.1 Counsel
Appointed

Robert J. McAfee
McAfee Law, P.A.
Post Office Box 905
New Bern, NC 28563

Myron T. Hill, Jr.
Browning & Hill
200 East Fourth Street
Greenville, NC 27835

John Keating Wiles
Cheshire Parker Schneider Byrant & Vitale
Post Office Box 1029
Raleigh, NC 27602

Joseph E. Zeszotarski, Jr.
Poyner & Spruill
Post Office Box 10096
Raleigh, NC 27605

R. Daniel Boyce
Boyce & Isley, PLLC
Post Office Box 1990
Raleigh, NC 27602-1990

John D. McCullough
Stubbs & Perdue, P.A.
310 Craven Street
Post Office Box 1654
New Bern, NC 28563