JB

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:09-CR-216-FL

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | GOVERNMENT'S RESPONSE TO |
| v. ) | DEFENDANTS' MOTIONS TO |
| ) | CONTINUE ARRAIGNMENT AND |
| DANIEL PATRICK BOYD, et. al. ) | TRIAL |

The United States of America, by and through the United States Attorney for the Eastern District of North Carolina, hereby responds to defendants' Motions to Continue the Arraignment and Trial of this matter. In support of such response the Government shows unto the Court the following:

FACTUAL/PROCEDURAL BACKGROUND

The Grand Jury returned a true bill as to this matter on July 22, 2009. The detention hearing as to all defendants, with the exception of defendant Subasic, was completed on August 10, 2009. The Court has set a trial date of September 27, 2010, and a series of litigation deadlines preceding that. Both the Government and the defendants, under the supervision of Magistrate Judge Gates, have expended considerable resources and effort to put the preparation of this matter on such a footing that the Court's schedule could be met.

The Government has produced some 30,000 pages of written discovery, 170 recordings of consensually recorded conversations and some 800 sensitive audio recordings. Many of these recordings

1

contain phrases in foreign languages and some of them are comprised largely of foreign language. A significant portion of the recordings contain background noise which is also of evidentiary significance e.g. recordings of Jihadist rants and propaganda. Additionally, the Government produced some 400 other computer discs containing video clips, photographs, the results of searches, and miscellaneous other material of potential evidentiary significance. Additionally, the Government has produced the mirrored copies of the hard drives of some 23 computers seized from the defendants.

The Magistrate has mandated a cooperative effort between the defendants and the Government relative to the preparation of transcripts from the many recordings. The defense retained Transperfect, a transcription service. Transperfect was recommended to the Public Defender's Office by professional references. Transperfect had on a number of occasions been retained by other Public Defender's Offices. This was significant not only as a reference but because it streamlined the process of obtaining permission to contract with them. The first batch given to Transperfect contained the 170 discs of consensually recorded material. The Public Defender's Office produced to the Government transcripts of 159 of the 170 recordings within the April 16th deadline imposed by the Magistrate. The government designated 105 out of these 159. The designation identified the disc and the portions of the disc, the latter by time stamps.

The Government has had a team of six individuals, now supplemented with three arabic linguists (for a total of 9), working seven days a week to complete the process of reviewing and correcting the transcripts. The review process consists of four phases: 1) a comparison of the recording with the transcript by the agent team during which they have been inserting corrections, 2) a review by the cooperating individual who participated in the captured exchange, 3) a review by an Arabic or Albanian linguist to assure accuracy in translation and 4) a syncing of the transcript with the recording by this office's litigation support unit. The fourth phase cannot be done until all other phases including providing an opportunity for the defense to review and object is complete.

The transcripts prepared were not verbatim. In the interest of keeping the process moving as quickly as is feasible, many errors or lapses found in the transcripts have simply been corrected or completed during the review process. However, the scope of some of the problems encountered have required a major reworking. These have included significant portions of the recordings simply skipped. It appears that the transcription service, in an effort to move through the material quickly, on occasion treated pauses as indicating the end of the recording unaware that the recording resumed, sometimes for significant periods of time. Significant portions were described as

3

"inaudible" when they clearly were not. A variety of inaccuracies as to specific words were found. The transcripts failed to identify the speaker. Each of these requires a careful review of the original recordings to ensure an accurate correction. The public defenders' did contact this office to concede there were substantial problems with the transcriptions.

As referenced above, of the 170 consensually obtained recordings, 159 have been transcribed. The Government has designated 105 as necessary and returned 12 of those 105 for further processing by Transperfect. Of the remaining 93, all have been through the first review and 44 have been through the source review. The Government had hoped to have all 105 of these through the source review by May 31, 2010, but as of this writing, the final tally is not yet complete. However, there still remains some 50 recordings to be reviewed by the Arabic/Albanian linguists. The linguists report that their pace is only one or two transcripts per day. Only 15 have been turned over to defense counsel as completed. It was anticipated that perhaps 10 to 15 more will be completed by the May 31 deadline. The Government has recently been forced to concede it could not make the deadline for completing the review of the 105 transcripts designated.

There are some 800 additional sensitive recordings which have not yet been subject to designation by the Government nor transcription. The Government is not yet certain how many hours of

recordings are contained in this group. For the purpose of giving the Court some estimate as required by its status order, the Government arbitrarily picked 100 hours as the quantity it would ultimately designate from the 800 recordings and asked the transcription service to estimate how long it would take them to complete them. The service replied that it would take them approximately 14 weeks. As these recordings have not been evaluated for designation, the Government cannot yet enter into a contract for their transcription. However, even if they could be sent out tomorrow, their processing and return, though likely a rolling one, would not be complete for three and a half months. This equates with early September, assuming there are no unanticipated difficulties or delays, and would still leave the defendants in the midst of their initial review by the current trial date.

The defendants are still assessing the need to conduct depositions overseas. The Government's experience with arranging overseas depositions is that they require somewhere between 60 - 90 days to accomplish - after the process of obtaining a Court Order to conduct the deposition. To be useful for trial, these depositions obviously have to be transcribed as well. While a foreign witness can be simply served with a subpoena if he is willing to come voluntarily, such individuals cannot be compelled absent a successful Mutual Legal Assistance Treaty (MLAT)

5

application which can be very time consuming.  Additionally, given the nature of the charges, gaining clearance for the witness to enter the United States may also be a time consuming obstacle.

ARGUMENT

The Government has devoted considerable resources in an effort to meet the current September trial deadline.  It has had at any given time, nine people working seven days a week.  It has brought in three Arabic/Albanian linguists to assist in assuring the accuracy of the transcripts.  The defendants have also clearly expended considerable effort in a good-faith effort to comply with the scheduling order.  Magistrate Judge Gates has worked in a conscientious, systematic fashion to supervise these preparations.  However, the Defendants' arguments that the sheer quantity, complexity and difficulty of the evidence collected in this case does not afford the defendants an opportunity to be adequately prepared to defend by September, 2010, is understandable.

If required to, the Government will put a trial presentation together by September.  However, the relative burden on the defendants is very different.  In the final analysis, the Government must cull out and prepare sufficient proof to convict and can enlist the aid of agents in doing so.  The defendants however, must acquire a much more intimate knowledge of the full breadth of the available evidence.  This is especially so when substantial portions of the evidence, as is the reality in the case

at bar, are so powerfully injurious. Counsel for defendants are obligated to review all the evidence available. While the transcripts are certainly a great aid in doing so and are essential for effectively using and/or challenging the recordings at trial, they are not the evidence itself.

The issue has been raised as to whether one or more defendants, whose appearance in the recordings is minimal, ought to be able to complete their review at an earlier date than those appearing more frequently. The Government's position is that the conspiracy charged in this Indictment means that evidence entered in support of it implicates all defendants. All defendants need to be equally prepared. The Government would urge the Court to make this clear for fear of making the result of the eventual trial vulnerable to attack pursuant to a claim of ineffective assistance of counsel. See <u>Evits v. Lucey</u>, 469 U.S. 387, 396-99 (1985)(Due Process clause of the 14th Amendment guarantees the right to effective assistance of counsel); <u>Outten v. Kearney</u>, 464 F.3rd 401, 422-23 (3rd Cir. 2006)(counsel's failure to fully investigate and present mitigating evidence was prejudicial); <u>Stewart v. Wolfenberger</u>, 468 F.3rd 338, 361 (6th Cir. 2006)(counsel's failure to investigate favorable witness or to call two additional alibi witnesses was prejudicial).

It is clear that the Court has a considerable range of discretion within which to deal with Motions for Continuance.

However, while acknowledging this, the Supreme Court has also cautioned that "an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for a delay" will not be condoned. Morris v. Slappy, 461 U.S. 1, 11-12 (1983).

The Government is fully sympathetic to the Court's desire to move this matter through to completion as quickly as possible. However, the Government urges the Court to err on the side of caution. The defendants' need to examine all the recordings and potentially prepare transcripts of portions of these, not only those designated by the Government, obtaining access to foreign witnesses, the need to examine all the computer hard drives, and the need to review all of this material with their clients are all legitimate concerns presenting a daunting task of preparation. In the context of the case at hand, the Government believes that the defendants' request for continuance until the Spring, 2011, is justified. This truly is a complex, difficult matter with unique problems of preparation. The consumption of time and resources involved in a re-trial would be immense.

Respectfully submitted, this  1st  day of June, 2010.

> GEORGE E. B. HOLDING
> United States Attorney
>
> /s/ John S. Bowler
> JOHN S. BOWLER
> Assistant United States Attorney
> United States Attorney's Office
> 310 New Bern Ave., Suite 800
> Raleigh, NC 27601

```
Telephone (919) 856-4312
Fax (919) 856-4828
Email: john.s.bowler@usdoj.gov
State Bar NC # 18825


/s/Barbara D. Kocher
BARBARA D. KOCHER
Assistants U.S. Attorney
310 New Bern Avenue, Suite 800
Raleigh, NC 27601
Tel: 919-856-4530
Fax: 919-856-4828
Email: barb.kocher@usdoj.gov
State Bar NC # 16360


/s/Jason Kellhofer
JASON KELLHOFER
Trial Attorney
U.S. Department of Justice
National Security Division
Counter-Terrorism Section
```
10th St. And Penn. Ave., N.W.
```
Room 2740
Washington, DC 20530
Tel: (202 353-7371
Fax: (202) 353-0778
Email: jason.kellhofer@usdoj.gov
OH Bar # 0074736
```