IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:09-CR-216-FL

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DANIEL PATRICK BOYD, a/k/a | ) | |
| "Saifullah;" | ) | |
| HYSEN SHERIFI; | ) | ORDER |
| ANES SUBASIC; | ) | |
| ZAKARIYA BOYD, a/k/a "Zak;" | ) | |
| DYLAN BOYD, a/k/a "Mohammed;" | ) | |
| MOHAMMAD OMAR ALY HASSAN; | ) | |
| and | ) | |
| ZIYAD YAGHI, | ) | |
| | ) | |
| Defendants. | ) | |

This matter comes before the court on numerous motions to continue arraignment and trial Defendants Hysen Sherifi ("Sherifi") (DE ## 360, 377), Daniel Patrick Boyd ("Daniel Boyd") (DE ## 367, 374), Zakariya Boyd ("Zak Boyd") (DE # 373), Ziyad Yaghi ("Yaghi") (DE # 382), and Dylan Boyd ("Dylan Boyd") (DE # 387) join together to urge the court to allow additional time. Many motions to continue relating to certain pretrial deadlines also are pending.[1] The issues raised are ripe for ruling. For the reasons set forth below, the motions to continue arraignment and trial are ALLOWED. Arraignment is set for August 15, 2011. Trial shall commence September 19, 2011.

---

[1] These include: 1) motions to continue the deadline for designation of expert witnesses (DE ## 351, 378); 2) motions to continue the deadline for filing motions related to classified discovery (DE ## 375, 379, 384, 397, 400); and 3) motions to continue the deadline for filing motions relating to foreign depositions (DE ## 396, 398).

# BACKGROUND

## A. The Charges

Defendants are charged in a superseding indictment returned September 24, 2009, with conspiracy to provide material support to terrorists in violation of 18 U.S.C. § 2339A and conspiracy to murder, kidnap, maim and injure persons in a foreign country in violation of 18 U.S.C. § 956(a). The eleven-count indictment also charges Daniel Boyd with receiving a firearm through interstate commerce in violation of 18 U.S.C. § 924(b), two counts of possession of a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c), two counts of knowing sale of a firearm to a convicted felon in violation of 18 U.S.C. § 922(d)(1); two counts of making a false statement in violation of 18 U.S.C. § 1001(a)(2); knowing provision of ammunition to a convicted felon in violation of 18 U.S.C. § 922(d)(1); and conspiracy to kill a federal officer or employee in violation of 18 U.S.C. § 1117.

In addition to the conspiracy charges, Sherifi is charged with two counts of possession of a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c) and conspiracy to kill a federal officer or employee in violation of 18 U.S.C. § 1117. Zak Boyd also is charged with two counts of possession of a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c). Additionally, Dylan Boyd is charged with knowing sale of a firearm to a convicted felon in violation of 18 U.S.C. § 922(d)(1).

## B. Court Oversight of Discovery and Other Pretrial Proceedings

It long has been evident that this complex multi-defendant case requires expenditure of more time and resources than is typical. Following initial status conference August 27, 2009, the court entered the parties' jointly proposed scheduling order, with slight modification. It concluded then

due to the complexity of the charges and the volume of discovery, including anticipated sensitive and classified materials requiring special production procedures, that the ends of justice served by continuing the matter outweighed the best interests of the public and the defendants in a speedy trial.

Following hearing December 17, 2009, pursuant to the Classified Information Procedures Act ("CIPA"), 18 U.S.C. app. 3 § 2, where matters bearing on discovery review, anticipated motions, and trial length also were discussed, the court set trial to begin September 20, 2010, which date later was amended to September 27, 2010.

The court has undertaken an array of measures to facilitate timely preparation for trial. One such measure is the holding of monthly status conferences.[2] These conferences have served as a means to efficiently address discovery-related and other pretrial issues that the parties themselves have been unable to resolve and to otherwise help ensure that the case progresses in timely fashion. Conferences have included general sessions with all counsel, and separate sessions with government counsel and defense counsel. The court also has given defense counsel the opportunity to confer individually with the court. Defendants have attended proceedings, as appropriate.

In addition to monthly status conferences, the court has conducted several follow-up conferences[3] on its own motion or at request of counsel. These *ad hoc* conferences have been held primarily to address issues that required attention prior to the next status conference.

Defense liaison counsel have been appointed in each of four principal areas of discovery: 1) paper discovery; 2) audio recordings (including video recordings containing audio); 3) computer hard

---

[2] Status conferences convened by the magistrate judge have occurred on the following dates: January 8, 2010; February 19, 2010; March 12, 2010; April 16, 2010; and May 24, 2010. Another is scheduled later this month.

[3] Follow-up conferences convened by the magistrate judge have occurred on the following dates: March 26, 2010; April 2, 2010; April 20, 2010; April 27, 2010; May 14, 2010; and May 17, 2010.

drives; and 4) foreign depositions. These discrete areas of discovery are among the principal potential sources of delay in case preparation.

Liaison counsel have served as point of contact for the court in these areas, and have promoted coordination and communication among defense counsel and between defense counsel and government counsel, as appropriate. The use of liaison counsel has been important particularly in the area of transcription of audio recordings, given the number and complexity of the issues it involves.

The court also has developed in consultation with counsel a substantially more detailed set of deadlines relating to discovery and other pretrial proceedings than ordinarily adhered to. The adoption of numerous specific, intermediate deadlines has been necessary to help ensure diligent case preparation by the parties. The court continuously has updated and adjusted deadlines as warranted, as case preparation has progressed.

The use of regular status conferences, *ad hoc* ones, liaison counsel, and detailed scheduling protocols does not exhaust the list of measures the court has taken to ensure timely preparation of this case for trial. For example, it regularly has encouraged counsel to take advantage of additional staffing and technology to make their case preparation more efficient. The court has taken other actions as necessary to facilitate trial preparation, including those reflected in the numerous orders it has entered for this purpose.

## C. Pending Motions to Continue

Defendants Sherifi, Daniel Boyd, Zak Boyd, Yaghi, and Dylan Boyd seek to continue trial until a date no sooner than late May 2011. Although some of the reasons set forth in their respective motions are unique to particular defendants, four principal reasons are common to all five. These

include need for additional time: 1) review voluminous paper discovery; 2) review and transcribe English and foreign-language audio and video recordings; 3) analyze computer evidence; and 4) identify and interview witnesses in foreign countries.

Only defendants Anes Subasic ("Subasic") and Mohammad Omar Aly Hassan ("Hassan") oppose continuance of arraignment and trial as urged by the moving defendants, and endorsed by the government. In response to motions by Sherifi and Daniel Boyd, Subasic's attorney indicates that he believes a continuance is warranted in order to provide Subasic with effective assistance of counsel at trial. As the attorney makes clear, however, Subasic himself opposes any continuance and does not wish to delay his day in court.[4] Accordingly, counsel for Subasic neither joins in nor opposes a continuance request.

Counsel for Hassan opposes such request. However, his commentary reveals need under two different scenarios for varying amounts of additional time within which to prepare. Counsel states that should the court allow his prospective motion to sever, counsel would be prepared for trial this fall, but would likely need a brief continuance of the September 27, 2010 trial date in order to conduct overseas depositions. Should the prospective motion to sever be denied, counsel indicates that he will need the additional time to prepare for trial that has been requested by defendants Sherifi, Daniel Boyd, Zak Boyd, Yaghi, and Dylan Boyd. Counsel for Hassan also indicates that his client, like Subasic, personally opposes any continuance.

Through the government's omnibus response to the motions to continue, it urges that continuance of arraignment and trial until a time in spring 2011 (which season extends from late

---

[4] Subasic also has made clear his position on any possible continuance through a *pro se* supplement filed in support of his motion to compel.

5

March to late June 2011) is justified due to the complexity of issues and volume of discovery in this case.

## DISCUSSION

The Speedy Trial Act ("the Act"), 18 U.S.C. §§ 3161-3174, generally requires a criminal trial to begin within 70 days of the filing of an information or indictment or the defendant's initial appearance. 18 U.S.C. § 3161(c)(1). This time requirement protects the interests of both the defendants and the public in a speedy trial and the public interest in preventing and deterring crime. Zedner v. United States, 547 U.S. 489, 501 (2006). Because the right to a speedy trial belongs also to the public, a criminal defendant may not prospectively waive the application of the Act. Id. at 503; United States v. Henry, 538 F.3d 300, 304 (4th Cir. 2008). The Act does allow, however, certain periods of delay to be excluded from the seventy-day count, including delays "resulting from a continuance granted by any judge . . ., if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A).

The court concludes for reasons discussed more particularly below, that a continuance of arraignment and trial in this matter is warranted. The public's right to a speedy trial is fundamental and must be safe guarded. However, the ends of justice served by continuance in the case clearly outweigh the public's and the defendants' best interests in a speedy trial (including the best interests of the two defendants who voice some opposition).

This terrorism prosecution has revealed itself as so unusual and complex due to the nature of the prosecution, and the existence of novel questions of fact and law, that under the circumstances now presented, it is unreasonable to expect adequate preparation for pretrial proceedings or for the

6

trial itself within the time limits established by the Act. 18 U.S.C. § 3161(h)(7)(B)(ii). Moreover, as parties implicitly urge in consideration of a number of factors, an extension of the period for pretrial preparation even beyond what is argued for may be necessary. The importance of a firm trial date cannot be overstated, given the number of defendants, all of whom are in custody, some under onerous constraints, and the multitude of lawyers and support staff involved in the case. Complexities in planning are shared by court personnel and others, including the United States Marshals Service which is responsible for securing the trial environment. The public also benefits in the setting of a firm trial date, especially given the issues in this case bearing on matters of national security.

The exceptionally thorough briefing undertaken by the parties of or relating to their ongoing and anticipated pretrial efforts has placed the court in the position of being able to set now a trial date that the court is assured is a start date – September 19, 2011 – that meets the needs of defendants. Notice herein is provided that this date, which reflects the addition of some 110 days to the explicit schedule promoted, is not likely to be continued absent some *extraordinary* circumstance not able to be contemplated now or taken into consideration during the extended period, which circumstance is outside of the control of the parties and their attorneys. Ongoing due diligence of those involved in the litigation throughout this extended period clearly is required also in light of the following factors.

### A. Complexity of the Charges

This case involves seven defendants charged with conspiring to provide material support to terrorists and to murder, kidnap, maim, and injure persons abroad, among other charges. The scope of the alleged conspiracies, including allegations of overt acts taking place overseas, present unusual

7

questions of fact and law. In view of the nature of these charges, the government and defendants will require more time to prepare for trial than is typical.

**B.     The Status of Discovery**

The government has produced substantial materials in discovery, subject to routine supplementation. The volume of the evidence is substantial, but manageable. With the exception of reviewing the paper discovery, defense counsel are in the initial stages of reviewing the material produced. Given the volume of this material, substantial additional time will be required to complete this review. The court now will turn to a summary of the status of each of the four separate areas of discovery: 1) paper discovery; 2) audio recordings; 3) computer hard drives; and 4) foreign depositions.

**1.     Paper Discovery**

By May 13, 2010, the government had completed production to defendants of the approximately 30,000 pages of written discovery. The government did not produce with the documents a formal index, but at the court's direction did provide investigatory records relating to the production that defense counsel acknowledge have assisted them in reviewing it. In February 2010, defendants obtained approval for litigation support software to further assist them in organizing and reviewing the written discovery.

While defense counsel generally have completed their initial review of the paper discovery, some state that the process of organizing the discovery in a more usable fashion is ongoing. Moreover, defense counsel understandably assert that a single review of the paper discovery is not sufficient and that considerable additional review will be required for trial preparation.

**2.     Audio Recordings**

The government has produced to defendants audio recordings included in discovery in this case. Most of the recordings were produced between August and September 2009, but the production was not completed until February 2010. There are approximately 750 hours of recordings. About 550 hours of this total (comprising about 170 separately recorded sessions) represent consensual monitoring and are deemed general discovery (*i.e.*, neither classified nor sensitive but unclassified ("SBU")). The remaining approximately 200 hours (comprising about 800 separate recording sessions) are surveillance recordings and constitute SBU discovery. It is estimated that up to half of the SBU recordings are in Arabic or other foreign languages.

The government did not produce an index for the recordings, insisting it had none. Nevertheless, the same investigatory records that facilitated review of the paper discovery contained some limited identifying information relating to the audio recordings. This information has to a small degree facilitated review of the recordings.

The Office of the Federal Public Defender ("OFPD"), which is representing Daniel Boyd, entered into a contract in September 2009 to transcribe the recordings, with the understanding that the transcripts would be made available to other defense counsel. About 90 percent of the general discovery recordings have been transcribed. The remaining general discovery recordings and foreign-language SBU recordings are expected to be transcribed by the end of July 2010. The court does not believe the OFPD has obtained an estimate of the time for completion of the English-language SBU recordings.

By order of the court, the government is receiving copies of the transcripts and bearing 40 percent of their cost. The court directed use of a single set of transcripts to help avoid the inconsistencies and other complications that could arise from the government and defense counsel

using different transcriptions of the same recordings. The court also has entered orders addressing the other key steps in the processing of the recorded evidence, including designation by the parties of the portions of the recordings they intend to present at trial, and identification and resolution of disagreements over particular transcriptions.

The government has completed much of its preparation regarding audio evidence produced in the case. By the end of this month, it is to serve on defendants its proposed changes to any existing transcripts and complete its designations of recordings not yet transcribed. Transcription of such designated recordings and review of the transcripts by the government reasonably could be expected to require no more than several months. At that point, the government will have completed its pretrial work on the audio evidence.

Defendants are in a very different position. They are, for the most part, at the inception of their review of the audio recordings. Their review is complicated by a number of factors. Among these is the significant rate of error in many of the transcripts, including gaps in transcription. The errors result, in part, from the low quality of many of the recordings, including the presence of substantial background noise, and the inexperience of the transcription company with recordings of this type. While defense counsel insist that the transcripts were not intended to be a substitute for the recordings, but rather to be a useful guide to their contents, the errors in the transcripts have impeded the utility of the transcripts for even this limited purpose.

Errors in transcripts were discovered by the government in May 2010 when it began the process of comparing the recordings and the corresponding transcripts it had designated for possible changes. Surprisingly, the OFPD had not been doing any such comparison for accuracy over the five months that it had been receiving the transcripts from the transcription company.

In addition, the OFPD did not make arrangements at the start to identify the speakers on the recordings and to have their identity included in the transcripts. The investigative records produced by the government, while of some help, fall far short of enabling speakers to be identified. At the court's direction, the government provided voice exemplars of speakers to assist in identification, but even that tool has met with less than complete success. Defendants thus far have eschewed voice identification software to address the problem.

The designations and transcript corrections by the government will facilitate to some degree defense counsel's work. Nevertheless, counsel contend that each hour of recording requires several hours of review. The time required reflects not only the variable quality of the recordings, but also the possible relevance of sounds in the background. If counsel were to review all the recordings personally, such review alone would take several months. Defendants require substantial additional time in which to review the audio recordings in discovery.

### 3. Computer Hard Drives

On April 13, 2010, the government made available to defendants the approximately 23 computer hard drives seized during the investigation of this case that are included in discovery. These hard drives contain a significant quantity of data, specifically over one terabyte of data.[5] The data includes emails, videotapes, and other material. The government did not produce any information about the contents of these hard drives.

All defendants obtained mirror images of these hard drives for their review and, by April 2010, had engaged computer experts to assist in analysis of the hard drives. It appears that most of these expert reviews, as well as any reviews by counsel, are only in their preliminary stages. The

---

[5]A terabyte is the equivalent of one trillion bytes or units of digital information.

11

review of these hard drives will entail analysis of not only their substantive content (*e.g.*, emails, videotapes), but also the metadata in them (*i.e.*, data about the substantive content). Metadata may relate to such issues as the origin of certain files and the identity of those who have accessed them and when.

On May 11, 2010, the government designated the evidence from these hard drives that it intends to use at trial, as directed by the court. This designated evidence is substantial, comprising 23 compact discs. While the government's designations by no means obviate analysis of the other portions of the hard drives, the designations should facilitate defense counsel's review of the hard drive evidence. The use of experts also should expedite review.

Notwithstanding these considerations, it is apparent that review of the hard drives will require substantial additional time as well. Although a reasoned estimate presently cannot be made, the time required could be of similar magnitude to that required for the audio recordings. In addition to the sheer volume of material on the hard drives, the parties must address technical issues associated with computers and the likely presence of foreign-language material that will need to be translated.

### 4. Foreign Depositions

Because the superseding indictment alleges a number of overt acts involving overseas travel by various defendants, the court and the parties recognized early that there would be a possible need for defendants to conduct depositions of witnesses in multiple foreign countries. The government has represented that it does not intend to take any such depositions. The court has admonished defense counsel to diligently pursue the identification of potential foreign deponents and arrangements for any such depositions and has established related deadlines in its scheduling orders.

Defense liaison counsel in this area, who has experience with foreign depositions, has undertaken appropriate investigation into the issues presented by foreign depositions, including the specific procedures prescribed by the United States Department of State for taking depositions in a United States embassy.

Nevertheless, defense counsel plausibly assert that they cannot make definite determinations regarding potential foreign deponents until they have reviewed the discovery in this case, most notably the audio recordings. As indicated above, that process is in the early stages. Therefore, designations of witnesses for foreign depositions cannot realistically be made for some time.

Further, once counsel have identified witnesses, they will need to seek court approval pursuant to Rule 15 of the Federal Rules of Criminal Procedure to take the depositions and to obtain the necessary funds for foreign travel. Should court approval be granted, it is anticipated that arrangements for foreign depositions will require 60 to 90 days, if the deponents agree to appear. If compulsory process is needed in a foreign country, the time required could be substantially greater.

## C.     Pretrial Motions Practice

The court anticipates the possibility of extensive pretrial motions practice in this case. This possibility arises from, among other considerations, the multiplicity of the parties, the amount of evidence involved, the nature of certain evidence, and the complexity of many of the issues presented, as earlier discussed. Further proceedings pursuant to CIPA not yet anticipated by the parties also may be necessary. The new trial schedule reflects the court's allowance of a substantial additional period also for motions practice, to ensure that where motions appropriately may be made well in advance of the time scheduled for arraignment, that the court's ruling or rulings may be received before then to permit more orderly final negotiations and pretrial preparations. It is

abundantly clear that additional time will be necessary for these purposes.

## CONCLUSION

For the reasons given, a continuance is determined necessary to allow adequate pretrial preparation. As such, motions to continue arraignment and trial (DE ## 360, 367, 373, 382, and 387) are ALLOWED. Given the factors set forth above, the court concludes that a continuance into September 2011 will ensure the just determination of this proceeding. Simplicity in procedure, fairness in case administration, and avoidance of potential unjustifiable expense and ultimate delay in case disposition all are promoted by the setting of a firm date for trial. Trial shall commence **Monday, September 19, 2011,** which date is determined as one which takes into consideration the needs of the case, and around which all case activities should be planned for. Because the ends of justice outweigh the interests of defendants and the public in a speedy trial, the delay caused by this continuance shall be excluded from speedy trial computation pursuant to 18 U.S.C. § 3161(h)(7).

In furtherance of the parties' trial planning, the court sets arraignment for **Monday, August 15, 2011.** Proposed jury questionnaires shall be filed no later than **July 15, 2011.**[6] Proposed jury instructions shall be filed no later than **September 5, 2011.**

The continued trial date requires now revisions to many of the pretrial deadlines earlier established on behalf of the court. Accordingly, the parties are ORDERED to consult and jointly propose a revised schedule for the conduct of further pretrial proceedings in this case. The proposed schedule shall be filed on or before the close of business **June 25, 2010.** At the **June 30, 2010** status conference before Magistrate Judge James E. Gates, the court will take up and consider the schedule

---

[6] Jury selection procedures in this case will differ substantially from those normally followed by the undersigned and will be addressed more specifically in subsequent order.

for conduct of these further case proceedings.[7] Certain already-established deadlines, however, remain in effect, as follows:

1. The defendants' computer hard drive tutorial by **June 11, 2010**;

2. The government's designation of recordings not yet transcribed by **June 14, 2010**;

3. Defense motions for additional CJA funding for computer experts by **June 15, 2010**; and

4. The government's proposed changes to existing transcripts by **June 21, 2010**.

Because new deadlines will be established for the designation of expert witnesses, for filing motions relating to classified discovery, and for filing motions relating to foreign depositions, pending motions relating to these deadlines (DE ## 351, 375, 378, 379, 384, 396, 397, 398, 400) are DENIED as MOOT.

SO ORDERED, this the 11th day of June, 2010.

LOUISE W. FLANAGAN
Chief United States District Judge

---

[7]In addition, as directed by the magistrate judge prior to the May 24, 2010 status conference, the parties proposed a revised plan for the development and authentication of transcripts of the audio recordings. In light of the additional time accruing upon continuance of the trial, the court concludes that the plan proposed by the parties and discussed at the May 24, 2010 conference, is inadequate. Accordingly, with the limited exception of the establishment of new deadlines for uncompleted tasks, the plan established by the magistrate judge and as memorialized in his orders of March 17, 2010 and April 2, 2010, is herein renewed and shall remain in force and effect. The parties shall be prepared to address any pending transcription issues at the June 30, 2010 status conference.