IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:09-CR-216-FL-7

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | GOVERNMENT'S RESPONSE TO |
| v. ) | DEFENDANT'S SECOND MOTION |
| ) | TO TAKE FOREIGN DEPOSITIONS |
| ZIYAD YAGHI ) | |
| Defendant. ) | |

The United States of America, by and through the United States Attorney for the Eastern District of North Carolina, hereby responds in opposition to defendant Yaghi's Second Motion to Take Depositions in a Foreign Country, and in support of such opposition, shows unto the Court the following:

**APPLICABLE LAW**

Federal Rule of Criminal Procedure 15(a)(1) states (emphasis added) that :

> A party may move that a prospective witness be deposed in order to preserve testimony for trial. The court may grant the motion **because of exceptional circumstances and in the interest of justice**. If the court orders the deposition to be taken, it may also require the deponent to produce at the deposition any designated material that is not privileged, including any book, paper, document, record, recording, or data.

Prior to 1975, Rule 15(a)(1) required showing "[i] that a prospective witness may be unable to attend or prevented from attending a trial or hearing, [ii] that his testimony is material and [iii] that it is necessary to take his deposition in order to

1

prevent a failure of justice." *See* Fed. R. Crim. Proc. 15 (1944). "Although the 1975 amendment substituted the 'exceptional circumstances' standard for these three conditions, case law reflects that these requirements continue to inform the meaning of 'exceptional circumstances.'" United States v. Jefferson, 594 F. Supp. 2d, 655, 664 (E.D. Va. 2009); *see also*, United States v. McHan, 101 F.3d 1027, 1037 (4th Cir. 1996). Notably, the context within which these conditions must be met, is one in which "[c]learly, depositions in criminal cases are disfavored." Id. at 663-664, *citing* United States v. Drogoul, 1 F. 3d 1546, 1552 (11th Cir. 1993) (recognizing the "law's normal antipathy toward depositions in a criminal case").[1]

There is no controlling authority on the application of Rule 15(a), and caselaw addressing the exceptional circumstances standard is sparse.[2] In those cases addressing the issue, there

---

[1] While such antipathy may often be considered as arising from concerns over a defendant's Sixth Amendment rights; concerns generally exist regarding a fair, just, and truthful presentment of the evidence. These include matters such as inability of the jury to evaluate the demeanor of the testifying witness and the fact that foreign deposition testimony is inherently suspicious due to the absence of a sanction of perjury. *See e.g.*, United States v. Alvarez, 837 F.2d 1024, 1029 (11th Cir. 1988).

[2] In United States v. Moussaoui, 382 F.3d 453, 472 (4th Cir. 2004), the Fourth Circuit addressed the idea of materiality in the context of the right to compulsory process under the Sixth Amendment. In Moussaoui, the Court was considering the district court's granting of defendant's request to depose enemy combatant witnesses, foreign nationals, held outside the United States but in the custody of the Department of Defense. At the heart of that case was the government's refusal to accept process for

2

exist minor differences among the courts. United States v. Hajbeh, 284 F. Supp. 2d 380, 383-84 (E.D. Va. 2003). The district court in Hajbeh recognized that the Advisory Committee's Notes to Rule 15 provided guidance in that they stated the three conditions mentioned *supra* should exist prior to granting a deposition; however, the court noted that this did little to further define materiality or the necessary degree of unavailability. Id. at 382. The court in Hajbeh determined that any analysis should properly begin with whether the proffered testimony is material. Id. at 385.

In defining a standard for materiality, the court asserted that "[a]though no Fourth Circuit authority defines materiality in the Rule 15(a) context, materiality is well-defined in the case law" which applies Brady v. Maryland, 373 U.S. 83 (1963). Hajbeh, 84 F. Supp. 2d at 384. To establish a Brady violation, a defendant must prove a "reasonable probability" that the presence of the evidence would be outcome determinative. Id. Furthermore, a defendant can prove that the evidence would be material by showing that it is "exculpatory and not merely corroborative or cumulative of other evidence." Id. at 384-85. The court concluded, "[t]his

---

those witnesses in its custody. Moussaoui does not further Fourth Circuit jurisprudence with regard to the Rule 15 materiality standard because of the exogenous considerations in play, but it does demonstrate the Circuit's general reluctance, especially in a national security context, to affirm a court-ordered foreign deposition.

two pronged Brady materiality standard should also apply under Rule 15(a) given that both Brady and Rule 15(a) are aimed at ensuring that an accused receives, not a perfect trial, but a fundamentally fair one." Id. at 385.

In Hajbeh, the defendant was being prosecuted for immigration fraud, and sought to take deposition of his brother-in-law in the Republic of Jordan pursuant to Rule 15(a), on grounds that it would provide material, exculpatory testimony. *Id.* at 380. The defendant alleged that he did not commit fraud because he did not knowingly subscribe to any false statements in his immigration application, but instead received assistance from his brother-in-law, whom he sought to depose. Id. at 382. Moreover, proof of defendant's knowledge of the false statements was an element of the charged offense. Id. at 382 n.4. And while the court concluded that the testimony of the brother-in-law "is plainly exculpatory as it serves to negate the requisite knowledge element of the offense," the motion was nonetheless denied because the testimony was also, "at best, cumulative and merely corroborative of testimony that defendant himself is able to offer and hence not material." Id at 385. The court specifically rejected the defendant's contention that while the proffered testimony may be cumulative or corroborative of evidence the defendant himself could offer, the deposition should be permitted because otherwise defendant would be compelled to testify in violation of his Fifth Amendment privilege

4

against self-incrimination. Id. at 385-86. While the denied deposition may provide incentive to the defendant to testify, it did not compel him to do so such that his will is overborne. Id. In determining the questions of materiality, it is necessary to ask "whether the testimony is essential or critical to the defense, exculpatory or capable of negating an element of the government's case, or is instead cumulative or merely corroborative." Id. at 384.

Four years later, in United States v. Rosen, 240 F.R.D. 204, 209 (E.D.Va. 2007), the District Court for the Eastern District of Virginia expanded on what a materiality analysis should entail. The court articulated that the first step in the materiality analysis should be to identify the elements of the crime; next a court should outline the forecasted testimony; and finally, a court should compare the elements of the crime charged and the forecasted testimony to see whether any elements of the crime would be negated by the testimony. Id.

In Rosen, the defendants were charged with conspiracy to transmit information relating to national defense to those unauthorized to receive it. Id. at 206. Defendants sought to depose three Government of Israel [GOI] officials, whose testimony they believed would be exculpatory by displaying that defendants were not agents of Israel, the nature of the relationship between defendants and Israel, that GOI officials met regularly with

5

defendants in a proper setting, that any actions incidentally benefiting GOI were seen by GOI as benefiting the U.S., that Israel and the U.S. had ongoing meetings about policy, and the unique nature of an alleged conversation. Id. at 210. The Court proceeded on the assumption that the GOI officials would testify in accordance with the proffered testimony. Id. Without any further discussion to differentiate the circumstances from Hajbeh, the court in this instance began its analysis by stating, "It is also appropriately assumed that defendants will exercise their right to remain silent." Id. The court analyzed each element and corresponding piece of forecasted testimony in turn, and concluded that the forecasted testimony did not meet the Rule 15 criteria because it was not exculpatory, or when exculpatory, it was cumulative to testimony available from a variety of witnesses present and subject to process in the United States. Id. at 210-11.

In 2009, a District Court within the Eastern District of Virginia again echoed and clarified the jurisprudence previously set by Hajbeh and Rosen. United States v. Jefferson, 594 F. Supp. 2d, 655, 664 (E.D. Va. 2009). In Jefferson, the defendant was charged with a variety of crimes including, bribery, conspiracy, wire fraud, foreign corrupt practices, money laundering, obstruction of justice, and racketeering. Id. at 661. Pursuant to Rule 15, the defendant requested to depose three individuals in

6

Nigeria, whose testimony he believed would be exculpatory on two charged crimes. Id.

The court first addressed the unavailability of the witnesses, and then moved on to consider whether defendant had established that the witnesses would provide material testimony. Id. at 667 ("[materiality is] the second and perhaps most important requirement in the Rule 15 analysis"). The court used the two-pronged Brady test as used in Hajbeh and Rosen to determine materiality. Id. Thus, the court first identified the elements of the crime; second, outlined the forecasted testimony; and third, compared "the elements and the forecasted testimony to ascertain whether the forecasted testimony negates any element of the charged crime or establishes a defense." Id. (*citing* Rosen, 240 F.R.D. at 209). Next, the court analyzed whether the testimony, if exculpatory, was cumulative of other existing and available evidence. Id.

The defendant asserted that two of the Nigerian officers' testimony would be material to the charges that defendant had conspired to violate the FCPA in violation 18 U.S.C. § 371 and violated the FCPA, 15 U.S.C. §78dd-2(a). Id. To prove the elements of these two charges, the government would need to prove an agreement between two or more persons to act together in committing an offense and an overt act in furtherance of the conspiracy, and government would also need to prove that defendant:

7

is a domestic concern; used means of interstate commerce; corruptly; in furtherance of an offer; while knowing that the money would be offered; for purposes of influencing any act of such foreign official in his official capacity. Id. Furthermore, defendant stated that witnesses would testify that no bribes were paid or received, they never entered into agreements with defendant to pay or receive bribes, and the specific discussions regarding bribes did not occur. Id. at 668.

Therefore, the court reasoned that the forecasted testimony would plainly be exculpatory for defendant as it would negate the agreement element of the charge and the other elements of the FCPA charge. Id. The government argued that, as in Hajbeh, the testimony would be cumulative of testimony defendant himself could offer. Id. The Court determined that while Hajbeh presented a "strong argument," and "case law is inconclusive on this issue", nonetheless, "the better and more persuasive view is to construe Rule 15 so as not to infringe a defendant's Fifth Amendment right in any way" and that the contrary view in Hajbeh "is no longer persuasive." Id. at 668 n.18. The court however noted the value of framing the materiality analysis in this way as it raised the important question of how confident must a court be that the prospective deponent will actually testify along the lines proffered. Id. at 668.

8

While there is no hard requirement, Courts have indicated a preference for affidavits or declarations from the prospective witnesses outlining the testimony that they are prepared to provide. Id. In Jefferson, the court concluded that "it seems clear that there must be at least some credible, reliable basis to believe that the witness would testify as forecasted before a Rule 15 deposition can be authorized." Id. at 669. This basis should be twofold. First, the defendant has to show that the witness will waive a right to remain silent if there exists risk of such an assertion, and second, the defendant must show that such testimony would be along the lines forecasted. Id.

In Jefferson, the defendant "adequately, if barely" established that the prospective witnesses would likely testify as forecasted. Id. The defendant did so by relying on media reports about witnesses' denials in paying bribes or agreeing with defendant, government's letter, and defendant's own knowledge of the events. Id. The uncertainty as to whether the prospective deponents would provide the testimony at all may support a decision not to compel disclosures sought. Id. at 671; *see also* United States v. Moussaoui, 382 F.3d 453, 472 (4th Cir. 2004). In conclusion, the court stated that the prevention of a failure of justice is "inherently tied to whether the witness's testimony would be material" and in that particular instance, having determined that the witnesses were unavailable and thier testimony

was material, the requested depositions were permitted. Id. at 672.

In Hajbeh, the District Court recognized other Circuits' Rule 15(a) jurisprudence with regard to a materiality standard. Although courts typically require a party seeking a deposition to establish only that the witness's testimony is material and that the witness will likely be unavailable to testify at trial, the court asserted that the Second and Tenth Circuits also require the moving party to show that denying the requested deposition will result in a failure of justice. Hajbeh 284 F. Supp. 2d at 383.

Moreover, the Eleventh Circuit weighs the moving party's showing of materiality and unavailability against countervailing considerations, including the likelihood that the testimony will be admissible at trial and whether a deposition would cause excessive delay. Id. (*citing* United States v. Thomas, 62 F.3d 1332, 1341 (11th Cir. 1995)). The court posited that the Eleventh Circuit balancing test is designed to ensure that courts permit Rule 15(a) depositions only in rare instances, a goal the court stated is "clearly intended" by the language in the Rule. Id. at 384. Although the court pointed out that the Eleventh Circuit is the only circuit to formally address the need to assess countervailing considerations, several other courts have informally taken into account other considerations in their Rule 15 analysis. *See e.g.,* United States v. Aggarwal, 17 F.3d 737, 742 (5th Cir. 1994) (denying defendant's Rule 15(a) motion because of the untimeliness

of defendant's request); United States v. Mann, 590 F.2d 361, 366 (1st Cir. 1978) (considering the admissibility of the testimony in determining whether a Rule 15(a) deposition is appropriate); United States v. Bello, 532 F.2d 422, 423 (5th Cir. 1976) (citing the overwhelming evidence of guilt offered by the prosecution as a reason for declining to allow a Rule 15(a) deposition).

In United States v. Kelley, Defendant appealed whether the district court abused its discretion in denying his motions for leave to take foreign depositions, and the DC Circuit articulated a standard for materiality. United States v. Kelley, 36 F.3d 1118, 1124 (DC Cir. 1994). The DC Circuit explained that the purpose of Rule 15(a) is to preserve testimony for trial, not to provide a method of pretrial discovery. Id. The court asserted that materiality involves "typically some showing beyond unsubstantiated speculation that the evidence exculpates the defendant." Id. (*citing* Guam v. Ngirangas, 806 F.2d 895, 897 (9th Cir.1986); United States v. Wilson, 601 F.2d 95, 97 (3d Cir.1979); United States v. Ontiveros-Lucero, 621 F.Supp. 1037, 1038 (W.D.Tex.1985), aff'd, 790 F.2d 891 (5th Cir.1986)).

In United States v. Ismaili, the Third Circuit affirmed the district court's opinion, finding an insufficient showing of materiality, where witnesses could only provide second or third hand hearsay. United States v. Ismaili, 828 F.2d 153, 158 (3d Cir. 1987). The Circuit Court further stated that testimony of

11

witnesses in a criminal case must "negate the crux of the government's indictment" for a district court to be expected to permit the deposition under Rule 15. Id.

Finally, Rule 15(b)(1) states that "[a] party seeking to take a deposition must give every other party reasonable written notice of the deposition's date and location. The notice must state the name and address of each deponent."

## **ANALYSIS**

Despite the necessity of overcoming the well established legal hurdle of "exceptional circumstances" under the case law set forth *supra*, defendant provides only a superficial proffer of either materiality or unavailability. While conciseness is laudable, in the present instance, more detail is required. Regarding the penultimate issue of displaying the materiality of the testimony, the Court has been presented nothing more than double hearsay: Counsel for Yaghi spoke to Yaghi's uncle, who claims that the parents of a supposed potential bride at one time to Yaghi, are willing to testify. This is quite far from any sort of tangible reason to rely on even the minimal assertion made regarding the proffered testimony. Rather than any affidavit or letter from the individuals whose testimony is sought as to either their testimony or their unavailability, defendant provides only the "assurances" of his uncle. It is completely unknown whether these "assurances" are anything more than his own speculations or to what degree

exactly he is filtering the information from these two witnesses.

The defense asserts that the testimony of these two persons "corroborates statements that the defendant has made regarding the purpose of the October, 2006 trip to Jordan, and accounts for so much of his time that it is unlikely that the defendant had some other concealed purpose for the trip." (Defendant's Motion at p.2). The heart of defendant Yaghi's attempt to diplay materiality is apparently that defendant Yaghi "spent a considerable amount such that he had very little free time". (Id.) Presumably, this is meant to imply a considerable amount of time *with the witnesses*, but such matters should not need to be presumed. Materiality requires some degree of certainty as to the proffer itself. As noted in Rosen, uncertainty as to whether the prospective deponents would provide the testimony at all supports denial of such a deposition request.

Moreover, the little that has been set forth lacks any degree of specificity which one could use to conclude that the testimony of these witnesses could be material - that it would negate an element of the offense for which defendant Yaghi has been charged. Some sort of specificity as to the proffered testimony would allow the Government to independently search out the possibility of other witnesses who could provide the same or similar testimony thus negating the need for a foreign deposition, which is inherently disfavored. Additionally, simply understanding the substance of

what a proferred witness may testify to, would assist the Government in at least evaluating the possibility of a stipulation, thus negating the need for a foreign deposition. Presently, due to the lack of specificity, the current request raises concern that it is more in line of a discovery effort, which, as the <u>Kelley</u> court stated, is not the purpose of Rule 15.

While the reasoning in <u>Hajbeh</u> is no longer preferred law, it is worth noting that the proposed testimony is nothing more than corroborative of statements already made by defendant Yaghi and thus cumulative, should defendant Yaghi intend to and have a means of introducing these previous statements. Along this vein, by making this request and asserting materiality, defendant Yaghi should specifically state that he is unaware of any other individual witnesses present and subject to process in the United States who could provide similar testimony. The limited description of the proposed testimony simply does not scratch the surface of what is material as set forth through case law above. The sparse proffer of double hearsay causes grave concern regarding its reliability, and as described, it does not attack the crux of the indictment, provide testimony that can said to be essential or critical to the defense, nor is it exculpatory or capable of negating an element of the government's case - that is, it is not material. Rather, it is simply unsubstantiated speculation.

**CONCLUSION**

The defense has failed to justify the need for foreign depositions by failing to adequately set forth exceptional circumstances. The defendant's request is scant and lacks the necessary factual context to reasonably conclude that the proposed witnesses are in fact unavailable or that their testimony is material. For the foregoing reasons, the Government respectfully requests that the defense's motion be denied.

Respectfully submitted this   2nd   day of July, 2010.

GEORGE E. B. HOLDING
United States Attorney


BY:/s/Barbara D. Kocher
JOHN S. BOWLER
BARBARA D. KOCHER
Assistant U.S. Attorneys
310 New Bern Avenue, Suite 800
Raleigh, NC 27601
Tel: 919-856-4530
Fax: 919-856-4487
Email: john.s.bowler@usdoj.gov
State Bar No. 18825
Email: barb.kocher@usdoj.gov
State Bar No.  16360

/s/ Jason Kellhofer
JASON KELLHOFER
Trial Attorney
U.S. Department of Justice
National Security Division
Counter-Terrorism Section
10th St. And Penn. Ave., N.W.
Room 2740
Washington, DC 20530
Tel: (202 353-7371
Fax: (202) 353-0778
Email: jason.kellhofer@usdoj.gov
OH Bar No.  0074736

CERTIFICATE OF SERVICE

This certifies that on this 2nd day of July, 2010, I have served a copy of the foregoing on the defendants in this action by electronic filing as follows:

Debra C. Graves
Federal Public Defender
150 Fayetteville St. Mall
Suite 450
Raleigh, NC 27601-88005

R. Daniel Boyce
Boyce & Isley, PLLC
P.O. Box 1990
Raleigh, NC 27602-1990

Rosemary Godwin
Federal Public Defender
150 Fayetteville St. Mall
Raleigh, NC 27601-2919

John D. McCullough
Stubbs & Perdue, PA
310 Craven St.
P.O. Box 1654
New Bern, NC 28563

Robert J. McAfee
McAfee Law, P.A.
P.O. Box 905
New Bern, NC 28563

Myron T. Hill, Jr.
Browning & Hill
200 E. Fourth St.
Greenville, NC 27835

John Keating Wiles
133 Fayetteville Street
P.O. Box 1029
Raleigh, NC 27602

Joseph E. Zeszotarski,Jr.
Poyner & Spruill
P.O. Box 10096
Raleigh, NC 27605

BY: /s/ Barbara D. Kocher
Assistant U.S. Attorney
310 New Bern Avenue, Suite 800
Raleigh, NC 27601
Tel: 919-856-4530
Fax: 919-856-4487
Email: barb.kocher@usdoj.gov
State Bar No. 16360