```
 1                 UNITED STATES DISTRICT COUR
                EASTERN DISTRICT OF NORTH CAROLINA
 2


 3


 4   - - - - - - - - - - - - - -


 5   UNITED STATES OF AMERICA


 6   v.                          Docket No. 5:09-CR-216-FL


 7   DANIEL PATRICK BOYD,
     HYSEN SHERIFI,
 8   ANES SUBASIC,
     ZAKARIYA BOYD,
 9   DYLAN BOYD,
     MOHAMMAD OMAR ALY HASSAN,        Raleigh, North Carolina
10   ZIYAD YAGHI                      October 5, 2010
     - - - - - - - - - - - - - -
11


12          TRANSCRIPT OF SCHEDULING CONFERENCE BEFORE
           THE HONORABLE JAMES E. GATES, MAGISTRATE JUDGE,
13              UNITED STATES DISTRICT COURT FOR THE
                   EASTERN DISTRICT OF NORTH CAROLINA

14


15   APPEARANCES:


16   For the Government:      Barbara D. Kocher
                              John Bowler
17                            Assistant United States Attorneys
                              Office of the United States Attorney
18                            310 New Bern Avenue
                              Suite 800
19                            Raleigh, NC 27601


20   For Defendant           Debra C. Graves, Esq.
     Daniel Patrick Boyd:    Rosemary Godwin, Esq.
21                           Thomas C. McNamara, Esq.
                             Office of the Federal Public Defender
22                           150 Fayetteville Street Mall, Suite
     450
23                           Raleigh, NC 27601


24   For Defendant           Robert J. McAfee, Esq.
     Hysen Sherifi:          McAfee Law, P.A.
25                           P.O. Box 905
                             New Bern, NC 28563
```

```
 1
        For Defendant            John Keating Wiles, Esq.
 2      Anes Subasic:            Cheshire Parker Schneider Bryan Vitale
                                 P.O. Box 1029
 3                               133 Fayetteville Street Mall
                                 Raleigh, NC 27602
 4
        For Defendant            Myron T. Hill, Jr.
 5      Zakariya Boyd:           Browning & Hill
                                 200 E. Fourth Street
 6                               Greenville, NC 27835

 7      For Defendant            Joseph E. Zeszotarski, Jr.
        Dylan Boyd:              Poyner & Spuill
 8                               P.O. Box 10096
                                 Raleigh, NC 27605
 9
        For Defendant Mohammad   R. Daniel Boyce, Esq.
10      Omar Aly Hassan:         Boyce & Isley, PLLC.
                                 107 Fayetteville Street, Suite 500
11                               P.O. Box 1990
                                 Raleigh, NC 27601
12
        For Defendant            J. Douglas McCullough, Esq.
13      Ziyad Yaghi:             Stubbs & Perdue, P.A.
                                 310 Craven Street
14                               P.O. Box 1654
                                 New Bern, NC 28563
15
        U.S. Court Reporter:     Harold M. Hagopian, RDR, CRR
16                               United States Courthouse
                                 413 Middle Street, Rm. 311
17                               New Bern, NC 28560
                                 Tel. (252) 637-1200
18                               hhagopian@aol.com

19

20

21

22

23

24

25
```

# P R O C E E D I N G S

## GENERAL SESSION

(The following proceedings were held in general session at the United States Courthouse, 210 New Bern Avenue, Raleigh, North Carolina, before the Honorable James E. Gates, Magistrate Judge for the Eastern District of North Carolina, on October 5, 2010, at 10:15 a.m.)

(Defendant Anes Subasic is present.)

\*     \*     \*

THE COURT:  Good morning, folks.

(Replies of "Good morning.")

It's good to see all of you again.

We're here, of course, for a status conference in the case of United States v. Boyd, et al.  We've also got a motion to hear.

Let me begin by swearing the interpreter.

(Tanja Abramovic was duly sworn by the Clerk as English-Bosnian interpreter.)

THE COURT:  I would propose that we proceed this morning as we have in the past at these sessions, that is, begin with a general session with counsel for all parties present, then break off for a closed session with defense counsel, and then do the same a bit later with counsel for the government.

After that, I would like to take up the motion that is

1    before the Court.

2         And there may be a need, with respect to that motion,

3    of course, to have an open session.  And I know that there is

4    going to be a need for at least a portion of that discussion

5    to be in closed session, as well.

6         Very good, folks.  Let me -- let's turn now to the

7    topics we've been talking about for some time.  Let's begin

8    with the transcripts.

9         Ms. Graves, do you have anything in particular to

10   report with respect to transcripts?

11            MS. GRAVES:  Good morning, your Honor.

12            THE COURT:  Good morning.

13            MS. GRAVES:  I'll just give you a status report.

14

15        The consensual recordings have all been transcribed,

16   and we are -- when I say "we," I mean our office -- is

17   addressing issues that are coming up with the company, any

18   quality issues as they arise, and then giving feedback back to

19   the party who raised it with us.  So, I think that's --

20            THE COURT:  And I gather -- I know, when we were

21   the last together, that some of the quality issues, they

22   seemed to be working this themselves out.  Does that continue

23   to be the case?

24            MS. GRAVES:  Yes, sir.  I think they still are.

25            THE COURT:  Oh, that's great.

1          MS. GRAVES:  We have uploaded the SBU

2    transcripts.  We did that last Thursday, completed the

3    uploading process I think yesterday.  We haven't gotten any

4    feedback from any of the panel attorneys regarding that,

5    but --

6          THE INTERPRETER:  Your Honor.

7          THE COURT:  One moment, Ms. Graves.

8       Madam Interpreter, are you having a problem?

9          THE INTERPRETER:  Yes.  It is a little too fast,

10   and the defendant requested that if it is too fast and the

11   interpreter cannot -- cannot interpret, then the defendant

12   asks that it be a little -- just slower.

13         THE COURT:  Oh, that's fine.  And, Madam

14   Interpreter, if at any time any of us is speaking too quickly,

15   please let me know, and I will instruct whoever is speaking to

16   slow down.  And if I am speaking too quickly for you to

17   interpret, please let me know.

18         THE INTERPRETER:  Thank you.

19         THE COURT:  Because I do want -- I want you to be

20   able to interpret and I certainly want Mr. Subasic to

21   understand what we're discussing here today.

22      Ms. Graves, can you review a portion of what you

23   mentioned?

24         MS. GRAVES:  Yes.  The sensitive but unclassified

25   recordings are being uploaded on to the servers that all the

1  panel attorneys have access to.  That process began last

2  Thursday, and I believe we completed that process yesterday.

3  So, those are available for all attorneys.

4         THE COURT:  Very good.  And, so, what does that

5  leave to be done?

6         MS. GRAVES:  I think the only thing left to be

7  done is quality control issues as they arise.

8         THE COURT:  I see.  So, essentially, all the

9  transcripts have been prepared?

10         MS. GRAVES:  Yes, sir.

11         THE COURT:  Very good.  Well, that's excellent

12  news.  Thank you.

13     Does any other counsel wish to be heard with respect to

14  transcript preparation?

15     (No response.)

16     I just note we do have some deadlines upcoming with

17  respect to transcripts.

18         MS. KOCHER:  Your Honor, if I could address the

19  transcripts real quick.  I just want to make sure the Court

20  understands -- I believe that --

21         THE COURT:  Ms. Kocher, just keep in mind the

22  interpreter needs to be able to interpret.

23         MS. KOCHER:  Thank you.  I'm also getting a nod

24  from the court reporter, so I must have started out right out

25  of the gate.

1      The consensual monitorings have all been completed.  I

2 believe it is fair to say that the consensual monitoring

3 recordings have all been transcribed.

4      I believe that from the public defender's standpoint

5 the foreign language sensitive transcriptions have been

6 completed and uploaded to the availability of the other

7 defenders.

8      The bulk of the sensitive transcripts are through the

9 government contract, and those have not been completed.  So,

10 those are under way.

11             THE COURT:  Ms. Graves?

12             MS. GRAVES:  Do you want me to clarify?

13             THE COURT:  Yes, if you could, please.

14             MS. GRAVES:  It was our obligation to provide the

15 foreign language transcripts, unclassified, to the other panel

16 attorneys.

17             THE COURT:  Correct.

18             MS. GRAVES:  And I just wanted to make sure that

19 you understand that we have completed that obligation.

20             THE COURT:  I see.  I did misunderstand you in

21 that regard.

22        Yes, Madam Interpreter?

23             THE INTERPRETER:  The defendant has a question.

24 The defendant needs a pen, because he wants to write down

25 everything.

1          All the information that I have heard now are
2    completely unknown to me.
3               THE COURT:  Well, ma'am -- Mr. Wiles, could you --
4    the defendant is not to address the Court directly at this
5    stage of the proceedings.
6          Could you please interpret that for him, ma'am?
7               THE INTERPRETER:  Sure.
8          (Interpreter conveying interpretation to the
9    defendant.)
10              THE COURT:  If he has comments, he needs to convey
11   them to Mr. Wiles, who is his lawyer, and then Mr. Wiles may
12   address the Court.
13         (Interpreter conveying interpretation to the
14   defendant.)
15         (Interpreter conferring with Mr. Wiles off the
16   record.)
17        (Mr. Wiles providing pen to the defendant.)
18              MR. WILES:  Thank you, your Honor.
19              THE COURT:  Thank you, Mr. Wiles.
20        Ms. Graves?
21              MS. GRAVES:  Your Honor, there is some additional
22   information I'd like to provide to the Court regarding these
23   sensitive but unclassified transcriptions ex parte.
24              THE COURT:  That's fine.
25              MS. GRAVES:  Thank you.

1          THE COURT:  So, as I understand it, Ms. Kocher,

2     the body of transcripts that remain pending are the English

3     language consensual recordings?

4          MS. KOCHER:  Not consensual recordings, your

5     Honor.  The sensitive.

6          THE COURT:  Correct.  That's fine.

7          MS. KOCHER:  Sensitive.  And the government is

8     having transcribed what it has designated for use at trial,

9     not the entire body of sensitive recordings.

10          THE COURT:  That's right.  And that production is

11     due December 1?

12          MS. KOCHER:  That's correct, your Honor.

13          THE COURT:  All right.  And is the government on

14     track to make that production timely?

15          MS. KOCHER:  At this time, your Honor, we do

16     indeed hope so, your Honor.  The contract is in place and

17     we'll be receiving transcripts just momentarily.

18          THE COURT:  I see.  Okay.  Very good.

19     Anything further with respect to transcripts?

20     Thank you, Ms. Graves, for your continuing work on

21     them.  The Court does appreciate your efforts as liaison.

22     Let me turn, then, to the issue of computer hard

23     drives.

24     Mr. McAfee, sir, any issues there for our general

25     session?

1      MR. McAFEE:  No, your Honor.  I've circulated an

2  e-mail two weeks ago, I believe it was, requesting that if

3  counsel had any issues regarding the acquisition or copying or

4  examination of hard drives, to let me know.  And no counsel

5  had any conditions at this point.

6      THE COURT:  Very good.  Well, your tutorial must

7  have been successful.

8      MR. McAFEE:  I'm assuming somebody read it.

9

10      (Laughter.)

11      THE COURT:  Any other counsel wish to be heard

12  with respect to the computer hard drives?

13      (No response.)

14      I assume there are no issues on the government's behalf

15  with respect to computer hard drives?

16      MS. KOCHER:  No, sir.

17      THE COURT:  Very good.  Thank you.

18      Mr. Hill, I think the issue of paper discovery is very

19  much in the rearview mirror.

20      MR. HILL:  It is, your Honor.

21      THE COURT:  And has it remained there?

22      MR. HILL:  Yes, your Honor.  Nothing to report.

23      THE COURT:  Good.  Any counsel have any issues

24  with respect to paper discovery that would be appropriate for

25  the general session?

1      (No response.)

2      And, Ms. Kocher, I'll just check in with you and

3 Mr. Bowler. I assume there are no issues in that regard for

4 the government?

5           MS. KOCHER: No, your Honor.

6           THE COURT: Very good. Thank you.

7      That takes us to the issue of foreign depositions.

8      Mr. McCullough, is there anything in that arena that we

9 can discuss appropriately in general session here?

10           MR. McCULLOUGH: Yes, your Honor, there is. I

11 don't think any of this is sensitive. It's all administrative

12 in nature.

13      I have been in regular contact now with the American

14 Citizens Section of the embassy in Amman, and they've been

15 very helpful. They have reserved rooms for me to utilize at

16 the embassy, itself.

17      The next issue from our side is the fee that they

18 charge for the rooms, which are waived, so that I would not

19 have to pay those. But I've just learned that that's a

20 Department of Justice responsibility, and a letter will have

21 to emanate from the Justice Department to the embassy. And

22 I'm going to provide the statutory authority for that

23 requirement, as well as the proper address for the letter to

24 be addressed to the government. And, hopefully, they'll get

25 the letter so that we don't have to pay the fees.

1    They're rather large.  It's like 400-and-some dollars

2  for the consular officer to swear in a witness or

3  interpreter.

4           THE COURT:  Oh, really.

5           MR. McCULLOUGH:  And they do that for each

6  witness.  So, if it's one time, that's $400; if it's two

7  times, it's $400.  I suppose they charge $400 to swear the

8  interpreter.  That's my understanding.  But it doesn't make

9  any sense for the government to pay itself, and so, they do

10  have a C.F.R., Code of Federal Regulations, that allows for

11  the fees to be waived upon request of the government agency.

12           THE COURT:  I see.

13           MR. McCULLOUGH:  Now, the Department of Justice,

14  through Mr. Bowler, has related to me that they have prepared

15  their information and sent it to the State Department for

16  processing.  And they're in the stage of preparing a

17  diplomatic note to the government of Jordan requesting

18  permission for the prosecutors to come in.

19      There's a request for some information, which I will

20  provide to the --

21           MR. BOWLER:  Your Honor?

22           MR. WILES:  The translator is having trouble

23  keeping up with the conversation.  If people could slow down,

24  it would very much help the translator and thereby help my

25  client.

1     Excuse me.

2          MR. McCULLOUGH:  I'll summarize some of the

3 last --

4          THE INTERPRETER:  The interpreter gets interrupted

5 all the time by the defendant because he wants clarification

6 of some things, and he wants some things to be repeated.  So,

7 in that way, the interpreter gets -- the interpreter's focus

8 is not so clear.

9     So, basically, therefore the defendant should be

10 advised not to interrupt the interpreter and not to ask some

11 questions.  It would be -- the interpreter would appreciate

12 that very much.

13          THE COURT:  Mr. Wiles, can you chat with

14 Mr. Subasic?  One question I have is whether he is -- if he is

15 asking for clarification from the interpreter, I'm concerned

16 whether he is actually understanding the translation that is

17 being provided or if he is asking substantive questions.

18 Substantive questions, obviously, should come to you at an

19 appropriate time.  Issues about his understanding the

20 language, that's another matter.

21     (Mr. Wiles conferring with the defendant without use of

22 the interpreter.)

23     (Mr. Wiles conferring with the interpreter off the

24 record.)

25          MR. WILES:  I think we can proceed, your Honor.

1  Mr. Subasic has some -- has some -- understands some English

2  and understands, of course, what the translator is saying, and

3  is not always sure that she is translating what he believes

4  the English means, and will ask her to clarify that.  And

5  there are times when he needs for her to repeat something that

6  she has said so that he can get it written down.  And then she

7  gets interrupted and needs for the speaker to slow down and

8  say it again so that she can translate it for him again.

9       So, it's a very -- and, of course, it's a simultaneous

10  translation, which I've never done simultaneous translation,

11  myself.  I have served as an interpreter in another role in

12  another setting, but it was speak a little, interpret a

13  little, speak a little, interpret a little.  And simultaneous

14  translation, I understand, based on what the translator is

15  telling me, is that there are things that don't all get

16  translated.

17       I don't know what else to say.

18            THE COURT:  Well, that's fine.  The Court has --

19  the Court has approved -- my understanding is that the

20  interpreter is a certified interpreter and is qualified to be

21  here.

22       Madam Interpreter?

23            THE INTERPRETER:  May the interpreter address the

24  Court?

25            THE COURT:  You may.

1          THE INTERPRETER:  According to the rules,

2     everything should be interpreted, even in simultaneous

3     interpretation.  However, the realistic -- or the realities

4     are different and some sentences get missed.

5          But the reason the defendant complained is he

6     interrupted me at one moment, and then, after that, the

7     interpreter -- after that interruption, the interpreter was

8     not able to focus again.  That is why the interpreter missed

9     something.  And if -- if the -- the interpreter will

10    appreciate very much if the Court, if the judge, instructed

11    the defendant just not to interrupt the interpreter, but to --

12    but to let her interpret what she hears.

13          THE COURT:  Very good, ma'am.

14          Do I understand you to be saying, aside from being

15    interrupted by the defendant, you're not having a problem

16    interpreting what's being said here today?

17          THE INTERPRETER:  No, I don't have any problems

18    interpreting.  But the interpreter can be interrupted --

19          THE COURT:  I understand.  And is it your

20    impression --

21          THE INTERPRETER:  -- with the legal and

22    everything --

23          THE COURT:  Is it your understanding that the

24    defendant understands the interpretation that you are

25    providing him?

1     THE INTERPRETER:  Actually, the defendant would

2 like to clarify some things that are not -- that are -- that

3 he is not familiar with.  For example, he said that he didn't

4 hear about the transcripts and some other things.  So,

5 that's -- he gave that comment, you know.

6     THE COURT:  Well, my concern is, at this point,

7 whether he understands the substance of what you're saying.

8 But I want to -- I want to confirm with you or not that he --

9 it's your impression that you believe he understands the words

10 that you're saying?

11     THE INTERPRETER:  He understands the words.  But

12 the interpreter --

13     THE COURT:  But he may not be conversant in --

14 ma'am, please don't talk over me.

15   He may not be conversant with the full meaning of the

16 words, but he understands the translation?  The sounds that

17 you're providing him, he understands those?  That's your

18 impression?

19     THE INTERPRETER:  Yes, that's my impression.

20 Yes.

21     THE COURT:  Okay.  Let me provide an appropriate

22 instruction now to Mr. Subasic.

23     THE DEFENDANT (in English):  Mr. Subasic is

24 not --

25     THE COURT.  No, sir.  Mr. -- well, let me ask you,

sir, Mr. Subasic, are you understanding the interpreter?

THE DEFENDANT (in English):  I do not understand the interpreter, and the reason because she missed at least half of what has been said.  I lived in the United States 12 years.  I do speak English in a way, simple English.  I do not understand court English.  That is some of the reasons I need translator.

And apparently she cannot catch what you guys spoken about.  She missed pretty much -- she translates hard drives are finished, the transcripts are finished, the copies are finished.  She missed 90% what these gentlemen out there said.

I cannot find her to be useful, but hurtful, in this kind of process.  This is terrible.

THE COURT:  Very good, sir.  Well, for purposes of the status conference, the motion -- your motion for substitution of counsel is a different matter -- but for purposes of this status conference, let's proceed as follows:  If you do have -- and, Madam Interpreter, if you could interpret what I'm saying, please.

Mr. Subasic, sir, if you do have questions about the interpretation that's being provided -- I believe you have a pad and a pen -- you may make note of them.  But please do not interrupt the interpreter.  It's complicating her ability to provide you a translation of the proceedings here.

1    The reason that you've been permitted to attend this

2  status conference is because you were going to be here anyway

3  for the motions hearing.  You filed a separate motion to be --

4  for permission to attend this status conference.  That motion

5  was denied as moot because you were going to be here anyway.

6

7    So, your presence here is not, in the Court's view,

8  essential.  As long as there aren't continued interruptions,

9  I'll allow you to remain here.

10    We'll address the interpretation issue with respect to

11  the motion that you've filed for substitution of counsel a bit

12  later when we get to that phase of the proceedings this

13  morning.

14    THE DEFENDANT (in English):  Thank you for the

15  clarification.

16    THE COURT:  And, Madam Interpreter, I don't want

17  to give you a hard time, but I asked you to interpret what I

18  was saying, and I noticed you were not doing that.  And I am

19  relying upon you to interpret what is being said here,

20  particularly if the Court directs you to interpret, you must

21  interpret.  Do you understand that?

22    THE INTERPRETER:  Yes, your Honor.  And the

23  interpreter would just ask you and everyone else here just to

24  slow down a little bit so that the interpreter can interpret

25  better.

```
 1          Thank you.

 2          THE COURT:  Very good.  Well, we'll do our best,

 3   ma'am.  It is incumbent upon you, if you do not -- if you are

 4   not able to keep up, that you let us know.  Otherwise, we

 5   really have no way of knowing.

 6          Do you understand that?

 7          THE INTERPRETER:  Yes, definitely.

 8          THE COURT:  Very good.

 9          THE INTERPRETER:  And also if the members of the

10   Court could just turn a little bit over here.  I understand

11   that they have to look at you, but the point is that we cannot

12   hear everything over here.

13          So, if they could just turn a little bit over here so

14   that we can hear better.

15          THE COURT:  Well, when they're addressing the

16   Court they need to speak to me, but they're -- I would

17   instruct everybody to keep their voices up.

18          THE INTERPRETER:  Or maybe I should sit somewhere

19   else.

20          THE COURT:  Well, the arrangements will remain as

21   they are now.

22          Mr. McCullough?

23          MR. McCULLOUGH:  Your Honor, I'll try to

24   resummarize what I stated before.

25          I have been in contact with the American Embassy in
```

1   Amman on a regular basis.  The embassy has provided me with

2   rooms to utilize on November the 10th of this year, suitable

3   for a deposition.

4       The consular officer will be available on that date to

5   administer the oath to the witnesses and to an interpreter.

6       The expenses of using the rooms are quite high, but

7   they are waivable when the U.S. Government is on the other

8   side, such as in this case, paying the fees.

9       The responsibility for paying the fees is that of the

10  Department of Justice, and -- by statute and regulation.

11  Therefore, I am going to provide additional information to the

12  government as to where to direct a letter from the Department

13  of Justice requesting a waiver of those fees.

14      The time frame for taking these is set by the Court to

15  be done by December 31st.  Because of holidays in the Mideast,

16  holidays in the United States, the practicality of doing this,

17  it's incumbent that this be done the week of November the

18  5th.  So, I will have to do a motion to the Court to expend

19  the funds and provide you an exact budget of what it will

20  cost, or as close as I can get to that budget, because I need

21  court approval to expend the expense of $500.

22      I have located a court reporter who is willing to

23  accompany us to take the deposition.  She is one of the

24  freelance court reporters here in Raleigh that does grand jury

25  transcriptions for the U.S. Attorney's Office, and she is

1  willing to go.

2        There are no court reporters available in Jordan, as

3  that's not a service that is utilized in their courts or legal

4  system.  So, they don't have a market for court reporters.

5  You have to import your court reporter from somewhere.

6        The international court reporting service that I

7  contacted prior to finding this lady in Raleigh would have to

8  bring a court reporter in from Israel.  The expense would be

9  roughly the same for me to bring in someone from Israel as it

10 is to bring in someone from the United States.

11       But the quality of the transcript would probably be a

12 great deal better if I can take somebody from here that is

13 familiar with this Court and the quality that this Court would

14 expect to have, and be close to the participants to check on

15 wording or if there's something she couldn't hear and to clean

16 the transcript up.

17       So, I think that we are on progress to take these

18 depositions.  The government has provided the Department of

19 State with the information that they require.  There is some

20 additional information which the government has requested that

21 I provide, and which will be provided early next week, as will

22 the motion that I am talking about for the expenses.

23       Thus, I think that we're making really good progress

24 toward completing this important task for Mr. Yaghi.

25       And for Mr. Subasic's information, this particular

1  deposition relates solely to the 2006 trip that Mr. Yaghi is

2  alleged to have taken, in the indictment, by himself, with not

3  any of the other defendants present.

4        THE COURT:  Very good, sir.  And I'm assuming,

5  Mr. McCullough, as you've done along the way, that you'll make

6  available to other counsel the information that you've

7  unearthed about the appropriate procedures that you've

8  discussed in the event that it might be of assistance to

9  them.

10        MR. McCULLOUGH:  Yes, sir.  I thought that once I

11  had everything in place I would do a memorandum to counsel of

12  record summarizing what I've learned, so that not only for

13  this case, but if it comes up in another case, the information

14  won't be forgotten and can be utilized.

15        But certainly, if there's other people in this case

16  that can take foreign depositions, they'll know the procedure,

17  and it might make it faster.

18        THE COURT:  Very good.  Thank you, sir.

19        Does any other counsel wish to be heard with respect to

20  foreign depositions?

21        Anything, Mr. Bowler?

22        MR. BOWLER:  Very briefly, your Honor.  We've

23  taken the information essentially that's been communicated to

24  us by Mr. McCullough, and through the good offices of

25  Mr. Kellhofer, transmitted that up through the Department of

1   Justice.  And we are informed that the department has relayed

2   that to the Department of State and is in the process or has

3   already transmitted a diplomatic note to the Kingdom of

4   Jordan -- the government of the Kingdom of Jordan, which is

5   the process that our own Department of Justice requires of us

6   to participate in such a deposition.

7            THE COURT:  Very good.

8            MR. BOWLER:  Essentially, we've done all in our

9   power to be available and to follow through with this, but we

10   want the Court to be aware that --

11            THE COURT:  Mr. Bowler, I'd suggest you just talk

12   normally.  I've instructed the interpreter to let the Court

13   know if she has a problem keeping up, and I assume that she'll

14   do that.

15            MR. BOWLER:  I'm sorry for the broken --

16            THE COURT:  I know you're doing your best to

17   accommodate the interpreter's needs to make sure that

18   Mr. Subasic receives an interpretation, but the burden for

19   that really rests with the interpreter at this point.  If she

20   does not understand, if we are talking too quickly, it's her

21   job to let us know.

22            MR. BOWLER:  Essentially -- I'm sorry, your

23   Honor -- essentially, we've done everything we can through the

24   required channels and procedures that are incumbent on us.

25      We just make want to make it clear that it is quite

1    possible and it would not surprise us if the Kingdom of Jordan

2    simply says that -- denies this request to conduct this

3    deposition.  And we have no control over that.

4         So, perhaps it will come off just as defense hopes it

5    does.  But we have no ultimate control over whether or not the

6    Kingdom of Jordan will allow that to happen.

7               THE COURT:  And the time frame for responses -- I

8    know we've talked about that before, but it's -- what's a

9    ballpark, recognizing that there's no definitive time period

10   here, as I understand it.

11              MR. BOWLER:  Ms. Kocher is underlining a message

12   we received, which is what I was going to say, that we can't

13   comment, your Honor.  We don't know.  In the best -- the best

14   good-faith response that we can give the Court is we don't

15   really know and we don't have any control over it.

16        And I know that could create problems that we would

17   have to address downstream, but I'd have to present to the

18   Court what information I have at this stage.

19              THE COURT:  And there's no past experience that

20   would be relevant that you're aware of?

21              MR. BOWLER:  Well, I think our past experience is

22   that it varies a lot.  So, we really don't know at this

23   stage.  We'll do everything in our power to get an answer, a

24   substantive answer, for the Court so that we can proceed on

25   that basis, your Honor.

1    THE COURT:  And are there mechanisms for follow-up

2  inquiries in case a response is not forthcoming after some

3  period of time?

4    MR. BOWLER:  My understanding is the inquiries go

5  through the American Embassy in Amman, and we will repeat

6  those requests, your Honor.

7    THE COURT:  Okay.  Very good.

8    MR. McCULLOUGH:  Your Honor.

9    THE COURT:  Yes, sir, Mr. McCullough?

10    MR. McCULLOUGH:  May I be heard?

11    THE COURT:  You may.

12    MR. McCULLOUGH:  Anticipating that the government

13  may not be allowed to physically enter the Kingdom of Jordan,

14  the government prosecutors who would normally be sitting in at

15  tables in the same room with me when the deposition is taking

16  place, I have requested information from the embassy as to

17  whether I would be allowed to attend solely.  And they told me

18  that I would not be denied entry.  Their treaty relates to

19  government personnel.

20    I don't know if my status would be different if I was

21  working for the public defender's office and paid by the

22  government.  But I told them I was a private attorney, CJA

23  appointed.  And they said you can come regardless of what

24  happens with them, and the room is still available.

25    At that point, in accordance with North Carolina law, I

1   would be willing to make a phone call to Raleigh from the

2   embassy and have a -- and have the room suitable for a

3   telephonic deposition, which would not require their physical

4   presence.

5        If they -- the Department of Justice decides that they

6   don't want to participate in that regard, it would be my

7   intention to take a sworn statement from the witness and later

8   utilize that and offer that to the Court through the residual

9   hearsay exception.

10        Of course that's a ruling the trial Court would have to

11   make at a later date, but I intend to preserve this evidence

12   with them being offered an opportunity to participate by

13   telephone or without them.

14        THE COURT:  In light of that possibility,

15   Mr. McCullough, I assume that, if you haven't already made

16   inquiries about telephone service, that would be on your

17   agenda going forward?

18        MR. McCULLOUGH:  I have made inquiries as to

19   whether they have suitable telephone service to make an

20   international call, and they said that is not a problem.

21        THE COURT:  I see.

22        MR. McCULLOUGH:  The embassy has quite a good

23   communication system.

24        THE COURT:  Well, I would hope so, since it is an

25   embassy.

1          MR. McCULLOUGH:  They need it these days.

2          THE COURT:  And this, obviously -- the specific

3     arrangements for these foreign depositions, such as whether

4     the government would be willing to attend by telephone, those

5     are matters that counsel obviously would need to discuss at

6     the appropriate time.

7          MR. McCULLOUGH:  Yes, sir.  It's premature now

8     because it may be that the government of Jordan would permit

9     this case to go forward, whereas the last time they had a case

10    they didn't.  But they have in previous cases allowed the

11    government to come forth, if I understand what Mr. Bowler is

12    saying, so that they review these cases on a case-by-case

13    basis.

14         THE COURT:  Very good.  Well, it appears that

15    there's been good cooperation on this between the government

16    and defense counsel, and the Court appreciates that, and, of

17    course, expects that to continue as issues arise along the way

18    in scheduling this particular set of depositions and any other

19    foreign depositions that may be taken.

20         Anything further from any counsel regarding foreign

21    depositions?

22         (No response.)

23         Are there any other issues that counsel believes can

24    appropriately be taken up during our general session here?

25         Mr. Bowler, is there anything, or Ms. Kocher, on behalf

1  of the government?

2       MR. BOWLER:  We're not aware of anything else at

3  this time, your Honor.  Thank you.

4       THE COURT:  Very good.  Are there any other issues

5  for the general session that any defense counsel wish to take

6  up?

7       MR. HILL:  I've got one, your Honor.

8       THE COURT:  Yes, sir.

9       MR. HILL:  If you may recall, four months ago

10  everybody got computers -- or six months ago.  My client's was

11  taken away because he tried to plug a telephone jack into it.

12

13  He kept doing it, and the marshals took his computer away.

14  So, he doesn't have access to look at these tapes or CDs and

15  help me get through the evidence.

16      Marshal Parker wasn't aware of that until this

17  morning.  I told him.  And I mentioned to Mr. Bowler that I

18  would like permission for him to get his computer back.  It's

19  been four months.  I think he understands how important it is,

20  so he can review the evidence.

21      So, I am working with that, I'll tell the Court.

22      THE COURT:  Mr. Bowler?

23      MR. BOWLER:  The information we received is that

24  it was a serious matters with the marshals.  It was

25  essentially a breach of security or an attempted breach of

security by counsel's client.

Our hope is at this time to contact the marshal's office, see if this can be worked out in some informal way so that it can proceed and doesn't become an issue that's necessary for the Court to address in terms of the client becoming prepared with the material.

THE COURT:  Okay.  Well, Mr. Hill, you've pointed out it's been four months, and that's a long time.  And I'm not passing judgment on whether this particular defendant should or should not have access to the laptop, but it would seem that that issue needs to be resolved one way or the other, because time is moving on here.

So, I would direct the parties to consult with respect to that.  And, Mr. Hill, if a resolution can't be reached informally, then I would encourage you to file a motion as promptly as the determination is made that the resolution -- a resolution that's satisfactory to the defendant cannot be reached.

MR. HILL:  I will, your Honor.

THE COURT:  Very good.  Thank you.

Let us talk, then, about scheduling our next status conference.  It's always gratifying to hear that the work is continuing pace.  Nonetheless, I think it is useful for the Court to check in periodically.  So I would like to continue to meet periodically.

We've been meeting at approximately six-week intervals. If we kept on that schedule, I believe we would be meeting again around the week of November 16.

Does anybody wish to be heard regarding our -- the schedule that we have been maintaining and whether we ought to continue on a similar schedule?

Well, hearing no objection to that, how is the week of November 16 for counsel? I guess that's -- the 16th is a Tuesday.

Is that a convenient day for government counsel?

MR. BOWLER: As far as we know at the moment, your Honor.

THE COURT: Okay. Does any defense counsel know at this time if November 16th at 10 o'clock would be a date they could not make?

Okay. Very good. Well, let's schedule our next status conference, then, for November 16 at 10 a.m.

I assume it will be -- well, it may be in this courtroom, it may be in another courtroom in our building here, but we will let you know.

What I'd like to do now is meet in closed session with defense counsel.

I would ask, Mr. Bowler and Ms. Kocher, can we -- can the clerk reach you at your offices for when -- or later, after the Court finishes with defense counsel, of course? I

1  would like to meet with you in closed session, just to check

2  in, make sure there's nothing further that we need to address

3  or take up whatever concerns you may have.

4          MR. BOWLER:  Could I leave our numbers with the

5  clerk?

6          THE COURT:  Very good.  That will be fine.

7      Well, let's -- we'll take a brief recess while we close

8  the courtroom, and we'll meet with defense counsel as a

9  group.

10     (Recess taken at 11:01 a.m.)

11                     *     *     *

12     (Transcript of the sealed ex parte proceeding involving

13 all defense counsel appears under separate cover.)

14                     *     *     *

15                     CERTIFICATION

16     I certify that the foregoing is a correct transcript of

17 the record of proceedings in the above-entitled matter to the

18 best of my skill and ability.

19

20

   /s/ Harold M. Hagopian          October 27, 2010

21
   Official Court Reporter          Date

22

23

24

25