IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:09-CR-216-8

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
|     Plaintiff | ) | MEMORANDUM IN SUPPORT OF |
| | ) | MOTION TO COMPEL DISCOVERY |
| v. | ) | RE: "VIOLENT JIHAD" OR |
| | ) | ALTERNATIVELY, TO STRIKE |
| ZIYAD YAGHI, | ) | SURPLUSAGE FROM INDICTMENT |
|     Defendant | ) | |

Defendant Ziyad Yaghi, through counsel, submits this memorandum in support of his motion, pursuant to Rules 16 (a)(1)(E), 16(a)(1)(F), 16(a)(1)(G), and 7(d), Fed. R. Crim. P., for an Order compelling the Government to produce any and all documents, reports of examinations or tests, or expert reports which provide an objective, complete definition for the term "violent jihad" as used by the Government sixteen (16) times in the Second Superseding Indictment; alternatively, defendant Yaghi prays the Court strike from the Second Superseding Indictment any and all references to such phrase, as unnecessary surplusage which goes beyond a simple allegation of the elements of charged offenses.

**Statement of the Case**

Yaghi was indicted on or about July 22, 2009 alleging in Count One conspiracy to provide material support to terrorists, as defined in 18 U.S.C. § 2339A; and Count Two conspiracy to murder, kidnap, maim and injure persons as defined in 18 U.S.C. § 956(a). The Indictment has been Superseded twice (First Superseding on September 24, 2009 and the Second Superseding Indictment on November 24, 2010).

1

## Statement of Pertinent Facts

The Government has, to date, provided voluminous discovery herein, to include 30,000+ pages of documentary items, some 700 CDs and DVDs containing audio, video and other material, and more than twenty computer hard drives, containing further audio, video, and digital materials. The documentary, audio, video and digital materials all contain, at various points, discussions of the term "jihad" and its definition, its applicability to Muslims, its obligatory or non-obligatory nature, and its scope (such as whether it includes physical acts in addition to spiritual commitments). The term is defined in books, pamphlets, video clips, and audio recordings in several different ways, some of which are diametrically opposed to one another.

The Second Superseding Indictment (DE # 670) employs, as part of the allegations against defendants herein, the term "violent jihad" some 16 times in its text. The Government employs the term beginning on page 2 of the Second Superseding Indictment ("From 1989-1992, Daniel Patrick Boyd, a/k/a "Saifullah" traveled to Pakistan and Afghanistan where he received military style training in terrorist training camps for the purpose of engaging in violent *jihad*." (¶ 9)) and includes the term repeatedly, particularly throughout the conspiracy charges. (E.g., "It was the purpose and object of the conspiracy to advance violent *jihad* including supporting and participating in terrorist activities in specific locations outside the United States and committing acts of murder, kidnapping or maiming persons outside the United States." (¶ 12))

The Government does not define the term "jihad" or "violent jihad" at any point within the Second Superseding Indictment.

Neither the term "jihad" nor "violent jihad" appear within the text of any statute within Title 18 of the United States Code, or, for that matter, the text of the <u>entire</u> United States Code. It is therefore defendant's position that "jihad", whether violent or non-violent, is not – in

and of itself – a crime under United States law. "Jihad" is, without question, a word of Arabic origin, which the Oxford English Dictionary defines as both "a war or struggle against unbelievers" and "**the spiritual struggle within oneself against sin**". Oxford Dictionaries Online, www.oxforddictionaries.com, "jihad" (2011). Neither such definition, however, describes a crime punishable in this Court. The Fourth Circuit has defined "jihad" (in a footnote) as "a holy war undertaken as a sacred duty by Muslims." United States v. Abu-Ali, 528 F.3d 210, fn.1 (4 Cir. 2008), *citing* Webster's Unabridged Dictionary 1029 (2d ed. 2001). Merriam-Webster's online dictionary offers a more complete definition: "(1): a holy war waged on behalf of Islam as a religious duty; *also* : **a personal struggle in devotion to Islam especially involving spiritual discipline**; (2): a crusade for a principle or belief. Merriam-Webster Online, www.merriam-webster.com, "jihad" (2011).

## Discussion

Rule 16(a)(1)(G) requires the Government, upon request of the defendant, to produce a written summary of each of its expert witness's testimony, to include the "witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." Rule 16 does not impose a deadline for the defendant's request or the Government's production, but "it is expected that the parties will make their requests in a timely fashion." *Amendments to* Fed.R.Crim.P., 147 F.R.D. 387, 473 (1993). In United States v. Richmond, 153 F.R.D. 7, 8 (D.Mass.1994), the court addressed "the time within which the government must make the disclosure mandated by Rule 16(a)(1)(E)" (later relettered as Rule 16(a)(1)(G)). Reasoning that the Rule "'is intended to minimize surprise that often results from unexpected expert testimony, reduce the need for continuances, and to provide the opponent with a fair opportunity to test the merit of the expert's testimony through focused cross-examination,'" the court concluded that, to the extent possible, the Government

should produce the requested summary "forthwith upon the defendant's request." Id.; United States v. Willock, 696 F.Supp.2d 536 (D.Md. 2010).

On October 1, 2010, counsel for the Government provided to all defense counsel a written summary of the proposed expert testimony of two Government expert witnesses, Evan Kohlmann and Marc Sageman. The summary does not indicate whether Mr. Kohlmann or Mr. Sageman have expert testimony to offer regarding the definition of "violent jihad"; rather, their testimony appears to be projected to cover radical Islam and terror networks, generally. The Government has provided no reports of any kind from Mr. Kohlmann or Mr. Sageman. Defendant, therefore, is unaware whether the definition employed by the Government in its Second Superseding Indictment is consistent with, inconsistent with, or partially consistent with, a definition that its own expert witnesses will undoubtedly employ while testifying. The term "violent jihad" is clearly an important one to the Government, to have peppered the charging document with it so liberally, yet its definition and criminal importance are not set forth with similar certainty.

With no definition within the document itself, or the United States Code, or within an expert witness report based upon some specialized technical or professional skill, the defendant is left with the conflicts contained in the discovery materials as the source for such definition. This scavenger-based search for the terms used to accuse him of a crime is not the kind of "plain, concise and definite written statement of the essential facts constituting the offense charged . . ." Rule 7(c)(1), Fed. R. Crim. P.

Pursuant to Rule 7(d), it is within the court's discretion to strike "surplusage" from an indictment, and the Fourth Circuit has held that a motion to strike should be granted if it is clear that the challenged allegations are (1) not relevant to the charge or charges; (2) inflammatory; and (3) prejudicial to the defendant. United States v. Williams, 445 F.3d 724, 733 (4th Cir.2006)

4

(internal citation and quotation marks omitted). Defendant Ziyad Yaghi contends that the sixteen uses of the term "violent jihad" in the Second Superseding Indictment do, in fact, reach these benchmarks and therefore should all be stricken from the indictment.

First, defendant is charged with two conspiracies – (1) to provide material support to terrorists; and (2) to murder, maim and kidnap persons overseas. None of the elements of any conspiracy, charged anywhere under Title 18 of the United States Code, include "violent jihad"; rather, a conspiracy is generally defined as an agreement between two or more people to do some specific illegal act, and an overt act in furtherance of the crime. "Jihad", as noted above, is not an illegal act. Nor is it necessary to set forth in the indictment some kind of "background information" to explain what the conspiracy supposedly entailed: either Count One involved providing material support to terrorists, or it did not; either Count Two involved an agreement to commit crimes overseas, or it did not. It appears that the only reason the Government employed the term was to ascribe a *motive* to the defendants rather than to describe what exactly they did that was illegal. *Motive* is not an element of any criminal offense – it is merely explanatory information to describe *why* a crime was committed. *Motive*, therefore, is irrelevant to any of the charges against the defendant.

Second, it is self-evident that, since the attacks of September 11, 2001, the use of the term "jihad" is inflammatory by its very nature, and its use throughout an indictment (which the jury will be read, or be told about, or will read themselves) prejudices the defendant even prior to trial, as jury selection begins and the jurors are told of the charges. Repeated references to "violent jihad" are hardly necessary to prove the elements of a conspiracy, and are placed into the indictment in order to incite prejudice against the defendant and deprive him of a fair trial. As a consequence, this language may lead to a verdict based on emotion rather than fact.

5

Also, the entire "Manner and Means" sections of Count One is not an essential part of any indictment charging a conspiracy. See e.g., United States v. Recognition Equipment, Inc., 771 F.Supp.1 (D.D.C 1989)(holding that, since a conspiracy to commit an offense against, or defraud, the United States does not require any particular means or methods to be used, the allegations of means and methods in the indictment was not essential to a properly-framed indictment.) If is it not necessary, yet contains incessant prejudicial recitations of "violent *jihad*" and other Arabic/Islamic terms not necessary to the elements of the offense, it should be stricken. The jury should not be given any pre-conceptions about the defendant prior to trial, yet this Second Superseding Indictment provides just such a prejudice, and the Court should reign in the language of the Government to confine it to the charges under United States law that defendant actually faces.

The use of such broad terms, which have been and will continue to be discussed and debated by religious scholars for any more generations, have no place in a criminal charge or indictment. Again, the overzealous and improper use of religious terms combined with a criminal indictment or charges is calculated to generate action based upon fear and emotion, instead of an adjudication on the merits. The unrestrained use of fear and emotion further compromises and erodes the rights of expression, speech and religion.

## Conclusion

For the foregoing reasons, and upon the foregoing authorities, defendant Ziyad Yaghi prays the Court enter an Order: (1) compelling expert reports which provide a clear and concise definition of the term "violent jihad" as used in the Second Superseding Indictment, and providing the bases for such opinions; or, in the alternative (2) directing the United States to strike

from the Second Superseding Indictment any and all references to "violent jihad" and any other undefined term not necessary to the allegations of crimes against the defendant.

This the 24th day of February, 2011.

/s/ James M. Ayers II
Attorney for Defendant Ziyad Yaghi
Ayers & Haidt, P.A.
307 Metcalf Street
Post Office Box 1544
New Bern, North Carolina 28563
Telephone: (252) 638-2955
Facsimile: (252) 638-3293
jimayers2@embarqmail.com
State Bar No. 18085
Criminal – Appointed

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing ***MEMORANDUM IN SUPPORT OF MOTION TO COMPEL DISCOVERY RE: "VIOLENT JIHAD" OR ALTERNATIVELY, TO STRIKE SURPLUSAGE FROM INDICTMENT*** was filed with the clerk of court for the Eastern District of North Carolina using the electronic filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the following attorney of record:

Barbara D. Kocher, Esq.
Assistant U.S. Attorney
John S. Bowler, Esq.
Assistant U.S. Attorney
Jason Harris Cowley
Assistant U.S. Attorney
Suite 800, Federal Building
310 New Bern Avenue
Raleigh, NC 27601-1461

Debra Carroll Graves
Assistant Federal Public Defender
Rosemary Godwin
Assistant Federal Public Defender
Federal Public Defender's Office
150 Fayetteville Street, Suite 400
Raleigh, North Carolina 27601
Attorneys for Daniel Boyd

Jason M. Kellhofer
US Department of Justice
950 Pennsylvania Avenue NW
Room 2720
Washington, DC 20530

Robert J. McAfee
McAfee Law, P.A.
P.O. Box 905
New Bern NC 28563
rjm@mcafee-law.com

Attorney for Sherifi

Paul K. Sun
Ellis & Winters
Post Office Box 33550
Raleigh, North Carolina 27636
Attorney for Subasic

Myron T. Hill, Jr.
200 E. Fourth Street
P. O. Box 859
Greenville, NC  27835-0859
mhill@browning-hill.com
Attorney for Zakariya Boyd

Joseph E. Zeszotarski, Jr.
Poyner Spruill LLP
P.O. Box 1801
Raleigh, NC  27602
jzeszotarski@poyners.com
Attorney for Dylan Boyd

R. Daniel Boyce
Boyce & Boyce, PLLC
P.O. Box 1990
Raleigh, NC  27602-1990
dboyce@boyceandboyce.com
Attorney for Mohammad Hassan

This the 24th day of February, 2011.

/s/ *James M. Ayers II*
Attorney for Defendant Ziyad Yaghi
Ayers & Haidt, P.A.
307 Metcalf Street
Post Office Box 1544
New Bern, North Carolina 28563
Telephone:  (252) 638-2955
Facsimile:  (252) 638-3293
jimayers2@embarqmail.com
State Bar No. 18085
Criminal – Appointed