IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:09-CR-216-FL

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | |
| | ) | |
| HYSEN SHERIFI; | ) | |
| ANES SUBASIC; | ) | |
| MOHAMMAD OMAR ALY HASSAN; | ) | ORDER |
| and ZIYAD YAGHI, | ) | |
| | ) | |
| Defendants. | | |

This matter is before the court on the motions of Hysen Sherifi ("Sherifi"), Mohammed Omar Aly Hassan ("Hassan"), and Ziyad Yaghi ("Yaghi") to compel discovery regarding "violent jihad" or alternatively, to strike surplusage from indictment (DE ## 761, 771, 835), and the motion of Anes Subasic ("Subasic") to strike surplusage from indictment, or in the alternative, to compel discovery regarding "violent jihad" (DE # 785). The government has responded to the motions. In this posture, the issues raised are ripe for review. For the reasons set forth below, the motions are denied.

## STATEMENT OF THE CASE

Sherifi, Hassan, Subasic, and Yaghi (collectively, "moving defendants") are charged along with four other co-defendants in a thirteen (13) count second superseding indictment returned November 24, 2010. Counts one and two allege that beginning no later than November 9, 2006, and continuing through at least July 2009, the eight named co-defendants conspired with each other to provide material support to terrorists in violation of 18 U.S.C. § 2339A, and commit outside of the United States an act that would constitute murder, kidnaping, maiming, and injuring persons in

violation of 18 U.S.C. § 956(a). "Violent jihad" and actions taken in furtherance thereof are alleged as overt acts in the conspiracies. Counts four and eight charge that on or about June 10, 2009, and July 7, 2009, Sherifi, as well as co-defendants Zakariya Boyd ("Zak Boyd") and Daniel Partick Boyd ("Daniel Boyd"), possessed a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c). Count eleven (11) charges that on or about June 2008, and continuing through at least July 2009, Sherifi and Daniel Boyd conspired to kill officers and employees of the United States, in violation of 18 U.S.C. § 1117.[1] Counts twelve (12) and thirteen (13) charge that on or about December 2, 2003, Subasic knowingly made false statements while procuring and attempting to procure naturalization, and on his formal application for naturalization.

On January 31, 2011, Sherifi, Hassan, and Subasic filed the instant motions regarding the use of the term "violent jihad" in the second superseding indictment.[2] Yaghi filed his motion on February 24, 2011. On February 28, 2011, the government responded in opposition to Sherifi's, Hassan's, and Subasic's motions. On March 11, 2011, the government responded to Yaghi's motion, incorporating by reference the arguments made in its February 28, 2011, response.

## DISCUSSION

The term "violent jihad" appears approximately sixteen (16) times in the text of the second superseding indictment. Jihad is not defined in the indictment. Moving defendants contend that while the government has provided voluminous discovery, including over 30,000 pages of

---

[1] Pursuant to a plea agreement conditionally approved by the court on February 9, 2011, the government agrees to dismiss counts three through eleven against Daniel Boyd.

[2] Hassan's motion incorporates Sherifi's by reference. Subasic's motion, while substantively the same as Sherifi's and Hassan's, first requests an order striking as surplusage the repeated use of the term "violent jihad" from the second superseding indictment, or in the alternative, requests an order compelling the government to provide discovery of the term "violent jihad" in the form of documents, reports of examinations or tests, or expert reports.

2

documentary items, as well as audio, video, and other materials that contain the term jihad, that term is not clearly defined, and some of the discovery offers contradictory definitions of it. The Fourth Circuit has defined jihad as "a holy war undertaken as a sacred duty by Muslims." United States v. Abu-Ali, 528 F.3d 210 n.1 (4th Cir. 2008) (citing WEBSTER'S UNABRIDGED DICTIONARY 1029 (2d ed. 2001)). Moving defendants contend that a more complete definition describes jihad as a personal struggle in devotion to Islam, especially involving spiritual discipline.

Moving defendants ask for alternative forms of relief under Federal Rule of Criminal Procedure 16(a)(1)(G) and 7(d). The court will address each request in turn.

A.  Rule 16(a)(1)(G)

Moving defendants contend that under Federal Rule of Criminal Procedure 16(a)(1)(G), the government should be compelled to provide expert reports which provide a clear and concise definition of the term "violent jihad" as used in the second superseding indictment, and also provide the basis for such opinions.[3] Rule 16(a)(1)(G) provides that at a defendant's request, the government must give to the defendant a written summary of any testimony that the government intends to use under various rules of evidence during the government's case-in-chief at trial. Fed. R. Crim. P. 16(a)(1)(G). The rule does not impose a specific deadline, but the government should provide such information at a reasonable time prior to trial. See, e.g., United States v. Willock, 696 F.Supp.2d 536, 577 (D. Md. 2010); United States v. Lovin, 2007 WL 167454, *3 (E.D.N.C. Jan. 18, 2007). Federal Rule 16(a)(1)(E) requires the government, upon defendant's request, to permit defendant to inspect, copy, or photograph documents and objects material to the defense, that belong to the

---

[3] Moving defendants, as well as codefendant Dylan Boyd, have also filed motions with the court under rule 16(a)(1)(G) to compel expert witness reports or materials related to the experience and opinions of the government's proposed expert witnesses, Evan Kohlmann and Marc Sageman (DE ## 757, 764, 778, 788, 831).

3

defense, or that the government intends to use in its case-in-chief at trial. Fed. R. Crim. P. 16(a)(1)(E).

The government argues that it has provided all existing evidence that would fall within the ambit of rules 16(a)(1)(E) and (a)(1)(G), and that it is working with experts to obtain expert reports in which the concept of jihad "is expected to be discussed from a cultural and historical perspective." (Resp. Opp'n 4.) Moving defendants acknowledge that discovery has been "voluminous" and that the government has already provided a summary of the proposed expert testimony of Evan Kohlmann and Marc Sageman.

At this time, the court does not find basis to compel production of the expert reports moving defendants seek in light of the discovery already produced. The court acknowledges Sherifi's suggestion that a proposed jury instruction defining certain terms as they are used in the second superseding indictment might be beneficial, but declines to order the drafting of said jury instruction at this time.[4] In the same vein, the court declines to adopt, or require the government to adopt, a definition of violent jihad through expert testimony at this time. No party is estopped from arguing for a specific definition.

While the court does not grant moving defendants' request at this time on the specific grounds heretofore offered, the court reminds the government of its acknowledgment that discovery is a "continuing obligation," and that any expert report from an expert witness will be provided "as soon as possible." (Resp. Opp'n 4.) Denial of moving defendants' motion is without prejudice to renewal.

---

[4] A proposed jury instruction would be properly submitted to the court by the deadline for jury instructions, which is September 5, 2011.

4

B.  Rule 7(d)

Rule 7(d) of the Federal Rules of Criminal Procedure provides that upon a defendant's motion, the court may strike surplusage from the indictment or information. Fed. R. Crim. P. 7(d). A motion to strike surplusage from the indictment should be granted only if it is clear that (1) the allegations are not relevant to the charge and (2) are inflammatory and prejudicial. United States v. Williams, 445 F.3d 724, 733 (4th Cir. 2006) (citations omitted). It is within the court's discretion to strike charges in the indictment which are irrelevant or immaterial. United States v. Toliver, 972 F. Supp. 1030, 1042 (W.D. Va. 1997) (citing United States v. Kemper, 503 F.2d 327, 329 (6th Cir. 1974)).

Under the first prong of the Williams test, moving defendants argue that jihad is not an illegal act, and thus is an irrelevant term for the second superseding indictment. The terms jihad and/or "violent jihad" appear in various sections of the second superseding indictment—in the "general allegations," "manner and means" of count one, and the "overt acts" alleged in counts one and three. As a preliminary matter, overt acts alleged in a conspiracy need not be illegal. United States v. Hassan, 36 F.3d 1094, 1994 WL 532863, *4 (4th Cir. Oct. 3, 1994) (unpublished table decision). Accordingly, the fact that jihad itself is not an illegal act is not a reason to strike it from the indictment. See United States v. Abdi, 498 F. Supp. 2d 1048, 1086-87 (S.D. Ohio 2007) (denying motion to alter "violent jihad" language in the indictment based on defendant's argument that "violent jihad" is not an unlawful act.)

Additionally, moving defendants contend the only reason jihad is mentioned in the second superseding indictment is to ascribe a motive to them for the criminal offenses with which they are charged, and such motive is irrelevant to the charges. While the use of the term jihad might be

5

relevant to moving defendants' motives, that does not make use of the term irrelevant for purposes of the second superseding indictment. See, e.g., United States v. Hernandez, 85 F.3d 1023, 1030 (2d Cir. 1996) (affirming district court's denial of motion to strike overt acts involving cocaine offenses from an indictment charging heroin offenses because defendant's cocaine-related activity was "clearly relevant" to the structure and operation of the conspiracy and tended to establish nature of the relationship between co-defendants); United States v. Doreza, 2006 WL 1892509 *2 (E.D.Mich. July 10, 2006) ("The [language in the indictment] is relevant to showing Defendants' motive to commit the acts charged in the indictment . . . thus, [the language is] not surplusage."). The term "violent jihad" provides relevant detail regarding the overt acts defendants are alleged to have participated in with regard to counts one and three of the second superseding indictment.[5] (See Second Superseding Indictment ¶¶14, 15, 22, 23, 26, 27, 28, 30, 32, 33, 37, 61.) Furthermore, the Fourth Circuit has suggested that a limiting instruction will be sufficient to cure any potential prejudice when an indictment containing surplusage is sent to the jury. United States v. Polowichak, 783 F.2d 410, 413 (4th Cir. 1986).

Under the second prong of Williams, moving defendants contend that after the September 11, 2001, attacks, the use of the term jihad is inflammatory by its very nature, and will unfairly prejudice the jury against moving defendants. The court finds that the language in the second superseding indictment is not unduly inflammatory or prejudicial. Other districts have used the

---

[5] Moving defendants cite United States v. Recognition Equip., Inc., 711 F.Supp. 1, 5 (D.D.C. 1989), overruled on other grounds as recognized by Moore v. Hartman, 1993 WL 405785 (D.D.C. Sept. 24, 1993), to argue that the "Manner and Means" section of count one of the superseding indictment is unnecessary. However, the court in Recognition Equipment merely noted that manner and means are not an essential element of an indictment. Additionally, moving defendants argue that parts of the "manner and means" section should be stricken because of "incessant prejudicial recitations" of "violent jihad." (See, e.g., Sherifi Mot. Compel 8.) However, the word jihad only appears in the "Manner and Means" section four times, and this does not merit striking the entire section.

terms "violent jihad" and jihad in indictments. See, e.g., Abdi, 498 F. Supp. 2d at 1086-87; United States v. Hassoun, 2007 WL 4180847, *6 (S.D. Fla. Nov. 20, 2007); United States v. Sattar, 314 F.Supp.2d 279, 320-21 (S.D.N.Y. 2004); see also United States v. Al-Arian, 308 F. Supp. 2d 1322, 1356-57 (M.D. Fla. 2004) (denying motion to strike words "terrorism," "terrorist," and "terrorist activity" from indictment); United States v. Bin Laden, 91 F. Supp. 2d 600, 621-22 (S.D.N.Y. 2000) (denying motion to strike references to "terrorist groups and affiliated terrorist groups"). As such, moving defendants' motions are denied without prejudice to renewal.

## CONCLUSION

For the reasons discussed above, the motions to compel discovery regarding "violent jihad" or alternatively, to strike surplusage from indictment filed by defendants Sherifi, Hassan, Subasic, and Yaghi (DE # 761, 771, 785, 835) are DENIED without prejudice to renewal.

SO ORDERED, this the 18th day of March, 2011.

LOUISE W. FLANAGAN
Chief United States District Judge