IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:09-CR-216-FL-2
5:09-CR-216-FL-3
5:09-CR-216-FL-5
5:09-CR-216-FL-7
5:09-CR-216-FL-8


| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| HYSEN SHERIFI; | ) | |
| ANES SUBASIC; | ) | |
| DYLAN BOYD, a/k/a "Mohammed;" | ) | |
| MOHAMMAD OMAR ALY HASSAN; | ) | |
| and | ) | |
| ZIYAD YAGHI, | ) | |
| | ) | |
| Defendants. | ) | |

This case comes before the court on the motions of defendants Hysen Sherifi (D.E. 757[1]),

Anes Subasic (D.E. 788), Dylan Boyd ("Boyd") (D.E. 764), Mohammad Omar Aly Hassan (D.E.

778), and Ziyad Yaghi (D.E. 831) (collectively "defendants") for an order requiring the government

to produce additional information regarding the expected testimony and qualifications of its two

proposed expert witnesses on terrorism, Evan Francois Kohlmann, J.D., and Marc Sageman, M.D.,

Ph.D., pursuant to Federal Rule of Criminal Procedure 16(a)(1)(G). The government filed a joint

response (D.E. 870) to the motions of Sherifi, Subasic, Boyd, and Hassan, and a separate response

(D.E. 888) to Yaghi's motion, which incorporated the arguments set out in its first response. The

motions were referred to the undersigned for review and decision pursuant to 28 U.S.C. §

---

[1] A separate memorandum in support of the motion was filed at D.E. 758.

636(b)(1)(A). (*See* Docket Entries after D.E. 878 and 896, respectively). For the reasons that follow, the motions will be allowed in part and denied in part.

## DISCUSSION

### I. Rule 16 Expert Witness Disclosure Requirements

Rule 16(a)(1)(G) provides, in pertinent part, that "[a]t the defendant's request, the government must give to the defendant a written summary of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial." Fed. R. Crim. P. 16(a)(1)(G). The summary must describe three principal aspects of the witness's testimony: "the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." *Id.* The purpose of this rule is "to minimize surprise that often results from unexpected expert testimony, reduce the need for continuances, and to provide the opponent with a fair opportunity to test the merit of the expert's testimony through focused cross-examination." Fed. R. Crim. P. 16 Advisory Committee Note to 1993 Amendment.

Although the government has made disclosures regarding Kohlmann and Sageman, defendants contend that in all three principal areas to be addressed the disclosures provided are inadequate. Defendants seek an order requiring either written reports from these proposed expert witnesses or supplements to the previous disclosures. The court will examine the sufficiency of the government's disclosures in each of the three principal areas, starting with Kohlmann's and Sageman's qualifications and followed by their opinions and the bases and reasons for them.

### II. Qualifications of Kohlmann and Sageman

The court finds that the government has provided ample evidence of the qualifications of these two proposed experts. Although some of the defendants request specifically that the government provide them with the curriculum vitae ("CV") of these proposed experts, it appears that the government provided them on 10 May 2010. (*See* Boyd Mot. 1). Even if all of the moving

2

defendants were not provided with the CVs at that time, the CVs were included with the government's response to the instant motions. (*See* Gov.'s Resp., Ex. 1, Kohlmann CV (D.E. 870-1) and Ex. 2, Sageman CV (D.E. 870-2)). The CVs provide detailed information regarding the proposed experts' education, experience, and publications. (Kohlmann CV; Sageman CV). In addition, Kohlmann's CV lists each legal case in which he has testified or provided consulting services. (Kohlmann CV 2-3). Therefore, to the extent that defendants seek additional information on the qualifications of these witnesses, the motions will be denied.

## III.    Opinions of Kohlmann and Sageman, and Bases and Reasons for the Opinions

Defendants also contend that the government has not provided sufficient information regarding the opinions that these proposed experts are expected to offer in their testimony at trial. They complain that the summaries of the testimony provided to them are essentially too vague or general to enable them to prepare for cross-examination or to make other challenge to these witnesses. The government responds that the disclosures it has made satisfy the requirements of Rule 16.

Prior to responding to the instant motions, the government had disclosed information regarding Kohlmann's and Sageman's testimony in three letters. It has produced no reports for them.

The first letter, dated 30 April 2010 and sent to all defense counsel, stated that Kohlmann and Sageman "will testify about the following general subject matters during their testimony":

- The origins, history, and present day dogma and language of Islamic extremism — commonly referred to as terrorism.

- The meaning and context of various words and phrases used by the defendants which are commonly used by persons practicing extreme Islam.

- The structure and leadership of groups adhering to the principles of Islamic extremism.

- The manner and means employed by extremist Islamic groups to recruit individuals and the process of radicalization which occurs within such groups.

- The manner and means by which individuals physically join such groups, and support themselves and the group.

- Training camps, instructional methods, and operational logistics commonly utilized by such groups. Media materials utilized by such groups, to include video, audio, and documentary (pamphlets, primers, magazines, books, etc.) and the purposes for publication and dissemination of such media; as well as the origins and uses of specific media possessed by defendants.

- Internet resources commonly utilized by such groups to include email programs (*e.g.*, "Yahoo"), mapping capabilities (*e.g.*, "Google Earth"), video downloading and uploading (*e.g.*, via "YouTube").

- Security countermeasures and tradecraft used by such groups.

(Boyd's Mot., Ex. A (D.E. 764-1) at 3-5). As the letter itself suggests, this summary sets forth no opinions, but is simply a listing of "general subject matters" about which Kohlmann and Sageman will testify. This listing therefore does not describe the opinions of these proposed experts in compliance with Rule 16(a)(1)(G). It necessarily does not provide any bases or reasons for opinions of Kohlmann and Sageman.

By a second letter to defense counsel, dated 1 October 2010, the government provided further detail as to the substance of the proposed experts' expected testimony. With respect to Kohlmann, the government stated the following:

> Mr. Kohlman [*sic*] will focus on, though not limited to, the review of the media (writings, music, photographs, etc.), weapons, and combat gear possessed by the defendants as well as the manner and means of their travel, internet use, and communication by and between themselves and with others, and is expected to offer the opinion these media, weapons and gear, travel, and communication efforts comport with the manner and means by which known terrorists conduct their affairs. To this end, Mr. Kohlman [*sic*] bases his opinion on the discovery available in the case, as well as his experience through previous testimony and consultation as an expert, his experience in interviewing terrorists, terrorism defendants, and cooperating witnesses, and his education, travel, and research on the topic.

(Boyd's Mot., Ex. B (D.E. 764-2) at 2-3).

The court finds that this summary of Kohlmann's testimony is also deficient. The first deficiency is that, by its own terms, it is incomplete, describing what Kohlmann "will focus on, though not [be] limited to." (*Id.* at 2).

The summary also fails adequately to describe Kohlmann's opinions. According to the description, the opinions are that the "media, weapons and gear, travel, and communication efforts [of defendants] comport with the manner and means by which known terrorists conduct their affairs." (*Id.*). This description is at such a high level of generality that it does not adequately minimize the risk of surprise or provide an adequate opportunity for preparation of cross-examination, as Rule 16 requires.

More specifically, Kohlmann's opinion is that certain manners and means can be exhibited in each of the identified areas (*e.g.*, media, weapons and gear) that are indicative of terrorist activity and that defendants exhibited at least some of these manners and means in each area. But the description does not identify for any area what the terrorism-indicative manner and means are, nor which of those manners and means defendants exhibited. For example, although Kohlmann opines that there are certain terrorism-associated manners and means relating to writings, music, photographs, and other media, the government's description does not identify what those manners and means are or which of them defendants exhibited with respect to the media. Defendants' ability to develop a defense to Kohlmann's opinions is severely hindered without knowing what the terrorism-indicative manners and means are in each area and which of these manners and means defendants are alleged to have exhibited.

Moreover, the opinions are stated as to the defendants as a group. The impression conveyed is that all opinions apply equally as to all the defendants. If that is not the case, as appears possible, there needs to be a specification of which opinions apply to which defendants. After all, each defendant has separate counsel and that counsel needs notice of the opinions relating to his client.

5

It is no remedy to the inadequacy of the description of Kohlmann's opinions for the government to refer defendants to Kohlmann's published works. The government cannot properly shift to defendants an obligation Rule 16 places on it. In any event, defendants' review of Kohlmann's published works would not inform them of which of the opinions relate to them as a group or individually. The review would also not inform defendants of any unpublished opinions of Kohlmann that relate to defendants. In addition, such a review would not necessarily inform defendants whether Kohlmann has changed certain of his opinions.

The bases and reasons for Kohlmann's opinions stated in the government's description are, if anything, even less specific than the description of the opinions themselves. The description states, in effect, that the opinions are based on discovery in the case, Kohlmann's professional experience, and his education, travel, and research on terrorism. This description provides essentially no meaningful information about the bases and reasons for Kohlmann's opinions. It is particularly striking that the description provides no specification of the discovery Kohlmann relied upon given the vast discovery in this case. The description also fails to identify, without limitation, the particular interviews and research relied upon.

The government's description of Sageman's testimony suffers similar deficiencies. It reads:

> Dr. Sageman will be focusing on Islamic extremism as presented/experienced by a network of persons, to include the history, language, dogma, leadership, structure, and recruitment (to include training, travel, and radicalization), to express an opinion as to whether or not the defendants' acts and communications, as evidenced by the recordings and other material, comports [*sic*] with the manner and means by which terrorist networks conduct their efforts. He will base his opinion on the discovery in this case, in light of his personal experiences and professional education, research, and training in the area of terror networks.

(*Id.* at 3).

Paralleling the description for Kohlmann, this description indicates that Sageman's opinion is that Islamic extremism has certain characteristics (*e.g.*, a history, language, dogma), but nowhere

explains substantively what those characteristics are. Sageman also apparently has opinions regarding whether or not certain acts and communications by defendants comport with the manners and means used by terrorist networks. But the description does not explain what acts and communications are involved, which defendants engaged in which acts and communications, which manners and means of terrorist networks are involved, and which of the acts and communications comport with which manner and means of terrorist networks. The explanation of the bases and reasons for Sageman's opinions is as vague and unilluminating as those given for Kohlmann's opinions.

The third letter from government counsel, dated 25 January 2011 and sent to counsel for Boyd, does not provide the missing information for Kohlmann or Sageman. It states that "[t]he witnesses will describe the religious, political, geographical, military, and cultural setting that has produced the phenomenon of the radical Islamic terrorist and the aspects of the behavior of the defendants in this case which fit into that larger context and phenomenon." (Boyd's Mot., Ex. D (D.E. 764-4) at 1). Again, no information is provided about the substance of the proposed experts' opinions on the topics specified or the bases or reasons for such opinions.

In addition to its pre-motion disclosures in the three letters, the government described the opinions of Kohlmann and Sageman in its response to the instant motions. The response states that "[e]ach [expert] will in essence describe the phenomenon of violent Jihad and opine relative to how the defendants' conduct and statements fit within this phenomenon." (Gov.'s Resp. 6). The government also states that "the experts would be reviewing specific portions of the discovery, and that the experts would testify, based on their training and experience, that the defendants met those techniques, or beliefs, or training with which they are familiar." (*Id.*). This additional description does essentially nothing to further an understanding of Kohlmann's and Sageman's opinions or the bases and reasons for them.

The court concludes that the information the government has provided regarding the opinions of Kohlmann and Sageman is insufficient to satisfy Rule 16(a)(1)(G). It amounts to little more than a description of the topics about which Kohlmann and Sageman are expected to testify and does not identify their actual, substantive opinions. The government's descriptions do not, as Rule 16 envisions, "minimize surprise that often results from unexpected expert testimony, reduce the need for continuances, [or] . . . provide . . . [them] with a fair opportunity to test the merit of the expert's testimony through focused cross-examination." Fed. R. Crim. P. 16 Advisory Committee Note to 1993 Amendment; *see United States v. Day*, 524 F.3d 1361, 1371-72 (D.C. Cir. 2008) (affirming the district court's exclusion of defendant's[2] mental health expert on the grounds that the expert report disclosed to the government did not provide any conclusions or a diagnosis, but rather only "a page-long list of tests he had performed on [defendant], interviews he had conducted, and other expert reports he had read" thereby making it "virtually impossible for the Government to engage in meaningful cross-examination"). The vague descriptions of the bases and reasons for Kohlmann's and Sageman's opinions also fall far short of what Rule 16 requires. *See* Fed. R. Crim. P. 16 Advisory Committee Note to 1993 Amendment (stating that the summary of the bases of the opinions should include "not only written and oral reports, tests, reports, and investigations, but any information that might be recognized as a legitimate basis for an opinion under Federal Rule of Evidence 703, including opinions of other experts").

Therefore, to the extent that defendants seek additional information regarding the opinions of Kohlmann and Sageman and the bases and reasons for those opinions, the instant motions will be allowed. The government will be required to provide new descriptions of these aspects of Kohlmann's and Sageman's expected testimony.

---

[2] A defendant has a corresponding duty to make expert disclosures under Rule 16(b)(1)(C).

## CONCLUSION

For the foregoing reasons, IT IS ORDERED as follows:

1.      To the extent defendants seek further information regarding the qualifications of Kohlmann and Sageman, the motions (D.E. 757, 764, 778, 788, 831) are DENIED.

2.      To the extent defendants seek further information regarding the opinions that Kohlmann and Sageman will offer at trial and the bases and reasons for such opinions, the motions are ALLOWED.

3.      a.      The government shall serve on defendants no later than 25 April 2011 a new summary of the testimony it expects Kohlmann and Sageman to offer during its case-in-chief at the trial in this case.

              b.      The summary shall describe the substance of all the opinions that Kohlmann and Sageman are expected to offer as to each defendant and the bases and reasons for those opinions, including an identification of the discovery, research, interviews, or other information each of them considered in forming each opinion. The summary need not describe the qualifications of Kohlmann and Sageman, except for supplemental information on qualifications not previously provided defendants.

              c.      The summary shall conform to the provisions of Rule 16(a)(1)(G) and the associated advisory committee notes concerning opinions and the bases and reasons therefor. In particular, the summary shall avoid the deficiencies that characterize the summaries provided by the government to date as identified in this Order.

              d.      The summary shall be signed by counsel of record for the government.

              e.      Because the court anticipates that the required summary will be lengthy, it may be in the form of a report for each Kohlmann and Sageman.

4.     Failure by the government to adequately and timely describe to defendants the expected opinions of Kohlmann and Sageman and the bases and reasons therefor will subject any testimony on such matters to exclusion at trial.

SO ORDERED, this 4th day of April 2011.

James E. Gates
United States Magistrate Judge