IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:09-CR-216-FL

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| DANIEL PATRICK BOYD, et al., | ) | |
| | ) | |
| Defendants. | ) | |

This case came before the court on 17 May 2011 for a status conference and hearing on a pro se motion (D.E. 963) by defendant Anes Subasic. The proceedings were attended by Subsasic, serving as his own counsel (see D.E. 978, 980 at 11); Subasic's standby counsel, Paul Sun; and counsel for the other parties.[1] This order memorializes rulings made at and other decisions reached based on the conference and hearing.[2] IT IS ORDERED as follows:

**1.   Spelling and Pronunciation Guide for Court Reporter.** At the conference, the court solicited comment from the parties regarding their pre-trial submission of a list of non-routine terms they anticipate will be used during the trial. The discussion indicated the need for further description of the list, or guide, the court has in mind.

---

[1] At the start of the proceeding, the court confirmed Subasic's understanding of his right to simultaneous interpretation and the option provided him by the court to utilize the interpreter at his initiative and in clarification of certain words, including his obligation under this option to seek assistance from the interpreter in a timely fashion. The court also confirmed the court reporter's understanding of the arrangements that would apply. During the proceeding, Subasic himself addressed the court in English, seeking assistance from the interpreter with statements he wished to make only a couple of times, at most. His English was easily understandable. Continuously throughout the proceeding, Subasic did receive simultaneous interpretation from the interpreter of what others said. He complimented the professionalism of the interpreter and the quality of her translation during the proceeding. He also confirmed at the end of the proceeding that he had adequately understood what had been said. In addition, at the urging of the government, he expressly confirmed to the court his waiver of any diminution in the quality of the translation that could result from its provision at proceedings on other than a simultaneous basis. In keeping with his pro se role, Subasic himself did the vast majority of the presentation on his behalf at the proceeding. Standby counsel Sun spoke briefly on several occasions in a manner well-coordinated with the presentation by Subasic.

[2] The issue of maintenance of a log regarding Subasic's use of a computer while incarcerated, which was discussed at the conference, is the subject of a separate order.

The court therefore notes that the purpose of the guide is to familiarize the court reporter with non-routine terminology in order to minimize interruptions during trial for clarification of spellings. The guide should include such non-routine terms as people's names, place names, foreign language words, technical terms, and any other words that would reasonably be expected to require spelling clarification in the absence of prior knowledge of them. In the case of foreign language words, the phonetic spelling using the International Phonetic Alphabet should be provided. The guide should not address the meaning or translation of words.

The guide should consist primarily of a joint list of non-duplicative terms (*i.e.*, each term appears only once) arranged in alphabetical order reflecting all the terms the parties collectively wish to submit to the court, excluding only terms they believe need to be submitted under seal or ex parte to the court. This joint list would be accompanied by supplemental lists of any confidential terms.

To effect compilation of the guide, no later than 11 July 2011, the government shall serve on defendants a proposed joint list of terms. Defendants shall serve on the government (and each other) additions to the government's proposed joint list by 25 July 2011. The government shall file the final joint list, reflecting its proposed list and the non-duplicative additions by defendants, no later than 8 August 2011. By 15 August 2011, each party shall file a separate supplemental list of any purported confidential terms the party wants included in the guide. Such supplemental lists may be filed as proposed sealed and/or ex parte documents, provided they are accompanied by any motion and supporting memorandum required under the Local Criminal Rules.

2. **Requests for Daily Transcripts.** The court also discussed with the parties whether they would be seeking daily transcripts of trial proceedings. A "daily transcript" (or "daily copy") as referenced by the court is a copy of the transcript for the day's trial proceedings that is delivered

following adjournment of court for that day and prior to the normal opening hour of the court on the following day. *See generally* E.D.N.C. website, http://www.nced.uscourts.gov/html/courtreporters.htm (last visited 23 May 2011). Daily transcripts cost substantially more than regular transcripts. *See id.* http://www.nced.uscourts.gov/pdf_files/TranscriptFees.pdf. When a request for daily transcripts is allowed, they are provided for all proceedings on each day for each day of the trial. Daily transcripts cannot be provided for portions of proceedings or on an intermittent basis.

A party seeking daily transcripts will have to demonstrate a need for them because their use is disfavored, as explained in the *Guide to Judicial Policy*:

> Routine apportionment of accelerated transcript costs among parties in CJA cases is prohibited. The following resolution was adopted by the Judicial Conference in March of 1980, and modified in September of 1986:
>
>> That the furnishing of accelerated transcript services in criminal proceedings should be discouraged; however, recognizing that there are some circumstances in which such transcript services are necessary and required by either the prosecution or the defense, or both, accelerated transcript services may be provided.
>>
>> That in those cases where accelerated transcript services are provided, the party from whom the request or order emanates shall pay for the original, and if the requesting or ordering party is other than defense counsel appointed under the Criminal Justice Act, the CJA counsel shall be entitled to a copy at the copy rate.
>>
>> That the present practice, in some districts, of routinely apportioning the total cost of accelerated transcript services equally among the parties should be abandoned.

7 *Guide to Judicial Policy* § 320.30.20. In addition, defense counsel seeking daily transcripts should familiarize themselves with any special CJA requirements that may apply.

The discussion at the conference demonstrated that the parties need additional time to consider their respective positions on the issue of daily transcripts. Therefore, the government shall file no later than 1 June 2011 either an appropriate motion and supporting memorandum if it seeks

3

daily transcripts or, if it does not seek them, a duly signed notice to that effect. Each defendant shall file no later than 8 June 2011 either an appropriate motion and supporting memorandum if he seeks daily transcripts or, if he does not seek them, a duly signed notice to that effect.

3. **Process for Resolving Objections to Transcripts of Audio and Video Recordings.**
At the conference, the court discussed with the parties at length the need for a process for resolving objections to the transcripts of audio and video recordings that have been designated by one or more parties for possible presentation at trial. Related topics were also discussed. It was apparent from the discussion that the parties need additional time to consider the various matters discussed. The court is interested in obtaining the views of the parties to assist it in addressing the various issues presented.

The parties shall therefore confer no later than 30 June 2011 in good faith regarding the following matters:

(a) resolution of as many of the objections to the transcripts as possible;

(b) development of a proposed process for resolution of any remaining objections. The proposed process should address both objections suitable for resolution before trial and those suitable for resolution only at trial;

(c) the manner by which the parties wish to present evidence of the recordings at trial (*e.g.*, reading of transcripts, playing of recordings, a combination of both);

(d) possible stipulations into which the parties might enter regarding the transcripts or the underlying recordings that would simplify and facilitate the presentation of evidence at trial, including stipulations regarding authenticity; and

(e) identification of the need for any special listening equipment with respect to particular recordings or the recordings generally.

No later than 14 July 2011, the parties shall file a joint report that describes the results of their conference with respect to each of the foregoing matters. The report shall include specifically an indication of the number of objections that the parties have resolved, and the number and nature of the remaining objections, broken down by those for resolution pretrial and those for resolution during trial. The report shall include views of individual parties to the extent they differ from views otherwise set out.[3]

4. **Preparation of Jury Questionnaire.** As directed at the conference, the government shall file no later than 24 May 2011 a proposed consent order for the exchange of proposed jury questionnaires among the parties. The proposed consent order shall set a deadline of 15 July 2011 for the filing of single, joint proposed questionnaire or, if the parties cannot agree on a single questionnaire, separate proposed questionnaires.

5. **Subasic's Motion to Compel (D.E. 963).** Subasic's filing at docket entry 963 concerns the interviews of defendant Daniel Patrick Boyd that the government has produced to defendants. Portions of the interviews have been redacted. In his filing, Subasic indicates his desire to obtain the redacted portions from the government. On 13 May 2011, the court entered an order (D.E. 974) stating that it construed the filing as a motion, scheduling argument on the motion for 17 May 2011, and directing the government to file a response, which it timely did (*see* D.E. 983). At the inception of the hearing on the motion (which was preceded and followed by status conference matters), Subasic stated that he had not viewed his filing as a motion and that he was not prepared to argue it that day. When asked by the court, he stated that he wanted an opportunity to

---

[3] The court notes that the parties agreed to confer regarding the apparent discrepancy between the time stamp on at least some of the recordings produced by the government and the time stamp on copies of the recordings provided to defendants.

file a memorandum in support of his request. Therefore, as directed by the court, Subasic shall file any memorandum in support of his motion to compel no later than 24 May 2011.

6. **Other Relief Sought by Subasic.** At the conference, Subasic mentioned several types of relief he sought, including but not limited to appointment of an expert on Arabic translation and production by other defendants of various materials to him. Subasic may file an appropriate motion and supporting memorandum for such relief. If the deadline for seeking such relief has passed, the motion shall address why the tardiness does not bar the granting of the relief sought.[4]

7. **Method of Serving Subasic.** As directed at the conference, in light of Subasic's taking over his own representation, service shall be made upon him by serving both him directly and his standby counsel, Paul Sun. Service on Subasic directly may be effected during his incarceration at the Wake County Detention Center by mail addressed to him at that facility.

8. **Trial Estimate.** At the conference, the government reiterated its prior estimate of six to eight weeks for the trial of this case, but noted that a trial at the longer end of this range was most realistic.

SO ORDERED, this the 23 day of May 2011.

James E. Gates
United States Magistrate Judge

---

[4] At the conference, defendant requested access to certain seized material and he has already filed a motion seeking it (D.E. 994). On the issue of transport during trial of the documents Subasic has stored in his cell, he has suggested making a hand truck available for use on his behalf. Subasic's standby counsel shall confer with the United States Marshal's Service regarding a plan for any necessary transport of materials to and from Subasic's cell. Subasic may file an appropriate motion if suitable arrangements cannot be made through such discussions.