```
         IN THE UNITED STATES DISTRICT COURT FOR THE
             EASTERN DISTRICT OF NORTH CAROLINA
                       WESTERN DIVISION

                     NO. 5:09-CR-216-2-FL
                     NO. 5:09-CR-216-3-FL
                     NO. 5:09-CR-216-4-FL
                     NO. 5:09-CR-216-5-FL
                     NO. 5:09-CR-216-7-FL
                     NO. 5:09-CR-216-8-FL
```

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | NOTICE PURSUANT TO |
| | ) | |
| HYSEN SHERIFI | ) | Fed. R. Crim. P. 404(b) |
| ANES SUBASIC | ) | |
| ZAKARIYA BOYD, a/k/a "Zak" | ) | |
| DYLAN BOYD, a/k/a "Mohammed" | ) | |
| MOHAMMAD OMAR ALY HASSAN | ) | |
| ZIYAD YAGHI | ) | |

The United States of America, by and through the United States Attorney for the Eastern District of North Carolina, hereby gives notice pursuant to Fed. R. Crim. P. 404(b) of its intent to present in its case-in-chief evidence of additional, uncharged misconduct committed by the defendants and in connection with this notice shows unto the Court the following:

1. The Government provides this Notice out of an abundance of caution. However, the Government believes that the evidence in question should not be subject to 404(b) analysis but rather should be viewed as direct proof of the crimes charged, despite the fact that it may indicate wrong doing or a wrongful intent on the defendants' part extending outside the time frame of the current charges.

1

2. The Government intends to introduce in its case-in-chief evidence related to the following matters:

Defendant ZIYAD YAGHI:
   -evidence the defendant engaged in the sale of marijuana
   -evidence that the defendant sold one or more firearms to another individual who may not have been eligible because of his immigration status
   -evidence that the defendant possessed and practiced with firearms at a shooting range

The government believes the marijuana sales are directly pertinent to the charges in that the evidence suggests that such sales were intended to raise money for the purpose of waging jihad. The gun sale(s) was intended to increase the quality of the weaponry he was acquiring to wage violent jihad.

The possession and use of the firearms at a firing range, if they occurred after the defendant's conviction in Wake County for robbery, also constitute evidence of the uncharged crime of possession of a firearm by a felon in violation of 18 U.S.C. §922(g).

Defendant ANES SUBASIC
   -evidence that defendant had an extensive criminal history in Bosnia prior to his emigration to the United States including shooting, knifing and throwing a grenade into an occupied bar
   -evidence that the defendant blatantly lied about this record when applying for citizenship in the United States

The government has not lost sight of the fact that the Court considered these evidentiary issues in the severance context and has in fact severed defendant Subasic's immigration charges. The evidence is included in the 404(b) Notice with the thought that the evidence itself is distinct from the consideration of the

2

immigration charges.  More concretely, if the immigration charges were still joined the impact of the subject evidence might well be increased.  As the immigration charges will no longer be part of the jury's deliberative process, the fear of undue prejudice is lessened and the issue is more readily subject to containment with limiting instructions.

The government believes that this evidence, in conjunction with evidence that the defendant expended significant effort and funds in pursuing military type training even after he was in the United States, shows an intent on Defendant Subasic's part to be prepared to continue a pattern of violence which he had begun in Bosnia and includes the activity charged in the Indictment. Additionally, it shows intent in two additional respects: 1) as to the other members of the conspiracy in that his expertise in and history of violence was precisely what attracted them to him as a useful member of the conspiracy to wage violent jihad, and 2) Subasic used his expertise with weaponry and combat as a means of making himself attractive to the other defendants.

At one point Defendant Subasic is captured on a recording discussing his training on particular weapons and at another he matter-of-factly explains to a co-conspirator that one slaughters animals in the same manner one slaughters humans i.e. slicing the throat open from left to right.  The staff of an enterprise in Las Vegas, Nevada which specializes in training how to survive violent

3

assault and the skills necessary to escape if captured, recalls him telling them that he often takes such training. They also recall Subasic being among their most serious, attentive students and being particularly interested in and adept at the portion of the training which teaches knife throwing. The staff reports that this is a difficult skill to acquire and Mr. Subasic was rather gifted at it. Perpetrating and preparing for violence is a steady theme in defendant Subasic's life, and that theme relates directly to the current charges.

Defendant Subasic's lying to the United States Immigration authorities when denying that he has any criminal history, is further evidence of his intent and the absence of mistake. It enabled the defendant to evade the consequences of his conduct overseas and provided a safe haven from which to continue it, i.e., the United States.

It is perhaps worth consideration that having the criminal history is, at least from the perspective pf a 404(b) analysis, theoretically distinct from lying about it. However, it would seem that having the record and lying to cover it up are in fact a continuous course of action aimed at maintaining his freedom so that he can continue the struggle in a new venue.

<u>Defendant JUDE KENAN MOHAMMAD</u>:
    -evidence that in the course of the conspiracy the defendant was arrested in Pakistan and found in possession of a knife

Defendant Mohammed departed for Pakistan on or about October

4

6, 2008. He remains a fugitive and is believed to still be in Pakistan. On October 13, 2008, he was arrested in Pakistan by Pakistani authorities when he was found in the vicinity of the federally administered tribal area of Pakistan to which travel is restricted. On his person at the time was both a computer and a knife.

The federally administered tribal area of Pakistan is an unruly area which is well known as a scene of terrorist activity and training. The government believes that defendant Mohammed's being found in this area is direct proof relevant to the charged conspiracy. In essence, his success in penetrating to this area is one of the conspiracy's more successful endeavors. Pakistan is well recognized as a conduit for Islamic extremists to locate and join others in their efforts to further their brand of unlawful violence. Evidence of his presence and arrest there is thus highly probative of the current charges.

In the alternative, even if this evidence is held subject to 404(b) analysis, it is also probative of his and the other conspirators' intent, indeed resolve, to transform their plotting into action.

<u>Unindicted Co-conspirator</u>

Bajram Asllani should be treated as an unindicted co-conspirator and the evidence of his involvement in terrorist activities should be admitted as evidence directly supportive of

5

the current charges or, in the alternative, as evidence of uncharged misconduct admissible pursuant to Fed. R. Crim. P. 404(b).

The facts supporting this position include: on September 19, 2007, Asllani was arrested by Kosovo authorities for his involvement with a group which was planning terrorist attacks in the area of Novi Pazar in Serbia; on November 19, 2007, Serbia issued an Interpol Red Notice for his arrest as a result of his involvement with this group alleging that the group was organizing the acquisition of arms and explosives, establishing training, and recruiting members to conduct terrorist attacks in Novi Pazar. In February of 2009, defendant Sherifi began describing to CHS the fact that he had been communicating with a "brother" who was advising him as to how to go about becoming involved in fighting jihad. Sherifi sent both to his co-conspirator Daniel Boyd and to the CHS an email which contained a lengthy mujihadeen speech extolling jihad; Sherifi began the email by setting out "ebu_hatab@hotmail.com" just before the text of the speech. Sherifi reported that the brother communicating with him, a "ebu hatab," was from Mitrovica, Kosovo and was wanted by the authorities. Ebu Hatab forwarded to Sherifi a piece of jihadist propaganda which depicted a suicide bomber attacking an American convoy and asked Sherifi to translate it from English to Albanian. Sherifi explained to the CHS that he was talking with brothers

6

about going to Mitrovica where there were Serbs and thus it would be possible to die "shahid" meaning while fighting jihad. Sherifi explained that the brothers in Mitrovica were looking to buy various weapons and land on which to store the weapons and establish sharia law. Sherifi indicated that he might go back to North Carolina to find money to fund this effort. Sherifi used the code "put the meat and bread there" to reference storing the weapons on the land he wished to purchase in Kosovo.

On April 21, 2009, Asllani emailed Sherifi a web link and asked that Sherifi translate it. On April 30, 2009, Asllani emailed Sherifi asking if he had finished the translation yet. On May 5, 2009, Sherifi told a CHS that a brother he knew was going to give him $15-20,000 to buy a farm in Kosovo. On May 10, 2009, Sherifi, while at co-defendant Daniel Boyd's house, described an attempt to attack in Serbia and said that "Bajram Asllani" was involved in the attack. On May 18, 2009, Sherifi emailed Asllani at the "ebu_hatab" site and said he had not finished the translation but asked if Asllani had found a place to buy the farm in Kosovo. On June 25, 2009 Sherifi sent $80.00 to Bajram Asllani in Mitrovica, and on June 26, 2009, Bajram Asllani in Mitrovica picked up 55.68 Euros which corresponded with the $80.00 at the prevailing exchange rate. In other communications, Sherifi described Asllani as a true Mujahideen who had been in jail and wanted to set up a place to hide weapons and take power in Kosovo.

7

Sherifi also commented that this "brother" did not have papers because of his arrest and was not allowed outside of Kosovo.

In short, Sherifi brought Asllani, already dedicated to the waging of violent jihad, directly into the conspiracy charged in this case. All the evidence relating to this is directly pertinent to the charges at hand.

Case Law

Evidence of "other crimes" should be distinguished from evidence arising from the same series of transactions as the charged offenses or evidence that is necessary to complete the story of the charged conduct or the context of the charged crimes. See United States v. Kennedy, 32 F.3d 876, 886 (4th Cir. 1994) (approving evidence of criminal conduct involving uncharged individuals which took place a year before the charged conspiracy period without reliance on Rule 404(b); United States v. Mark, 943 F.2d 444, 448 (4th Cir. 1991).

Assuming *arguendo* that the court concludes that portions of the above referenced material is subject to 404(b) analysis, it is important to place the issue within the decisional frame-work.

Such evidence of "bad acts" or "uncharged misconduct" is admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b). Such evidence must be 1) relevant to an issue other than character; 2) necessary in the sense that it is

probative of an essential claim or an element of the offense; and 3) reliable.  See United States v. Queen, 132 F.3d 991, 995 (4th Cir. 1997) *cert. denied* 523 U.S. 1101 (1998); United States v. Uzenski, 434 F.3d 690 (4th Cir. 2006); United States v. Bailey, 990 F.2d 119, 122 (4th Cir. 1993); United States v. Mark, 943 F.2d 444, 447 (4th Cir. 1991).

The balancing of relevance against prejudice required by Rule 403 is in the hands of the trial judge and will not be overturned unless its ruling is arbitrary or irrational.  United States v. Bilzerian, 926 F.2d 1285, 1296 (2nd Cir. 1991)(admission of evidence of $4 million error in tax return for uncharged year).  See also United States v. Gray, 405 F.3rd 227, 238-40 (4th Cir.) *cert. denied* 126 S. Ct. 275 (2005)(evidence of murder of 1st husband and collection of life insurance admitted in trial of murder of 2nd husband); United States v. Middleton, 246 F.3d 825, 835 (6th Cir. 2001)(tax return from more than 20 years earlier admissible).

The Middleton Court specified that appellate review of a trial court's balancing of probity versus prejudice pursuant to Rule 403 required a look at the evidence "in the light most favorable to its proponent, maximizing its probative value and minimizing its prejudicial effect." Id. at 835, citing United States v. Zipkin, 729 F.2d 384, 389 (6th Cir 1984).

Even where proffered 404(b) evidence threatens prejudice, the Fourth Circuit accepts jury instructions as a sufficient remedy.

9

See United States v. Hodge, 354 F.3d 305, 312(4th Cir. 2004); United States v. Mohr, 318 F.3d 613, 620(4th Cir. 2003).

In conclusion, the government believes that all of the evidence noticed herein is either intrinsically intertwined with the current charges, their context and background or is relevant to the defendants' intent, lack of mistake, and knowledge such as to be properly admitted in the government's case-in-chief. Any undue prejudice is readily subject to cautionary instructions by the Court.

Respectfully submitted, this 31st day of May, 2011.

> GEORGE E. B. HOLDING
> United States Attorney
>
> BY:/s/ John S. Bowler
> JOHN S. BOWLER
> BARBARA D. KOCHER
> Assistants U.S. Attorney
> 310 New Bern Avenue, Suite 800
> Raleigh, NC 27601
> Tel: 919-856-4530
> Fax: 919-856-4487
> Email: barb.kocher@usdoj.gov
> State Bar No.  16360
> Email: john.s.bowler@usdoj.gov
> State Bar No. 18825
>
> JASON KELLHOFER
> Trial Attorney
> U.S. Department of Justice
> National Security Division
> Counter-Terrorism Section
> 10th St. And Penn. Ave., N.W.
> Room 2740
> Washington, DC 20530
> Tel: (202 353-7371
> Fax: (202) 353-0778
> Email: jason.kellhofer@usdoj.gov
> OH Bar No.  0074736

CERTIFICATE OF SERVICE

This is to certify that I have this 31st day of May, 2011, served a copy of the foregoing upon counsel for the defendants in this action by electronically filing the foregoing with the Clerk of Court, using the CM/ECF:

Rosemary Godwin
and Debra C. Graves
Federal Public Defender
150 Fayetteville St. Mall
Suite 450
Raleigh , NC 27601-2919

Robert J. McAfee
McAfee Law, P.A.
P. O. Box 905
New Bern , NC 28563

Paul Sun
P.O. Box 33550
Raleigh, NC 27636

R. Daniel Boyce
Nexsen Pruet, PLLC
4141 Parklake Ave., Suite 200
P. O. Box 30188
Raleigh, NC 27612

James M. Ayers, II
307 Metcalf Street
Post Office Box 1544
New Bern, North Carolina 28563

Joseph E. Zeszotarski, Jr.
Poyner & Spruill
PO Box 1801
Raleigh, NC 27602

Myron T. Hill , Jr.
Browning & Hill
200 E. Fourth St.
Greenville , NC 27835

and further, upon defendant Anes Subasic by placing a copy postage pre-paid in first class mail addressed to: Anes Subasic, Public Safety Center, Attn: Wake County Jail, Post Office 2419, Raleigh, NC 27602.

    /s/ John S. Bowler
BY: JOHN S. BOWLER
Assistant United States Attorney
Criminal Division
310 New Bern Avenue, Suite 800
Raleigh, NC 27601
Telephone: 919-856-4530
Fax: 919-856-4487
E-mail: john.s.bowler@usdoj.gov
N.C. Bar # 18825