IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:09-CR-216-FL

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | |
| | ) | |
| DANIEL PATRICK BOYD, a/k/a | ) | |
| "Saifullah;" | ) | |
| HYSEN SHERIFI; | ) | ORDER |
| ANES SUBASIC; | ) | |
| ZAKARIYA BOYD, a/k/a "Zak;" | ) | |
| DYLAN BOYD, a/k/a "Mohammed;" | ) | |
| MOHAMMAD OMAR ALY HASSAN; | ) | |
| and | ) | |
| ZIYAD YAGHI, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on the government's motion in limine (DE # 1046), filed May 31, 2011. Defendants Hysen Sherifi ("Sherifi"), Anes Subasic ("Subasic"), Dylan Boyd, Mohammad Omar Hassan ("Hassan"), and Ziyad Yaghi ("Yaghi") have responded in opposition. In this posture, the issues raised are ripe for review. For the following reasons, the government's motion is denied.

**STATEMENT OF THE CASE**

Defendants are charged in a thirteen (13) count second superseding indictment returned November 24, 2010. Counts one and two allege that beginning no later than November 9, 2006, and continuing through at least July 2009, the eight named co-defendants conspired with each other to provide material support to terrorists in violation of 18 U.S.C. § 2339A, and commit outside of the United States an act that would constitute murder, kidnaping, maiming, and injuring persons in

violation of 18 U.S.C. § 956(a). "Violent jihad" and actions taken in furtherance thereof are alleged as overt acts in the conspiracies.

The second superseding indictment charges Daniel Boyd with receiving a firearm through interstate commerce in violation of 18 U.S.C. § 924(b); two counts of possession of a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c); two counts of knowing sale of a firearm to a convicted felon in violation of 18 U.S.C. § 922(d)(1); two counts of making a false statement in violation of 18 U.S.C. § 1001(a)(2); knowing provision of ammunition to a convicted felon in violation of 18 U.S.C. § 922(d)(1); and conspiracy to kill a federal officer or employee in violation of 18 U.S.C. § 1117. Zakariya ("Zak") Boyd also is charged with two counts of possession of a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c).[1]

In addition to the conspiracy charges, Sherifi is charged with two counts of possession of a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c) and conspiracy to kill a federal officer or employee in violation of 18 U.S.C. § 1117. Dylan Boyd is charged with knowing sale of a firearm to a convicted felon in violation of 18 U.S.C. § 922(d)(1). Counts twelve and thirteen charge that on or about December 2, 2003, Anes Subasic knowingly made false statements while procuring and attempting to procure naturalization, and on his formal application for naturalization, in violation of 18 U.S.C. § 1425(a).[2]

---

[1] Pursuant to plea agreements conditionally approved by the court on February 9, 2011 and June 7, 2011, the government agrees to dismiss counts three through eleven against Daniel Boyd and counts two, four, and eight against Zak Boyd.

[2] Counts twelve and thirteen have been severed for separate trial, pursuant to order entered January 28, 2011, lodged on the docket at entry 750.

2

## DISCUSSION

The government seeks to exclude the following: (1) defendants' introduction, either through cross-examination of government witnesses or in their own cases, of self-serving exculpatory statements; (2) defendants' inquiry into, through questioning or argument, classified or privileged investigative sources, methods, and information that are not the source of evidence admitted at trial; and (3) defendants' potential arguments that certain unlawful conduct is protected by the First Amendment. The court addresses each request in turn.

### A.   Exculpatory Statements

The government seeks complete exclusion of all "self-serving, exculpatory hearsay by any defendant through cross-examination of government witnesses or examination of others in their own case." (Mot. in Limine 2.) Specifically, the government references the rule of completeness, arguing that it does not offer an exception to the hearsay rule, and quoting United States v. Wilkerson, 84 F.3d 692, 696 (4th Cir. 1996), for the proposition that the rule of completeness does not apply to conversations. Defendants oppose the motion and challenge the government's interpretation of the rule of completeness.

The court does not read the government's motion as an attempt to exclude all of defendants' exculpatory pretrial statements. Instead, the government's motion seeks to limit all exculpatory hearsay. Yet such motion is unnecessary. It is fundamental that hearsay is inadmissible. Rule 802 of the Federal Rules of Evidence explicitly states that "[h]earsay is not admissible except as provided by these rules or by other rules prescribed by the Supreme Court pursuant to statutory authority or by act of Congress." Fed. R. Evid. 802. It is the role the court to ensure that testimony at trial is not tainted with hearsay, and neither party need file a motion in limine to prevent its admission where

3

an objection at trial is available.

As for the rule of completeness, that common law doctrine has been partially codified in Rule 106 of the Federal Rules of Evidence. Wilkerson, 84 F.3d at 696. Rule 106 provides that when "a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it." Fed. R. Evid. 106. The rule's purpose "is 'to prevent a party from misleading the jury by allowing into the record relevant portions of the excluded testimony which clarify or explain the part already received.'" United States v. Bollin, 264 F.3d 391, 414 (4th Cir. 2001) (quoting Wilkerson, 84 F.3d at 696). As the government notes, Rule 106 does not, however, "render admissible the evidence which is otherwise inadmissible under the hearsay rules." United States v. Lentz, 524 F.3d 501, 526 (4th Cir. 2008) (quoting Wilkerson, 84 F.3d at 696). Thus, inadmissible hearsay does not become admissible merely because the rule of completeness might apply.

The government contends that Wilkerson stands for the proposition that conversations cannot be covered by the rule, and that any defendant who seeks to admit portions of a conversation under the rule of completeness should be barred from doing so. Wilkerson does not advocate such a complete ban. That case involved a particular factual scenario in which on cross examination, the defendant sought to elicit from a government witness exculpatory statements the defendant made in a conversation with the witness. A recording of the conversation itself was not being offered into evidence; rather, in response to the witness' testimony, the defendant tried to inject exculpatory hearsay from a conversation into the record. The court properly denied admitting the hearsay. 84 F.3d at 696-97.

The court does not interpret Wilkerson to mean that a conversation that was recorded and which recording is offered into evidence could not be subject to the rule of completeness. The rule of completeness exists to clarify written or recorded statements admitted at trial if such clarification would prevent the offered evidence from misleading the jury, whether or not the evidence offered under the rule is exculpatory or inculpatory, and as long as the evidence is not otherwise inadmissible. Whether such a scenario will arise at trial cannot be predicted at this point; most likely whether a statement or recording is admissible will not be evident until trial. Thus the government's request for a blanket pretrial prohibition is inappropriate. Controlling Fourth Circuit precedent has applied the rule of completeness in various situations, and should a situation arise at trial when its application is necessary, the court will apply it. See, e.g., United States v. Mohr, 318 F.3d 613, 626 (4th Cir. 2003) (allowing witness to read from a statement after defense extensively cross-examined him on portions of the statement); United States v. Ellis, 121 F.3d 908, 920 (4th Cir. 1997) (admitting entire FBI 302 report into evidence to assist jury in determinating witness's credibility after portions of the report were mentioned in cross examination).

The court will also abide by Fourth Circuit precedent that states that the rule of completeness does not render admissible evidence that is otherwise inadmissible. And as stated earlier, inadmissible hearsay will not be allowed at trial, unless an exception applies.[3] Accordingly, the government's motion to exclude all self-serving hearsay is denied.

---

[3] In his response in opposition, Subasic asks if when he testifies he will be permitted to talk about "cut-out FISA words" as he contends they are exculpatory. It is too early to forecast what the court's evidentiary ruling would be for any witness' testimony. However, the court reiterates that hearsay is inadmissible, and as previously noted, Subasic, despite proceeding *pro se*, is required to follow the Rules of Evidence as are all other parties to this proceeding. Subasic is encouraged to work with standby counsel in preparation for trial to educate himself fully on the rules.

**B.     Classified Information Procedures Act ("CIPA")**

The government seeks a pretrial order precluding defendants from inquiring on direct or on cross-examination into any areas that implicate classified materials deleted from discovery pursuant to section four of CIPA, 18 U.S.C. app. 3. The motion describes the process of deletion that occurred in CIPA § 4, the defendants' opportunity to provide notice of intent to disclose classified information under CIPA § 5, and the government's opportunity under CIPA § 6 to hold a hearing concerning use, relevance, and admissibility of classified information. Defendants express confusion over this request, noting specifically that since they do not know what was deleted from discovery, they cannot delve into unknown topics during questioning.

Defendants have given CIPA § 5 notice in this case, which notice, to the extent it requested relief from the court, was denied as moot in order entered June 26, 2011, lodged on the docket at entry 1192. The government's motion seeks to prevent defendants from engaging in any lines of questioning at trial that would implicate or lead to the potential disclosure of classified information. No party will be permitted to disclose or seek the disclosure of classified information through questioning of witnesses. As the court has expressed multiple times, the government's right to protect classified information "is absolute," and the court has no authority to second guess the government's classification determinations. Moussaoui, 591 F.3d at 281 n.15; see also United States v. Abu Ali, 528 F.3d 210, 253 (4th Cir. 2008) ("[W]e have no authority[] to consider judgments made by the Attorney General concerning the extent to which the information . . . implicates national security." (citations omitted)). Thus, should questions posed to a witness require answers that include classified information, the court would sustain any government objection to such questioning. Still, CIPA is a flexible act, and it vests the court with "wide latitude to deal with

6

thorny problems of national security in the context of criminal proceedings." Abu Ali, 528 F.3d at 247.

Specifically, CIPA § 8 contemplates the scenario the government seeks to avoid. CIPA § 8(c) provides that:

> During the examination of a witness in any criminal proceeding, the United States may object to any question or line of inquiry that may require the witness to disclose classified information not previously found to be admissible. Following such an objection, the court shall take such suitable action to determine whether the response is admissible as will safeguard against the compromise of any classified information. Such action may include requiring the United States to provide the court with a proffer of the witness' response to the question or line of inquiry and requiring the defendant to provide the court with a proffer of the nature of the information he seeks to elicit.

CIPA § 8(c). This procedure affords an appropriate amount of protection from the unauthorized disclosure of classified information, and the court finds that adherence to CIPA § 8(c) at trial, particularly requiring specific proffers from the parties should questioning appear to implicate classified material, is preferable to the restriction the government seeks. Defendants have expressed that they are not aware of how they would intentionally or unintentionally elicit the disclosure of classified information, and where CIPA § 8 provides adequate safeguards to be implemented at trial to prevent such disclosure, no blanket pretrial order is required. Furthermore, any blanket order would no doubt be unspecific and confusing since no witness lists have been filed, and with trial still over two months away, an attempt by the court to limit specific questions would be, at best, a guessing game.

Accordingly, the government's motion for a blanket order prohibiting inquiry into subject matter that implicates CIPA is denied. Such denial is made, however, with the express

7

understanding that CIPA and the limitations and processes it dictates will be rigidly adhered to, as has been the court's practice throughout this case. Defendants will not be permitted to sidestep the statute's requirements through questioning witnesses.

C.   **First Amendment**

Lastly, the government seeks an order prohibiting defendants from arguing to the jury, including during opening statements, that what the government contends is defendants' unlawful conduct is protected by the First Amendment. Defendants vigorously oppose the motion. Defendants argue that the government's motion is based upon a fundamental premise, which they oppose, that the conduct at issue in this case is unlawful. Defendants want to suggest at trial that the conduct they engaged in was protected by the First Amendment.

The court finds merit in both the government's and defendants' arguments, and notes that the briefs reveal potential problems of presenting the jury with legal instead of factual questions at trial. Such practice will not be permitted, as it is the jury's role to determine whether the evidence supports the charges leveled against defendants, and not what the law is or whether the law is correct.

The government is correct in its assertion that there is no First Amendment defense to the crimes with which defendants are charged. The parties' briefs focus primarily on count one of the second superseding indictment, which charges defendants with violating 18 U.S.C. § 2339A, providing material support to terrorists. Courts have rejected First Amendment challenges to this statute and its sister statute, 18 U.S.C. § 2339B (prohibiting providing material support or resources to designated foreign terrorist organizations). See United States v. Lindh, 212 F. Supp. 2d 541, 570 (E.D.Va. 2002) ("The First Amendment's guarantee of associational freedom is no license to supply

8

terrorist organizations with resources or material support in any form, including services as a combatant. Those who choose to furnish such material support to terrorists cannot hide or shield their conduct behind the First Amendment."). Thus defendants may not argue, or more importantly, suggest directly or indirectly, that the conduct charged in count one of the second superseding indictment is protected by the First Amendment.

The court finds, however, that granting the government's motion would go too far. While the government correctly points out that the First Amendment provides no constitutional right to actively support violent crime, the wording of the government's motion would suggest that defendants should not be allowed to mention the First Amendment at all at trial, a restriction that strikes the court as inappropriate. As defendants note, it is the government's burden at trial to prove that defendants engaged in unlawful conduct. Based on defendants' briefs, it seems that defendants intend to challenge exactly what "conduct" the government contends is unlawful. This is a permissible argument to make. However, in making opening and closing arguments and in questioning witnesses, defendants may not invite jury nullification by suggesting that the First Amendment is a defense to the crimes charged.[4] Both sides may submit proposed jury instructions regarding the First Amendment, and such proposals will be considered by the court at the appropriate time.[5] Accordingly, the government's motion to exclude reference to the First Amendment is denied.

---

[4] Neither may defendants pose legal questions to the jury, such as questioning the legality of the statutes with which defendants are charged. See United States v. Hammoud, 381 F.3d 316, 329 (4th Cir. 2004), vacated and remanded on other grounds by 543 U.S. 1097 (2005) (upholding constitutionality of 18 U.S.C. § 2339B in the context of its "sister statute," § 2339A); United States v. Sattar, 314 F.Supp.2d 279, 304-05 (S.D.N.Y. 2004) (denying First Amendment challenge to § 2339A); cf. Holder v. Humanitarian Law Project, 130 S.Ct. 2705, 2730 (2010) (upholding a civil constitutional challenge to § 2339B).

[5] The court notes that Hassan's motion includes example jury instructions on free speech, one which appears to be from a District of Idaho case in which the defendant was charged with, among other things, violation of 18 U.S.C. § 2339A. The current deadline to file proposed jury instructions is September 5, 2011, and the parties are encouraged to submit
(continued...)

9

## CONCLUSION

For the foregoing reasons, the government's motion in limine (DE # 1046) is DENIED.

SO ORDERED, this the 11'<sup>th</sup> day of July, 2011.

_____
LOUISE W. FLANAGAN
Chief United States District Judge

---

[5](...continued)
such instructions as they see fit, in conformance with this opinion.