IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:09-CR-216-FL

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | |
| | ) | |
| DANIEL PATRICK BOYD, a/k/a | ) | |
| "Saifullah;" | ) | |
| HYSEN SHERIFI; | ) | ORDER |
| ANES SUBASIC; | ) | |
| ZAKARIYA BOYD, a/k/a "Zak;" | ) | |
| DYLAN BOYD, a/k/a "Mohammed;" | ) | |
| MOHAMMAD OMAR ALY HASSAN; | ) | |
| and | ) | |
| ZIYAD YAGHI, | ) | |
| | ) | |
| Defendants. | ) | |

This matter comes now before the court upon motion of defendant Dylan Boyd to sever from trial his co-defendant Anes Subasic (DE # 1054). This defendant asserts his right to a fair trial can be preserved only by severing his trial from the trial of co-defendant Anes Subasic. Defendant Hysen Sherifi joins in the motion (DE # 1060), as does defendant Ziyad Yaghi (DE # 1077), and remaining defendant Mohammad Omar Aly Hassan (DE # 1089). For the reasons that follow, the motion made by defendant Boyd and adopted by the others is allowed. Certain other matters of or relating to the conduct of defendants' trials also are considered.

## BACKGROUND

Defendants express grave concerns about prejudice accruing to them during trial as a result of anticipated actions of defendant Subasic. Subasic has not responded to the motion in writing;

however, statements made by him at hearing July 29, 2011, indicate he does oppose severance. Defendant Subasic feels very strongly he should go forward at trial joined with the co-defendants. The government, while repeatedly advocating that the court should take certain actions in the course of this litigation because, among other things, of defendant Subasic's manipulativeness, opposes the motion. It persists in wanting to try all defendants, including defendant Subasic who now represents himself, in one trial proceeding.

The seriousness of the crimes charged, and past case events have been summarized at length on the docket. Many prior orders address variously a myriad of matters raised up by defendant Subasic whose course since May 13, 2011, after a two day hearing pursuant to Faretta v. California, 422 U.S. 806 (1975), he himself has driven. On this date, over three months' ago, defendant's election to proceed *pro se* was ratified.

The court has cause now to reflect again on this election, and the consequences not only for defendant Subasic but also for his co-defendants. After a full day's hearing and conference, convened at New Bern on July 29, 2011, which place is the site of the trial scheduled to begin September 19, 2011, attended by all defendants and their counsel, the ramifications of defendant's election are made manifest.

## COURT'S DISCUSSION

A.     Motion to Sever

Rule 14 of the Federal Rules of Criminal Procedure provides in part:

> If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

Fed. R. Crim. P. 14(a). The determination of the risk of prejudice is left to the sound discretion of the district court. Zafiro v. United States, 506 U.S. 534, 540-41 (1993). The appropriate standard for evaluating a motion to sever once defendants have been joined under Rule 8(b) is whether there exists "a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro, 506 U.S. at 539. The Zafiro court noted that courts have long noted that the *pro se* status of one defendant in a multi-defendant case can cause prejudice requiring severance as a remedy. United States v. Dougherty, 473 F.2d 1113, 1126 (D.C. Cir. 1972).

Where courts have concerns regarding a *pro se* defendant's lack of legal training, the delays caused by same, and the potential for that *pro se* defendant to act out during trial in a prejudicial manner, courts have granted a motion to sever under Rule 14 requiring that the *pro se* defendant be tried separately. See, e.g., United States v. Martin, 1008 U.S. Dist. Lexis 13613 (E.D. Tenn. 2008).

The court determines here that severance is necessary to avoid the prejudice that the other defendants would suffer in light of Subasic's *pro se* status, particularly because of delays arising, and also because of his lack of legal training. Any acting out that has occurred to date of which the court may be aware has been cabined to spaces within the province of the United States Marshal Service ("USMS") or the local jail, and not in the courtroom. While the interpreter did comment July 29, 2011, about his intensity, the undersigned and the magistrate judge presiding over regular administrative conferences both have observed this defendant appropriately restrained in courtroom surroundings.

3

However, defendant Subasic obviously is untrained in the law. He intends on representing himself in a long, complex trial. He repeatedly has shown proclivity to distract from the issues in the main. Consistently, both in writing and orally, and during court proceedings, he seeks to revisit issues already decided. The lack of training coupled with propensity to delay born of fervent hope, it appears, that his will finally can be impressed even after adverse ruling has been made, creates very real, concerning, issues for his co-defendants, who are entitled to the just determination of the proceeding, simply and fairly, without unjustifiable expense and delay. Fed. R. Crim. P. 2.

Defendant Subasic relies on the services of an interpreter in court, and proceedings frequently are interrupted when he believes that there are problems with the interpretations, again as shown July 29, 2011. Moreover, all the other defendants participated in a process to correct errors in transcriptions, the accuracy of any being a matter for the jury to decide. This defendant's approach to the transcriptions raises the specter of a trial within a trial, as minor discrepancies appearing to this court and the other defendants raise major concerns for this defendant who has previewed a strategy that likely will create very serious delays at trial, if permitted. The court makes no decision now on the manner or method of transcription presentation to the jury beyond that which was considered July 29, 2011; however, the approach this defendant signals he likely will attempt if pursued with the regularity his submissions portend, is very concerning.

As defendant Boyd writes through counsel, "[w]ith all due respect to Mr. Subasic, he is ill-equipped to handle a complex case like this, and his *pro se* involvement will cause many delays and prolong what is already going to be an extremely protracted trial." (Mot. Sever 3.) With this, for many reasons, the court must agree.

In the instant motion, filed May 31, 2011, defendant Boyd refers to the status conference

convened two weeks earlier, on May 17, 2011, which "turned into a somewhat protracted affair, the majority of which involved Mr. Subasic engaging the Court in lengthy discussions about issues that concerned him." (Mot. Sever 3 n.1.) On July 29, 2011, it was necessary for the court to take up many issues concerning defendant Subasic, a number of which devolved around the services of his interpreter, referred to in *ex parte* order and *ex parte* notice lodged on the docket since that hearing in address of interpreter issues.

The court undertook a phased hearing and conference, at which all defendants were present when common issues were considered, which progressed to the point where the court was able to excuse the other defendants and counsel, and address only defendant Subasic, in the company of the his standby counsel and the interpreter, and (sometimes) the government. The same phasing, permitting focus exclusively on the concerns of defendant Subasic, cannot reasonably be employed at jury trial for any extended period without prejudice to the other defendants, and to the trial processes themselves.

As defendant Boyd notes in the instant motion, "[t]he Government takes a more sinister view of Mr. Subasic's decision to proceed *pro se*, noting in prior filings that it believes that 'the personality profile which has emerged from [Subasic's] in-court behavior alone provides good reason that he will seek to manipulate the Court and the trial of this matter in every way he can devise and his mind seems to be quite fertile in this regard' and that '[h]eightening the prospect of [Subasic's] abusing the process is the obvious fact that his mind is both fertile and active.' [DE-968] at 4-5." (Mot. Sever 3-4.)

When one co-defendant elects as here to proceed *pro se*, the court must take appropriate steps to ensure that his actions do not prejudice the other defendants. United States v. Sacco, 563

F.2d 552, 556-57 (2d Cir. 1977). The court is convinced under the circumstances presented that nothing less than severance that will provide the necessary protections.

1. Shackles

Defendant Subasic, subject to special administrative measures, along with the other defendants, all are on notice that they may be shackled during the jury trial. It is well-established that forcing a defendant to undergo trial in chains is "inherently prejudicial," Holbrook v. Flynn, 475 U.S. 560, 568-69 (1986), and should only be tolerated in cases of dire necessity. See Illinois v. Allen, 397 U.S. 337, 344 (1970). "[S]hackling and prison clothes are unmistakable indications of the need to separate a defendant from the community at large," Holbrook, 475 U.S. at 569, and therefore pose a threat to the presumption of innocence and the integrity of the fact-finding process. See id. at 567-68. However, the Supreme Court has recognized that a trial judge may resort to measures such as shackles, binding and gagging, or removing a defendant from the courtroom until he promises to conduct himself properly, in order to handle disruptive and defiant defendants and to maintain dignity, order, and decorum in the courtroom. Allen, 397 U.S. at 344.

If the government believes that counseled defendants, not otherwise subject to special administrative measures, should be shackled, it shall be prepared to show the dire necessity in this case, also in light of question raised July 29, 2011, by at least one defendant through counsel, as to whether shackles will be applied. The court need not address this finally concerning these defendants until immediately prior to the start of trial.

However, all defendants are noticed that these measures may be taken should shackles be deemed necessary. The USMS in that event will endeavor to minimize ability of a member of the jury to apprehend shackles on any defendant. The court is aware of certain procedures it may take,

too, in administration of the trial to avoid unnecessary disclosure of shackles, to include introduction of defendants into the courtroom before members of the jury arrive, and removal after the jury has been excused. Moreover, skirts have been inserted in the courtroom around all defense tables to block any viewing by the jury of the defendants' legs.

Still, these problems are aggravated when a defendant is representing himself because the defendant has, as the court in Abdullah v. Groose noted, "the Hobson's choice of trying to move about as necessary in the course of his self-representation, thus drawing the jury's attention to the shackles, or conducting his defense while seated behind the counsel table." 44 F.3d 692, 695 (8th Cir. 1995), rev'd on other grounds by Abudullah v. Groose, 75 F.3d 408 (8th Cir. 1996). Defendant Subasic, subject to special administrative measures, absent some special showing, will be required to be shackled, as dire necessity has been shown. This includes but is not limited to issues concerning him generally considered at his detention hearing and/or which have resulted in application by the Department of Justice in special administrative measures or, more pointedly, the manner of his current confinement. Escape at worst or obstruction at best, too, seems on his mind, as revealed by his acting on desire to test his lock picking skills last week. Specifically, the court is aware of his attempt July 29, 2011, to pick the lock of his cuffs, while in the New Bern holding cell. While the court does not invite it to try its case against defendant Subasic in the context of informing why he should be constrained at trial, the government may amplify upon the record on any other or additional specific reasons why there is dire necessity for shackles, in furtherance of the court's finding in the case as to defendant Subasic.

Defendant Subasic has indicated in prior hearings and again July 29, 2011, that he appreciates the significance of waiving counsel; however, the long-recognized gravity of forcing

7

a defendant to trial in chains gives the court cause to re-review this with this defendant. A shackled defendant who seeks to represent himself reveals need to separate himself from the community at large. Defendant, as he noted July 29, 2011, is determined to represent himself.[1] While efforts will be undertaken to mitigate prejudice, and promote the integrity of the fact-finding process, defendant Subasic must consider these issues now in the context of trial. Severance, however, will aid in mitigating prejudice to him. The distinction between counsel's abilities to move about as necessary vis a vis defendant Subasic's will not be at issue. Neither will there be any issue concerning application of any heightened security to this defendant vis a vis a co-defendant.

2.   Time of Trials

The court is confident that a sufficient number of potential jurors will be available for the conduct of two trials, one after the other, with jury selection beginning September 19, 2011, as noticed already. It is the court's intention to try first the movants, who successfully have sought to be severed from defendant Subasic, and second defendant Subasic.

In aid to trial planning, the parties are noticed that the court is considering the following. That it will need to qualify a total of seventy-nine (79) potential jurors. For the trial of the four defendants, a total of thirty (30) jurors initially will be qualified, permitting assembly of a jury of twelve (12) persons permitting each of the four defendants having three peremptory challenges which of course may be pooled. Twelve (12) additional ones will be qualified from which four will

---

[1] Defendant indicated at hearing that to go forward with Paul Sun, now standby, as his counsel, would be tantamount to "suicide." The skills of this attorney and the diligence exercised by him and his staff are evidenced on the record and in the CJA materials which, for all defendants receiving representation through a CJA panel member, the court noticed July 29, 2011, will be placed upon the record at conclusion of trial, *ex parte,* under seal.

8

be selected to serve as alternates. The government and the defendants together will each be allowed four strikes. The remaining four individuals will serve as alternates.

For the trial of defendant Subasic, the court will qualify a total of thirty-seven (37) persons. Twenty-eight (28) persons first will be qualified, from which a jury of twelve (12) will be assembled, with the government having its six strikes to exercise and defendant a full complement of ten strikes. An additional nine persons then will be qualified from which three will be selected to serve as alternates, with the government and defendant Subasic each getting to exercise three peremptory strikes in that additional phase.

B. Other Matters

Question was raised July 29, 2011, also about attire and whether the court would permit street attire to be worn, to which it responded in the affirmative. Defendants, through counsel or standby counsel, shall consult with a representative of the USMS to determine if any limitations on street attire may be imposed by it during trial, and raise issue(s) resulting, if any, to the court also at the August 15, 2011, status conference.

**CONCLUSION**

For the reasons given, motion of defendant Dylan Boyd to sever from trial his co-defendant Anes Subasic (DE # 1054), joined in by defendant Hysen Sherifi (DE # 1060), defendant Ziyad Yaghi (DE # 1077), and defendant Mohammad Omar Aly Hassan (DE # 1089), is ALLOWED.

Defendant Subasic, subject to special administrative measures, along with the other defendants, all are on NOTICE that they may be shackled during the jury trial. If the government believes that counseled defendants, not otherwise subject to special administrative measures, should be shackled, it shall be prepared to show the dire necessity in this case, also in light of question raised July 29, 2011, by at least one defendant through counsel, as to whether shackles will be

9

applied. Defendant Subasic, subject to special administrative measures, is on NOTICE that he will be required to be shackled, absent some compelling consideration, as dire necessity has been shown. Faretta requirements that the trial judge inform defendant of the effect shackling will have on his ability to represent himself are deemed now satisfied. The court will take up and address questions, if any, defendant Subasic may have at conference August 15, 2011, arising from the application of shackles, necessary by him to any reconsideration of his decision to represent himself. With jury selection beginning September 19, 2011, the parties will be heard at status conference August 15, 2011, also concerning impact, if any, of severance on jury selection procedures. In aid to trial planning, the parties also are NOTICED of additional strikes to be accorded, number of alternate jurors being considered, and other pertinent information concerning jury selection, where a total of seventy-nine (79) qualified potential jurors reasonably are necessary for the conduct of the two trials. Where in addition to question concerning shackles, question was raised by defense counsel July 29, 2011, about attire and whether the court would permit street attire to be worn, to which it responded in the affirmative, defendants, through counsel or standby counsel, shall CONSULT with a representative of the USMS to determine if any limitations on street attire may be imposed by it during trial, and raise issue(s) resulting, if any, to the court at the August 15, 2011, status conference.

SO ORDERED, this the 5 day of August, 2011.

LOUISE W. FLANAGAN
Chief United States District Judge