IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:09-CR-216-FL

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | GOVERNMENT'S NOTICE |
| | ) | RE: ACCOMMODATION |
| v. | ) | AS TO TRANSCRIPT |
| | ) | AND MOTION TO |
| DANIEL PATRICK BOYD, et. al. | ) | RECONSIDER |

The United States of America, by and through the United States Attorney for the Eastern District of North Carolina, hereby provides Notice, as invited by the Court, as to an accommodation it has proposed to defendants in reference to the Court's direction to arrange a solution relative to the presentation of transcripts at the trial of the above-captioned matter. The United States also moves the Court to reconsider its warning that it will bar the use of transcripts at trial unless such an accommodation is reached. In furtherance of such Notice and Motion to Reconsider, the government shows unto the Court the following:

PROCEDURAL/FACTUAL BACKGROUND

At the conclusion of the Daubert hearing conducted by this Court on August 16, 2011, the Court directed all parties to confer and arrange an accommodation relative to the presentation of transcripts in the scheduled trial. The issue has arisen because the defense is demanding that they be permitted to present their points of contention relative to the transcripts simultaneously with the government's presentation. The Court made very clear that

1

it was seriously considering barring the use of transcripts entirely unless the opposing sides reached an accommodation with one another. The Court was not swayed by the government's assertion that such a warning posed a disproportionate danger only to the side which bears the burden of proof.

ARGUMENT

The government has produced to the defendant an exceedingly large quantity of recorded evidence which captures various defendants exhorting one another to pursue violent jihad, how best to train and prepare for violent jihad, arming for violent jihad, and discussing options as to finding a way to the battlefields on which they might have an opportunity to kill American and other forces who are trying to subdue the violent radicals who threaten the United States and its allies.

Under the Court's direct and active supervision, the government has expended large resources, both in manpower and money, in meeting deadline after deadline set by the Court relative to the preparation and perfection of the transcripts at issue. At the Court's direction, the government has engaged in repeated and extensive exchanges with all defendants to assure that each of them had the most recent iteration of these transcriptions, and a sufficient opportunity to scrutinize them and proof read them in comparison with the recordings.

Defendant Subasic, as has been repeatedly demonstrated, is

impossible to cooperate with regardless of the issue. With him accommodation leads only to further accusation, insult and a new list of complaints. He is firmly entrenched in the mind set which at the time of his arraignment led him, in his *pro se* capacity, to enter the plea "framed by government crooks." Leaving him aside, the transcript preparation process has, as to the recordings designated by the government, succeeded in narrowing the disputed points of accuracy to what the government believes to be a nearly innocuous portion of the whole.[1]

The remaining points of dispute ought to be subject to resolution like any other issue of fact which the jury must decide.

---

[1] The government designated a total of 555 recordings for possible use at trial. The initial preparation of transcript preparation was contracted out by the Federal Public Defender's Office. There was a general agreement that the product of this process was of poor quality. The government undertook an extensive process of correction and submitted these to the defendants. As a result of the government adopting certain objections and paring down the recordings it plans to use at trial, the points of contention have been reduced to the following: **Yaghi**, none; **Sheriffi** (objections limited to the identification of background noise which the government is eliminating from its transcripts), none; **Dylan Boyd** objections to 6 recordings: **1)** #36 asks for the deletion of one line attributed to Dylan; **2)** #57 delete one word, reflect a comment as directed to Zak rather than Dylan, request to mark one line attributed to Dylan as "inaudible" and the speaker unknown; **3)** #60 change five attributions to Dylan to inaudible and the speaker unknown; **4)** #78 change seven statements attributed to Dylan as being said by Daniel, change 11 statements attributed to Dylan to "inaudible" and make two other deletions; **5)** #80 change one identified speaker to "male"; **6)** #129 delete eight lines attributed to Dylan, change one statement attributed to Dylan to Daniel, change one attribution to Dylan to unidentified and inaudible.

The adversarial system is well equipped to accomplish this and the process itself has a laudable tendency to be self-limiting. That is, competent trial practitioners rarely spend significant trial time contesting insignificant points of disagreement lest they be viewed as unreasonable and forfeit credibility.

The Court's warning that it might ban transcripts is far-and-away a disproportionate danger to the government - because the burden of proof is born by it. Decisions from the bench in significant matters such as the Indictment pending before the Court, have practical as well as legal impact beyond the present litigation. This is so even when the specific decision does not become a separately scrutinized appellate issue. The Court's handling of the issue of transcripts in this matter is likely to instruct the defense bar that it is in their best interest to be as contentious as possible and demand simultaneous presentation of their contentions during the government's case-in-chief. If nothing else, the distraction of forcing the jury to simultaneously consider dueling transcripts may succeed in blunting the justly chilling impact of the evidence.

Further aggravating the situation, is the fact that a small portion of the recordings the government intends to present during its case-in-chief consists of a portion of a conversation conducted in a foreign language. Absent an authenticated transcript, the government would be forced to present the conversation while

simultaneously having a witness on the stand to translate. The recording would of necessity have to be played in small segments to permit the translator/witness to convert it to English. Without such a procedure, the evidence would be rendered useless to an English-speaking jury.

Recorded evidence is frequently a central tool in bringing violent terrorists to justice. Inappropriately undermining its effective presentation in an adversarial trial runs counter to the root principles of the criminal process and thereby weakens the Executive Branch's ability to protect and defend. The government is well aware that transcripts are essentially a form of demonstrative evidence and that the recordings themselves, not the transcripts, are the evidence. However, they are undeniably an important aid to the effective and efficient presentation of recorded evidence. While the same effect might be achieved by close and repeated scrutiny, there is no need to force a jury to spend days studying and re-studying such evidence when a transcript, carefully prepared and presented to the defendants long in advance, can bring the evidence into focus in a fraction of the time. See: <u>United States v. Capers</u>, 61 F.3d 1100, 1107 (4th cir. 1995)(no abuse of discretion in admission of transcripts where defendants had opportunity to cross examine, to submit their own versions if they wished and Court instructed that tapes, not transcripts were the evidence); <u>United States v. Pratt</u>, 351 F.3d

131, 140 (4th Cir.) *cert. denied* 540 U.S. 1024 (2003)(where dangers of prejudice arise in admission of tapes and transcripts, the Court generally favors a cautionary instruction over exclusion).

During the July 29, 2011, hearing when the Court reported an inclination to permit the transcripts to go to the jury, the Court itself cited the following authority as supportive of this decision: <u>United States v. Collazo</u>, 732 F.2d 1200, 1203 (4th Cir. 1984)(no abuse of discretion to permit jury to use transcripts where government authenticated accuracy, defendants free to cross examine and dispute and Court gave proper limiting instructions, defendants are not free to force the Court to itself undertake a laborious review of the transcripts nor force it to ban the transcripts by registering a general objection); <u>United States v. Francis</u>, 141 F.3d 1160 (4th Cir. 1998), 1998 WL 141159(no abuse of discretion to permit jury access during deliberation to tape and transcript not played in Court where it was properly authenticated, defendants had access to recordings well before trial, had opportunity to cross-examine authenticating witness and Court gave limiting instruction); <u>United States v. Crouse</u>, 993 F.2d 229 (4th Cir. 1993) 1993 WL 138525(no abuse of discretion in permitting use of transcripts prepared by the government where Court properly instructed the jury and encouraged the defense to cross-examine based on the tapes). The Court was correct. The government has engaged in an extensive, cooperative effort to produce, review and

correct and has succeeded in reducing the points of contention to discrete portions of six recordings objected to by defendant Dylan Boyd alone. Defendant Boyd is free to contest the portions he has objected to. The Court will certainly give correct limiting instructions.

To ban the use of transcripts on these facts is to essentially give the defendant a veto power he has absolutely no right to.

This Court, like others, is zealous in its requirement that evidence presentation be done via computer technology whenever feasible. Surely, the Court's motivation for this is to ensure the most efficient, effective pursuit of justice possible. The proper use of transcripts dwarf computer technology as a means of furthering these objectives.

Forcing the government to accommodate the simultaneous presentation of competing transcripts propounded by the defense is inappropriate and cannot be justified by any particular circumstance in the case at hand. The government has worked long, hard and in good faith to make certain that its transcripts are accurate. Indeed, it has already made numerous alterations to them to reflect objections from the defendants. What remains are relatively few and insignificant points of dispute which the defendants are fully capable of presenting during their portion of the trial. They should have every opportunity to focus the jury on whatever discrepancies they believe material. However, there is no

need to up-end the normal flow of the adversarial process by permitting them to present competing editions in the midst of the government's case-in-chief.

Such a procedure is akin to if not worse than demanding the government suspend the presentation of its case after each witness to permit the defendants to present a rebutting witness. Even in that scenario the witnesses would not be testifying at the same time. Truly guilty defendants would delight in such procedural chaos as their best hope of distracting from the impact of the evidence arrayed against them.

At the Daubert hearing, when the government asked the Court to reconsider its mandate to accommodate or risk losing the transcripts, the Court replied to the effect that the government ought to be more accommodating. The government has been exceedingly accommodating and cooperative throughout the lengthy process of discovery and transcript preparation. The government has raised no objection to the rigorous authentication process supervised by the Court. However, it should not be made to simply capitulate because a defendant objects to some portion. On the record here, it would be an abuse of the Court's discretion to effectively force the government at the trial stage to compromise the effectiveness of its evidence presentation.

## ACCOMMODATION

In the event the Court declines to re-consider and withdraw

its warning to banning the use of transcripts, the government is prepared to consent to the presentation of written transcripts marked as defense exhibits, in which the defendants' contentions are color highlighted and tabbed.  The government will not force a showing of authenticity and will not object to the Court instructing the jury that the transcripts marked as defense exhibits contain the defendants' contentions as to certain disputed words and that at the conclusion of the government's presentation as to a specific recording, the jury should take a few moments to review the noted points of contest.  Additionally, the government will remove all descriptions of background noise and substitute the bracketed words "[background noise]."  During the defendants' case they may make whatever use of the highlighted, tabbed version of the transcripts the rules of evidence and the Court permit.

The initial reaction by defense counsel indicated that these measures would satisfy their concerns.  However, they have not formally registered their position.  The government believes that this proposal is sufficiently accommodating that the Court should rule that the defendants must embrace it or accept a return to the normal adversarial process including admission of authenticated transcripts.

## CONCLUSION

On the bases of the argument set forth above, the government moves the Court to re-consider and withdraw its warning to ban

transcripts.

In the event the Court declines to reconsider its position requiring accommodation, the government moves the Court to accept the proposal herein and rule that the defendants must agree to this or face a return to the normal adversarial process, including the admission of authenticated transcripts.

Respectfully submitted this 18th day of August, 2011.

        THOMAS G. WALKER
        United States Attorney

        /s/ John S. Bowler
        JOHN S. BOWLER
        Assistant United States Attorney
        United States Attorney's Office
        310 New Bern Ave., Suite 800
        Raleigh, NC 27601
        Telephone (919) 856-4312
        Fax (919) 856-4828
        Email: john.s.bowler@usdoj.gov
        State Bar NC # 18825

        /s/Barbara D. Kocher
        BARBARA D. KOCHER
        Assistants U.S. Attorney
        310 New Bern Avenue, Suite 800
        Raleigh, NC 27601
        Tel: 919-856-4530
        Fax: 919-856-4828
        Email: barb.kocher@usdoj.gov
        State Bar NC # 16360

        /s/Jason Kellhofer
        JASON KELLHOFER
        Trial Attorney
        U.S. Department of Justice
        National Security Division
        Counter-Terrorism Section
        10th St. And Penn. Ave., N.W.
        Room 2740
        Washington, DC 20530
        Tel: (202 353-7371
        Fax: (202) 353-0778
        Email: jason.kellhofer@usdoj.gov
        OH Bar # 0074736

CERTIFICATE OF SERVICE

This is to certify that I have this 18th day of August, 2011, served a copy of the foregoing upon counsel for the defendants in this action by electronically filing the foregoing with the Clerk of Court, using the CM/ECF:

Rosemary Godwin
and Debra C. Graves
Federal Public Defender
150 Fayetteville St. Mall
Suite 450
Raleigh , NC 27601-2919

Robert J. McAfee
McAfee Law, P.A.
P. O. Box 905
New Bern , NC 28563

Paul Sun
P.O. Box 33550
Raleigh, NC 27636

Myron T. Hill , Jr.
Browning & Hill
200 E. Fourth St.
Greenville , NC 27835

R. Daniel Boyce
Nexsen Pruet, PLLC
4141 Parklake Ave., Suite 200
P. O. Box 30188
Raleigh, NC 27612

James M. Ayers, II
307 Metcalf Street
Post Office Box 1544
New Bern, North Carolina 28563

Joseph E. Zeszotarski, Jr.
Poyner & Spruill
PO Box 1801
Raleigh, NC 27602

and further, upon defendant Anes Subasic by placing a copy postage pre-paid in first class mail addressed to: Anes Subasic, Public Safety Center, Attn: Wake County Jail, Post Office 2419, Raleigh, NC 27602.

    /s/ John S. Bowler
BY: JOHN S. BOWLER
Assistant United States Attorney
Criminal Division
310 New Bern Avenue, Suite 800
Raleigh, NC 27601
Telephone: 919-856-4530
Fax: 919-856-4487
E-mail: john.s.bowler@usdoj.gov