UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLOINA
WESTERN DIVISION
CASE NO.: 5:09-CR-216-8FL

| | |
|---|---|
| United States of America, ) | |
|     Plaintiff ) | |
| ) | Post Hearing Brief in Support of |
| -vs- ) | Motion to Exclude Testimony of |
| ) | Evan Kohlmann by Defendant |
| Ziyad Yaghi, ) | Ziyad Yaghi |
|     Defendant ) | |

Now comes Defendant Ziyad Yaghi, by and through counsel, and respectfully requests that the Court exclude any report or testimony by government' witness Evan Kohlmann because: 1) his testimony is not relevant, 2) Kohlmann's contentions criminalize conduct protected by the First Amendment, 3) his opinions exceed even his own claimed area of expertise, 4) the probative value of his testimony would be far outweighed by the danger unfair prejudice, 5) Kohlmann is not qualified to testify as an expert, 6) Kohlmann overstates the extent to which his work is subject to peer review and 7) Kohlmann acknowledges that there are insufficient Homegrown Terrorist groups or organizations with which to perform any relevant analysis.

# TABLE OF CONTENTS

I. **KOHLMANN'S OPINIONS AND TESTIMONY ARE NOT RELEVANT**

   A. **KOHLMANN REPORT**

   B. **TESTIMONY IN OTHER TERRORISM CASES**

II. **KOHLMANN'S CONTENTIONS CRIMINALIZE CONDUCT PROTECTED BY THE FIRST AMENDMENT**

III. **KOHLMANN'S REPORTS AND OPINIONS FAR EXCEED THE AREA IN WHICH HE CLAIMS EXPERTISE**

IV. **THE PROBATIVE VALUE OF KOHLMANN'S TESTIMONY IS SUBSTANTIALLY OUTWEIGHED BY THE DANGER OF UNFAIR PREJUDICE**

V. **KOHLMANN IS NOT QUALIFIED AS AN EXPERT**

   A. Education

   B. Experience

      1. The Investigative Project

      2. Globalterroralert.com

      3. The Nine Eleven Finding Answers Foundation (NEFA)

      4. On-Air News Analyst

   C. **KOHLMANN'S WRITINGS AND PUBLICATIONS**

VI. **KOHLMANN OVERSTATES THE EXTENT TO WHICH HIS WORK IS SUBJECT TO PEER REVIEW**

VII. **KOHLMANN ACKNOWLEDGES THAT THERE ARE INSUFFICIENT HOMEGROWN TERRORIST GROUPS OR ORGANIZATIONS WITH WHICH TO PERFORM ANY RELEVANT ANALYSIS.**

VIII. **CONCLUSION**

## I. KOHLMANN'S OPINIONS AND TESTIMONY ARE NOT RELEVANT

Evidence is relevant to a trial if it has a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Evid. R. 401. Evidence that is not relevant is not admissible. Evid. R. 402. In this case, the evidence the government seeks to introduce through the testimony of witness Evan Kohlmann is not relevant, and should therefore be excluded.

Put another way, relevance is established by a showing that it is more likely than it would be without the evidence that the Defendant committed the crime with which he is charged. Kohlmann's various reports and opinions do nothing to substantiate that the Defendant committed the crime with which he is charged. Kohlmann is nothing more than a summary fact witness.

At the start of his report, Kohlmann states that he "specializes in tracking Al-Qaida and other contemporary terrorist movements." See Kohlmann Report. At the outset, therefore, his relevance as a witness should be questioned because there is no allegation anywhere in the case that the Defendant intended to join Al-Qaida, or any other "contemporary terrorist movement," nor is there any indication that the "material support" the Defendant is accused of providing was targeted to or intended for any specific terrorist or terrorist group. Astonishingly, there is no indication in the report, or evidence produce by the government, of any contact by the Defendant with any Federal Terrorist Organization (FTO) as designated by the Secretary of State. The record is completely void of any such contact or organization.

### A. KOHLMANN REPORT

Kohlmann's Expert Report is a detailed analysis of 1) Al Qaeda's network in Saudi

Arabia, 2) Al Qaeda's network in Iraq, and 3) the formation and development of the Afghanistan movements. Sprinkled throughout his opinion, he addresses development, purpose and methods of various terrorist groups. Kohlmann's explains the genesis, purpose and target audience of various pieces of media that were supposedly found on the Defendant's hard drive.

Kohlmann's explanations, despite being void of any documentary evidence upon which they are based, include explanations about the crimes and activities of various groups he identifies as terrorists. For example, Kohlmann works into his opinion a variety of Al-Qaida references and pays tribute to Osama Bin Laden. What connection does either have to this case? Absolutely none. He simply references these entities because they create fear and anxiety in juries.

How does Al-Qaida or Osama Bin Laden have any relevance to this case? It doesn't. Rather, Kohlmann points to new activities of the entities that are highly innovative and media savvy. His report also acknowledges the internet as a primary means to distribute communications and propaganda messages. Kohlmann then opines that [m]any electronic documents, magazines, audio and video recordings produced by Al-Qaida in Saudi Arabia and distributed over the Internet have become classic works in the annals of the mujahideen and Al-Qaida.

Despite the irrelevance to this case and this Defendant, Kohlmann manages to craft a report that uses the terms Al-Qaida, suicide bombings, Osama Bin Laden, terrorists, propaganda, Jihad and Mujahideen over and over again. This is a scare tactic and nothing more. It is specifically designed to inflame and frighten the jury into drawing a connection

between the Defendant and the very sinister culture of terrorism that exists in some parts of the world.

Perhaps Kohlmann would argue that his report is simply included for background information and in order to provide later context to his opinions about certain electronic evidence related to homegrown terrorism. But that is not the case. The probative value is nonexistent and the danger of unfair prejudice from the terms themselves, let along the tenuous connection Kohlmann makes later, is far outweighed by the very real danger of unfair prejudice. This is fear-mongering at its worst and the Court should not allow it.

The report continues to discuss the original founders of Al-Qaida's operational network and Afghanistan. Once again there is nothing in the report that connects to this case or this Defendant to either subject.

However, Kohlmann does manage to mention throughout his report, Al-Qaida several additional times; the term suicide bombing; Jihad, Mujahideen, the September 11 tragedy. How this material could possibly be relevant remains a mystery. The effect those words and concepts will have on the jury, however, is very clear, and indeed calculated.

The only factual connection Kohlmann's Report has to this case is that he identifies what he perceives to be the original production and distribution source(s) for some of the videos found on one of the computers in the case. If the Court recalls his testimony at the hearing, however, Kohlmann cannot confirm that the videos found in this case are downloaded or viewed form the websites he identifies as the original source. All he can say is that the files appear to be the same size and type of files that were published on the websites he identified as the sources of the various videos.

Kohlmann admits that videos posted to various internet websites are often copied and posted other places or circulated directly between users via e-mail, chat rooms and forums. There is no evidence in Kohlmann's Report to indicate that the videos in question came from a source site or that they came from some secondary or even tertiary source.

Because Kohlmann cannot trace the videos that are evidence to the source(s) from which he claims originated, his testimony about the source(s), and the groups behind them, cannot possibly help the jury determine the elements of the various charges. His testimony, therefore, is not relevant, is based upon hearsay and should be excluded.

Throughout the remainder of Kohlmann Report, there are factual allegations about source material and various terrorists and terrorist groups that have absolutely no connection to the allegations against this Defendant and therefore do nothing to assist the trier of fact in deciding whether a crime was committed.

The conclusions in Kohlmann's Report are perhaps the most troublesome. His report contains the most broad, sweeping and conclusory statements about homegrown terrorists and their aims, but have no more connection to the actions of the Defendant than most of the rest of Report. For example, the vast majority of Kohlmann's report concentrates on the historical moments in Afghanistan, Al Qaida and Osama Bin Laden. Then at the end he concludes that it is "highly probable" that this is a homegrown terrorist group. A broad and far reaching conclusion for someone whose experience is limited to surfing the internet and drawing conclusion regarding historical European terrorism activities.

**B.    TESTIMONY IN OTHER TERRORISM CASES**

In an effort to bolster its own credibility, Kohlmann mentions several times that he has consulted with and testified on behalf of the government in a number of other terrorism cases.

While that is true, most of the other cases all have a common characteristic which makes them markedly different from the instant case. The vast majority of other cases in which Kohlmann has consulted or testified involve a specific organization, individual or act which connected the defendant(s) with a specific group or movement.

| COURT | CASE NAME | TERRORIST LINK |
| --- | --- | --- |
| D.O., 2003 | U.S. v. Battle "The Portland Seven" | Al-Qaida and the Taliban |
| E.D.VA, 2004 | U.S. v. Khan "Paintball | Al-Qaeda, Taliban and Lashkar-e-Taiba (LET) |
| E.D.VA, 2004 | U.S. v. Royer, "Virginia | Al-Qaeda, the Taliban and Lashkar-e-Taiba (LET) |
| E.D.VA, 2004 | U.S. v. Benkhala | Part of Khan case (above) |
| E.D.VA, 2005 | U.S. v. Al-Timimi | Taliban |
| S.D.NY | U.S. v. Paracha | Al Qaeda |
| E.D.VA, 2005 | U.S. v. Abu Ali | Al-Qaeda |
| E.D.CA, 2006 | U.S. v. Hyat | training camp in Pakistan |
| E.D.VA, 2006 | U.S. v. Chandia | Lashkar-e-Taiba |
| N.D.N.Y. | U.S. v. Aref, | Al-Qaida, and laundering money from a supposed arms transaction |
| E.D.VA, 2004 | U.S. v. Benkhala | Supplying service to Taliban |
| S.D.N.Y., 2006 | U.S. v. Sabir, "Bronx Cell" | Al-Qaeda |
| S.D FL., 2007 | U.S. v. Padilla, | Al Qaeda |
| D.Mass, 2007 | U.S. V. Muntasser, | Al Kifah, and other organizations tied to Al Qaeda |
| D.Conn, 2007 | U.S. v. Abu-Jihaad | Leaking classified information to Azzam Publications |

The fact that Kohlmann may have been qualified as an expert, or even allowed to testify as a fact witness, in other cases does not have any bearing on his ability to testify in the instant case, particularly because the factual allegations <u>of this case</u> do not involve a

specific terrorist organization or financial transaction as did the other cases herein referenced.

## II. KOHLMANN'S CONTENTIONS CRIMINALIZE CONDUCT PROTECTED BY THE FIRST AMENDMENT

The Conclusion of Report culminates in his opinion that, this material (propaganda) is very likely to be useful to a person or persons conspiring to join a terrorist organization, to provide material support to a terrorist organization, and/or to carry out an act of terrorism. That is a disturbing statement. He concludes that because you have the material on your computer, you must want to be a terrorist or to be part of a homegrown terrorist organization.

Is that what our criminal justice system has become? Is it proper for the government to take a protected First Amendment right and turn it on its head all in the name of the so-called "war on terror?" That is the kind of argument used at Salem and in the McCarthy hearings. Fear over justice has no limits if not restrained.

"If the First Amendment means anything, it means the state has no business telling a man, sitting in his own house, what books he may read or what films he may watch." Stanley v. Georgia, 394 U.S. 557, 565 (1969).

## III. KOHLMANN'S REPORTS AND OPINIONS FAR EXCEED THE AREA IN WHICH HE CLAIMS EXPERTISE

The lack of relevance of Kohlmann's proposed testimony notwithstanding, his reports and testimony go far beyond the area in which he claims to have expertise. He should not be permitted to testify in such areas, or to use such areas as a basis for his opinions. Some examples of his testimony either exceed or are not at all related to his claimed area of expertise include:

1. Kohlmann does not speak or read conversational Arabic, yet he admitted at the hearing that the majority of the materials on which he bases his opinions are published in Arabic. He claims he uses a computer program and hires part time employees in order to review the materials, and yet there is no basis at all for the Court to measure the reliability of the translations. The statements of the translation are unreliable hearsay, at best. If Kohlmann were a fact witness who claimed to have heard a defendant make a statement in another language, the Court would not, and should not, let him testify as to the meaning of the words in a language in which he was not fluent. It is no different here, and the Court should not allow him to base any testimony on translations without first verifying their accuracy.
2. Kohlmann testified and opines about the difficulty in obtaining and downloading certain materials from various websites. He is not a forensic computer specialist, however, and should therefore not be allowed to make such statements. He also testified and opines to different kinds of passwords and levels of security that some websites have. There is no basis to believe he has the training and expertise to testify to such matters. The FBI computer specialist, whose reports on the Defendant' computers have been turned over to the defense, may have the expertise to testify about password protection and security levels, but Kohlmann does not, and he should not be allowed to testify about such matters or to base his opinion about the operators of certain websites on such information.
3. Kohlmann testified and opines that certain videos are only available at certain periods of time, or certain sources or by certain means. There are so many suppositions render it completely untrustworthy. Kohlmann is not an expert in telecommunications

equipment and capacity, so he shouldn't be allowed to testify about what was and was not possible at given periods of time. This case contains no evidence that this Defendant hosted and uploaded to any of the websites mentioned in his report. Not only is he unqualified to draw conclusions, he does not provide a reasonable basis for his opinion, and therefore he should not be allowed to testify about when and how certain materials were available on the internet.

4. Kohlmann attempts to insinuate that the Defendant must have been tied into certain terrorist websites because some of the materials he found on their computers were only posted on what he calls "jihadist websites". He is not an expert in the operation and development of the internet. He does not have any basis to say that the same files or videos were not available from other sources at other times.

## V. THE PROBATIVE VALUE OF KOHLMANN'S TESTIMONY IS SUBSTANTIALLY OUTWEIGHED BY THE DANGER OF UNFAIR PREJUDICE

Even if relevant, evidence may be excluded from trial if its probative value is substantially outweighed by the danger of unfair prejudice. Evid. R. 403. Such is the evidence in the proposed testimony of Evan Kohlmann. Even if it were relevant, which it is not, its probative value is so minimal and is so outweighed by the danger of unfair prejudice that it should not be put in front of the jury.

Defendant does not need to explain to the Court the incredible prejudice that is inherent in a case of this type. To allow Kohlmann to testify to historical terrorist activities and groups that bear no relation to this case is by definition prejudicial. The Court should make every effort to limit the prejudice, however, and to submit Kohlmann's opinions to the jury do just the opposite. Although they are not part of the charges in the case and therefore do not have any

bearing on guilt or innocence, Kohlmann mentions the following people, terms and events in his various reports and testimony:

a. Usama (Osama) Bin Laden.
b. Al-Qaida.
c. September 11, 2001 attacks on New York and Washington
d. Al-Gama' at al-Islamiyya (the Egyptian Islamic Group).
e. Egyptian Islamic Jihad Movement.
f. Jemaah Islamiya in Indonesia.
g. Al-Qaida Shura Council.
h. Mamdouh Mahmud Salim (a.k.a. Abu Hajer al-Iraqi).
i. Attacks on U.S. embassies in East Africa in 1998.
j. Kamikaze bombing attacks targeting Westerners from Indonesia to Morocco in 2002 and 2003.
k. Shaykh Yousef al-Ayyiri.
l. Suicide bombing attacks in Riyadh, Saudi Arabia in 2003.
m. Al-Qaida recruitment efforts in Europe.
n. Mujahideen training camps
o. Abu Hamza al-Masri (a.k.a. Mustafa Kamel).
p. Al-Muhajiroun organization.
q. Shaykh Omar Bakir Mohammed.
r. Taliban.
s. Louis Atiyatullah.
t. Khalid Sheikh Mohammed.
u. Adam Gadahn (a.f.a. Azzam al-Amriki).
v. Destruction of U.S.S. Cole.
w. Dr. Ayman al-Zawahiri.
x. Al-Farouq and Tarnak terrorist training camps.
y. Abu Musab al-Zarawi.
z. Shaykh Anwar al-Awlaki.
aa. Abdelaziz al-Muqrin (a.k.a. Abu Hajer al-Najdi).
bb. Salih al-Hassan.
cc. Fawaz al-Nashmi (a.k.a. Turki al-Mutairi).
dd. Ashraf bin Ibrahim al-Sayyed (a.k.a. Abu Tamim al-Madani).
ee. Nasser bin Abdallah al-Sayyari al-Khalidi.
ff. Ali bin Hamid al-Madabi Al-Harbi.
gg. Al-Qaida Nework in Iraq.
hh. Rabei Osman El Sayed Ahmed.
ii. Abul-Harith Abdelrahman al-Dosari.
jj. Abu Saad al-Makki.
kk. Abu al-Zubair al-Najdi.
ll. Abu Amshah al-Suri.
mm. Abu Abdullah al-Liby.
nn. Abu Abdelkarim al-Suri.

    oo.   Ahmed Said al-Ghambi (a.k.a. Abu al-Migdad al-Ghamdi).
    pp.   Martyrs Brigade of Mesopotamia.
    qq.   Tawheed wal-Jihad Movement.
    rr.   Palestinian cleric Abu Qatada al-Falastini.
    ss.   Ansar al-Sunnah Army (JAAS).
    tt.   Islamic Army of Iraq (IAI).
    uu.   Mujahideen Army of Iraq.
    vv.   Izzadeen al-Qassam Brigades.
    ww.   Hamas.
    xx.   Hizballah.
    yy.   Shaykh Anwar Shaaban.
    zz.   Video depicting downing of Russian Mi-24 by Abu al-Walid al-Ghamdi.
    aaa.   Ibn ul-Khattab.
    bbb.   Algerian Salafist Group for Prayer and Combat.
    ccc.   Muntada al-Ansar forum.

These people, organizations, places and events are not part of the charges in this case. They do not make or formulate any element of the case and are not more or less likely to be true. Their probative value, therefore, is minimal. The unfair prejudice is beyond insurmountable. If Kohlmann is allowed to testify as he did in the hearing, and does in his reports, such that he tries to tie the Defendant, or the material on his computers, to Osama Bin Laden and those like him, it will constitute plain error. Kohlmann, his reports and opinions are calculated to incite the passions of jurors and should be excluded. Incitement is not an element of the office changed. Kohlmann is a summary fact witness that contributes nothing to the case except prejudice.

## V.   KOHLMANN IS NOT QUALIFIED AS AN EXPERT

Kohlmann's conclusions are really nothing more than factual summaries and inflammatory opinions espoused by a self-described expert. The opinions have no plain or obvious basis in fact or reliable methodology. The facts are completely historical and unrelated to this Defendant. The facts which he relates to his opinion are provided only by the Government without filter or balance. To allow a witness to give an opinion based upon the

limited facts provided by either party, without any filter or balance, is so far removed from any legitimate science as to create fiction. An expert, by definition, should give an indigent evaluation of all facts of the case and not those limited by blinders. Experts do not render opinions in Court where the evidence is not disclosed and is controlled by a single party. Regurgitation of facts provided by a single party can be a summary only because there is no question upon which to opine.

The Supreme Court has identified various factors for the trial court to consider when evaluating the reliability of the proposed expert opinion: (1) whether a theory or technique can be tested; (2) whether it has been subjected to peer review and publication; (3) the known or potential error rate of the theory or technique; and (4) whether the theory or technique enjoys general acceptance within the relevant scientific community. Under Fed. R. Evid. 702 the Court must ensure that the proposed expert testimony is relevant and will serve to aid the trier of fact. *Daubert*, at 592-93. In other words, the expert "must fit" the issues in the case by having a valid connection to the pertinent inquiry. *Id.* at 591-92.

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702:

Evan Kohlmann should not be qualified as an expert because he does not satisfy the requirements for the admissibility of an expert opinion under the Federal Rules of Evidence.

### A. Education

Evan Kohlmann is a self-professed expert who does not have the educational background or experience to reliably give expert opinions regarding matters of terrorism. As

demonstrated at the *Daubert* hearings, Mr. Kohlmann's CV sets forth his credentials in an inflated and deceptive manner. While Kohlmann is indeed a recent (2004) law school graduate, the law degree, while meaningful, does not enhance his credentials as an expert on terrorism.

Mr. Kohlmann's undergraduate degree from Georgetown University, holds no significance with regard to homegrown terrorism. Mr. Kohlmann merely obtained a "**certificate**" from the Center for Muslim Christian Understanding. Big deal.

**B.**     **Experience**

1.     The Investigative Project

Mr. Kohlmann's experience is really little more than being a collector and librarian with a fascination in terrorism-related matters. His CV demonstrates his penchant for exaggeration. Kohlmann lists himself as a "**Senior Terrorism Consultant**" for the Investigative Project, Washington, D.C. from February 1998 through January 2004 on page one of his CV. The "Investigative Project" was founded and run by Stephen Emerson. The same Stephen Emerson who publicly stated that the "Oklahoma City bombing" must have been related to Middle East terrorism. Kohlmann has acknowledged that, for much of this period of time, he simply worked there part time as an intern while going to school full time. He was not promoted to "Senior Terrorism Consultant" until the latter stages of his affiliation with the "Investigative Project."

2.     Globalterroralert.com

After graduating from law school and leaving the "Investigative Project," Mr. Kohlmann established his own website: globalterroralert.com. (Def. Ex. 2d) Working solo out of one's apartment in New York City, without the supervision of any academics, Mr. Kohlmann spends his time surfing the web looking for materials to add to his "extensive

library of terrorist-related materials." It is the matching up of these materials to similar ones provided by the government on which Kohlmann offers his opinions. The timing and source of Kohlmann obtaining his materials does not prove a legally significant fact. The timing and source from which Mr. Kohlmann obtained his documents is immaterial and irrelevant.

3. The Nine Eleven Finding Answers Foundation (NEFA)

Mr. Kohlmann also identifies himself as being a Senior Investigator for the **Nine Eleven Finding Answers Foundation (NEFA)** from August 2005 through the present. The description under NEFA is merely a description of the foundation and not of Mr. Kohlmann's role within the foundation. Nor is there any suggestion in Kohlmann's testimony that he received any additional academic training or experience through the Nine Eleven Finding Answers Foundation which would lead to reliable principles and methodology regarding matters of terrorism.

Kohlmann's lack of oversight and training is particularly significant when it is recognized that his big accomplishment is to posting websites. This lack of peer review, supervision, or training critically undermines Kohlmann's qualifications as an expert in the field of terrorism. He holds no post graduate degrees or accreditations.

4. On-Air News Analyst

Mr. Kohlmann's CV (Def. Ex. 1) also proudly proclaims that he is an "On-Air Terrorism Analyst, NBC News/MSNBC October 2004 – Present". Once again this is a credential demonstrating only that Mr. Kohlmann has a fascination with terrorism and likes to talk about it. It does not demonstrate an educational or experiential foundation which would permit him to render expert opinions in a court of law regarding matters of terrorism. Working hand-in-hand with journalists in order to add color to the news broadcast is no substitute for

academic training and rigor which are necessary in order to have developed a reliable methodology and procedure in order to present to the jury meaningful opinions on matters of terrorism.

### C.  WRITINGS AND PUBLICATIONS

The government's proposed expert witness presents on the third page of his CV a reference to his one and only book "Al-Qaida's Jihad in Europe: The Afghan-Bosnian Network" followed by a half page of comments about his book. First and foremost under this category, Kohlmann presents a note that this book was "[c]ited as a source by the final report of the Congressional 9/11 Commission." While this claim is indeed true, Kohlmann's book is (in this government publication of over 500 pages) at the end of a string citation in each of two footnotes, 37 and 80, for simple historical propositions which have nothing to do with this case.

Mr. Kohlmann's article in the journal Foreign Affairs, September/October 2006: *The Real Online Terrorist Threat* (Def. ex. 12), is a glimpse into the opinion that the government seeks to extract from Mr. Kohlmann. As Kohlmann states on page 122 of the "Foreign Affairs" article, "In some cases, the line between terrorist activities online and terrorist activities on the battlefield is so blurred that it is virtually impossible to distinguish them." While this may be Mr. Kohlmann's opinion, and one which he would try to bleed into the case evidence regardless of how we restrict his testimony, there is no reliable methodology behind reaching such a conclusion.

Significantly, the same Foreign Affairs article points to one of Mr. Kohlmann's chief shortcomings as an expert on terrorist matters. Mr. Kohlmann admitted in cross-examination that he does not read Arabic and must rely on translators who have not been tested by the court to tell him what is being said in Arabic. Yet this same "Foreign Affairs" article (Def. Ex.

12) criticized FBI Director Robert Mueller as being arrogant when he stated that, "Knowledge of Islam, Arabic, and the Middle East is helpful but not essential" (Foreign Affairs, p. 123) and concludes his article by stating, essentially, that the ability to read Arabic and understand jihadist cultures are essential in fighting terrorism. (Foreign Affairs, p. 124).

Kohlmann's opinions spring from his review of materials within his "vast library" which have been translated for him by untested, unknown translators whose skill level, dialect familiarity, and reliability have not been tested. The information which an expert relies upon must be the product of reliable principles and methods in order to be admissible. Kohlmann's reliance on this untested translation process, in order to give nuanced opinions regarding these internet and print materials, does not yield competent evidence in a form which can be relied upon by the trier of fact.

## VI.  **KOHLMAN DELIBERATELY OVERSTATES THE EXTENT TO WHICH PEER REVIEW**

Kohlmann's writings lack a meaningful peer review process. The release of his writings on the internet cannot be likened to legitimate peer review. The hypotheses expressed in his opinions from his reports are not able to be tested, quantified, or verified.

## VII. **KOHLMANN ACKNOWLEDGES THAT THERE ARE INSUFFICIENT HOMEGROWN TERRORIST GROUPS OR ORGANIZATIONS WITH WHICH TO PERFORM ANY RELEVANT ANALYSIS**.

During the Daubert hearing Kohlmann acknowledged that there are insufficient home grown terrorist groups with which he can form statistical pools or analysis. This conclusion should clearly prevent any opinion related to home grown terrorist groups or their attributes. There is simply insufficient information available with which to draw any conclusion. By his own admission these are too few such groups to conduct any meaningful analysis.

## CONCLUSION

Because his reports and opinions have no relevance to the charges, the probative value they may offer is substantially outweighed by the danger of unfair prejudice. Because he does not qualify as an expert under the law, Defendant Ziyad Yaghi respectfully requests that the Court exclude the testimony and opinions of Evan Kohlmann from trial.

Respectfully submitted,

By:/s/James M. Ayers II
Attorney for Defendant Ziyad Yaghi
Ayers & Haidt, P.A.
307 Metcalf Street
Post Office Box 1544
New Bern, North Carolina 28563
Telephone: (252) 638-2955
Facsimile:(252)638-3293
jimayers2@embarqmail.com
State Bar No. 18085
Criminal – Appointed

CERTIFICATE OF SERVICE

  This is to certify that the undersigned has personally served a copy of the forgoing *Post Hearing Brief in Support of Motion to Exclude Testimony of Evan Kohlmann by Defendant Ziyad Yaghi*, according to the applicable Civil Procedure Rules of this Court, to wit:

  __X__ CM/ECF (U.S. District Courts; U.S. Courts of Appeal)

Date: August 26, 2011

                 /s/James M. Ayers II
                 Attorney for Defendant Ziyad Yaghi
                 Ayers & Haidt, P.A.
                 307 Metcalf Street
                 Post Office Box 1544
                 New Bern, North Carolina 28563
                 Telephone: (252) 638-2955
                 Facsimile: (252) 638-3293
                 jimayers2@embarqmail.com
                 State Bar No. 18085
                 Criminal - Appointed

| TO: | | |
|---|---|---|
| | John Bowler | Jason Harris Cowley |
| | U.S. Attorney's Office | U.S. Attorney's Office |
| | 310 New Bern Ave. | 310 New Bern Avenue |
| | Suite 800 | Suite 800 |
| | Raleigh, NC 27601-1461 | Raleigh, NC 27601-27601 |
| | john.s.bowler@usdoj.gov | jason.cowley@usdoj.gov |
| | | |
| | R. Daniel Boyce | Rosemary Godwin |
| | Nexsen Pruet, PLLC | Federal Public Defender |
| | 4141 Parklake, Suite 200 | 150 Fayetteville St. Mall |
| | Raleigh, NC 27612 | Suite 450 |
| | dboyce@boyceisley.com | Raleigh, NC 27601-2919 |
| | | rosemary_godwin@fd.org |
| | | |
| | Debra C. Graves | |
| | Federal Public Defender | Myron T. Hill, Jr. |
| | 150 Fayetteville St. Mall | Browning & Hill |
| | Suite 450 | 200 E. Fourth Street |
| | Raleigh, NC 27601-8005 | Greenville, NC 27835 |
| | debra_graves@fd.org | mhill@browning-hill.com |

Jason M. Kellhofer
US Department of Justice
950 Pennsylvania Avenue NW
Room 2720
Washington, DC  20530
jason.kellhofer@usdoj.gov

Barbara D. Kocher
U.S. Attorney's Office
310 New Bern Avenue
Suite 800
Raleigh, NC  27601
barb.kocher@usdoj.gov

Robert J. McAfee
McAfee Law, P.A.
P.O. Box 905
New Bern, NC 28563
rjm@mcafee-law.com

Paul K Sun, Jr.
Ellis & Winters
PO Box 33550
Raleigh, NC  27636-3550
Paul.Sun@elliswinters.com

Joseph E. Zeszotarski, Jr
Poyner & Spruill
P.O. Box 10096
Raleigh, NC  27605
jeszotarski@poynerspruill.com

Anes Subasic
Wake County Detention Center
3301 Hammond Road
Raleigh, NC  27603