IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:09-CR-216-FL

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | |
| ) | |
| HYSEN SHERIFI; ) | |
| ANES SUBASIC; ) | |
| MOHAMMAD OMAR ALY HASSAN; ) | ORDER |
| and ) | |
| ZIYAD YAGHI, ) | |
| ) | |
| Defendants. ) | |

This matter came before the court for hearing on defendant Omar Hassan's ("Hassan") motion pursuant to Daubert v. Merrill Dow Pharmaceuticals, 509 U.S. 579 (1993), to determine admissibility of testimony from proposed government expert witnesses Evan Kohlmann ("Kohlmann") and Marc Sageman ("Sageman") (DE # 1123). Other defendants who moved to adopt Hassan's motion, including Hysen Sherifi ("Sherifi") (DE # 1161), Anes Subasic ("Subasic") (DE # 1075) (redocketed at 1109, 1159), and Ziyad Yaghi ("Yaghi") (DE # 1127),[1] also were heard. The government responded in opposition with reference to the expert reports of Kohlmann and Sageman, and presented Kohlmann for examination at hearing. For the following reasons, the court denies defendants' motion for the court to exclude the testimony of Kohlmann. Kohlmann is qualified as an expert to testify regarding various aspects of the trend of decentralized terrorism and homegrown terrorism. Parameters of his testimony more particularly are set forth below. The other expert will

---

[1] Dylan Boyd also filed corresponding motion (DE # 1132), however, Dylan has since entered a plea of guilty and accordingly his motion is denied as moot.

not be offered and, therefore, that part of defendants' request, directed to Sageman, is denied as moot.[2]

## BACKGROUND

As set forth in greater detail in prior orders of the court, by second superseding indictment all defendants are charged in counts one and two with conspiracies to commit various violations of federal laws. Count one alleges conspiracy to provide material support to terrorists. Count two alleges conspiracy to murder, kidnap, maim and injure persons in a foreign country. The conspiracy crimes are alleged to have been committed between approximately November 9, 2006, and July 2009. "Violent jihad" and actions taken in furtherance thereof, among other things, are alleged as overt acts in the conspiracies.[3]

In April 2010, the government provided notice of its intent to call experts. Notice of the experts' reports was provided in October 2010, lodged on the docket at entry 596. Defendants, following defendant Hassan's lead, filed the instant motions in June 2011. On August 15, 2011, the government supplemented its response to defendants' motions by filing notice, lodged on the docket at entry 1315, informing that Sageman would not be called as an expert at trial. Hearing was held before the undersigned on August 16, 2011. Counsel for the government, all defendants and counsel, and proposed government expert Kohlmann were present. The government, defendants, and court were given opportunity to question Kohlmann. After hearing, defendants and the

---

[2] The government supplemented its response on the docket at entry 1315, informing that Sageman will not testify at trial.

[3] Defendants Daniel Boyd, Zakariya Boyd, and Dylan Boyd have entered into plea agreements. Defendant Jude Kenan Mohammad remains at large. In addition to counts one and two, Sherifi is charged in counts four and eight with possession of firearms in furtherance of a crime of violence, and in count eleven with conspiracy to kill a federal officer or employee. In addition to counts one and two, Subasic is charged with counts twelve and thirteen, concerning events allegedly occurring December 2, 2003, related to the making of untruthful answers when applying to become a naturalized citizen.

2

government were given opportunity to supplement their briefs, which all have done, and which are considered herein.

## DISCUSSION

A.	Standard of Review

The admission of expert testimony is governed by Rule 702 of the Federal Rules of Evidence. The proponent of the expert testimony bears the burden of establishing its admissibility by a preponderance of proof. Cooper v. Smith & Nephew, Inc., 259 F.3d 194, 199 (4th Cir. 2001). A district court is granted broad latitude in making its determination on the admissibility of proposed expert testimony. United States v. Gastiaburo, 16 F.3d 582, 589 (4th Cir. 1994) ("The trial judge has broad discretion under Rule 702."). Review of the Daubert case law by the advisory committee shows that the rejection of expert testimony is the exception rather than the rule. Fed. R. Evid.702 advisory committee's note (2000).

Rule 702 provides that expert testimony is appropriate when it "will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Rule 702 further provides that a witness qualified as an expert may be permitted to testify where "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Id. Courts have distilled the requirements of Rule 702 into two crucial inquiries: whether the proposed expert's testimony is relevant and whether it is reliable. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141 (1999); Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 589 (1993); United States v. Forrest, 429 F.3d 73, 80 (4th Cir. 2005). The trial court must carry out the special gate-keeping obligation of ensuring that expert testimony meets both requirements. Kumho Tire, 526

U.S. at 147; United States v. Moreland, 437 F.3d 424, 431 (4th Cir. 2006), overruling on other grounds recognized by United States v. Diosdado-Star, 630 F.3d 359 (4th Cir. 2011).

In order to be considered relevant, the proposed expert testimony must appear to be helpful to the trier of fact. See Daubert, 509 U.S. at 591-92. "Testimony from an expert is presumed to be helpful unless it concerns matters within the everyday knowledge and experience of a lay juror." Kopf v. Skyrm, 993 F.2d 374, 377 (4th Cir. 1993).

"'[T]he test of reliability is flexible' and 'the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination.'" United States v. Wilson, 484 F. 3d 267, 274 (4th Cir. 2007) (quoting Kumho Tire, 526 U.S. at 141-42). One factor pertinent to reliability is the proposed expert's qualifications. See Giddings v. Bristol-Myers Squibb Co., 192 F.Supp.2d 421, 425 (D. Md. 2002). A witness may qualify to render expert opinions in any one of the five ways listed in Rule 702: knowledge, skill, experience, training, or education. Kumho Tire, 526 U.S. at 147. The Fourth Circuit has ruled that when an expert's qualifications are challenged, "'the test for exclusion is a strict one, and the purported expert must have neither satisfactory knowledge, skill, experience, training nor education on the issue for which the opinion is proffered.'" Kopf, 993 F.2d at 377 (quoting Thomas J Kline, Inc. v. Lorillard, Inc., 878 F.2d 791, 799 (4th Cir. 1989)).

Additional factors also bear on the reliability of the expert's testimony. They may include: "(1) whether a theory or technique can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) whether a technique has a high known or potential rate of error and whether there are standards controlling its application; and (4) whether the theory or technique enjoys general acceptance within the relevant community." Tunnell v. Ford

4

Motor Co., 245 Fed. App'x. 283, 286 (4th Cir. 2007) (citing Kumho Tire, 526 U.S. at 149-50); accord Daubert, 509 U.S. at 593-94.

When the expert testimony is not scientific in nature, rather, it is based on "social science," the trial court must still provide the gatekeeping function. United States v. Hammoud, 381 F.3d 316, 337 (4th Cir. 2004), sentence vacated on remand in light of *Booker,* 543 U.S. 1097, opinion reinstated in pertinent part, 405 F.3d 1034 ( 4th Cir. 2005). The Fourth Circuit in Hammoud noted that in performing the gatekeeping function, in determining reliability, the district court has "broad discretion" to consider whatever factors bearing on validity the court finds to be useful, keeping in mind that Rule 702 was intended to liberalize the introduction of relevant expert evidence and also that due to the difficulty of evaluating experts' testimony, they can be powerful witnesses and quite misleading. Hammoud, 381 F.3d at 337. Of specific relevance to this case, the Fourth Circuit affirmed a district court's findings that a terrorism expert was qualified because his work was subject to peer review, was discussed with others in the field, and was based in a sound methodology. Id.

Of course, the admission of expert testimony must be considered within the context of the other rules of evidence. In particular, Rule 403 provides that the court must ensure that the probative value of any proffered evidence is not "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. As this court has noted, "[d]espite the court's ability to exercise broad discretion and flexibility when determining the admissibility of expert testimony, the court must balance this discretion with the concerns of Rule 403 to ensure that the probative value of the proffered testimony is not 'substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.'" Bouygues

Telecom, S.A. v. Tekelec, 472 F. Supp. 2d 722, 725 (E.D.N.C. 2007) (quoting Fed. R. Evid. 403).

In the specific context of national security prosecutions, in United States v. Benkahla, 530 F.3d 300 (4th Cir. 2008), the Fourth Circuit concluded that under Rule 403, the probative value of Kohlmann's testimony outweighed its prejudicial aspects. The Fourth Circuit did not accept defendant's argument that Kohlmann's testimony was unfairly prejudicial because the subject of terrorism arouses so much passion these days as to confuse the jury as to the issues. Benkahla, 530 F.3d at 310.

B. Qualification of Kohlmann

1. Rule 702

As noted above, the court must undertake two crucial inquiries in exercising its gatekeeping function under Rule 702 in determining whether Kohlmann can be qualified as an expert. It must determine that his testimony is 1) relevant, and 2) reliable. Kumho Tire, 526 U.S. at 141. Defendants contend that Kohlmann's proposed testimony does not meet either requirement. The court disagrees.

As described in more detail below, the court finds that Kohlmann may be qualified as an expert to testify about the trend of decentralized terrorism and homegrown terrorism, and specifically about the criteria included in his report that comprise the profile of a homegrown terrorist network. Included in this criteria are the topics addressed in Kohlmann's supplemental expert report, lodged on the docket at entry 1315, which includes topics about the manner and location of overseas travel as it relates to homegrown terrorist networks.

In qualifying Kohlmann, however, the court does not hold that it will allow testimony on all of the information included in Kohlmann's very lengthy expert reports. Possible limitations on

Kohlmann's testimony are addressed more particularly in this order.

Under the factors the court is to consider under Rule 702, the court finds that Kohlmann may be qualified as an expert. First, the testimony is relevant in that the court finds it would be helpful to the trier of fact. Daubert, 509 U.S. at 591-92. Kohlmann's testimony would be helpful because it will concern matters that are not within the everyday knowledge and experience of a lay juror. The detail and breadth of Kohlmann's expert report are the first indicator that the material about which he will testify is outside the everyday knowledge of a lay juror.

The court disagrees with some defendants' arguments that Kohlmann is nothing more than a summary fact witness. To the contrary, the court finds that Kohlmann's proposed testimony with regard to the history and origins of homegrown terrorist networks will be helpful to jurors to provide background and understanding about topics that are unfamiliar to the average person. As the briefs reveal, this court is by no means the first to find that Kohlmann's testimony is relevant, see, e.g., Benkahla, 530 F.3d at 308-10, and defendants' arguments that Kohlmann's proposed testimony is irrelevant are unconvincing.

As in Benkahla, the parties appear to agree that the evidence in this case is voluminous and complicated. It touches on a wide variety of ideas, terms, people, organizations, locations, theories, and various aspects of radical Islam. As in Bekahla, the court finds that Kohlmann's testimony will assist the lay juror by providing a "broader frame of reference" for these various subjects. Id. at 310.

Second, the court finds that Kohlmann's testimony is reliable. As noted above, the test of reliability is flexible, and the court has broad latitude to determine it. Wilson, 484 F.3d at 274. The court finds that Kohlmann has the requisite knowledge, skill, experience, training, and education to testify on various aspects of the trend of decentralized terrorism and homegrown terrorism. The

specifics of his academic credentials, work background, and publication history were discussed in detail at hearing, to which hearing transcript reference specifically is made.[4]

Kohlmann has devoted nearly his entire adult life to the study of the specific topics on which he intends to testify. While defendants make much of the fact that he is young, his youth is not a basis for excluding his testimony. Defendants suggest that his youth implies inexperience and inadequate educational training. Yaghi even goes so far as to assert that at least one of Kohlmann's academic qualifications is no "big deal." The court finds that Kohlmann's educational background and work experience to be sufficient indicators of his reliability. Kohlmann has undergraduate and graduate degrees from prestigious universities, and his course of study demonstrates a particularized focus on his areas of expertise from the earliest days of his college years.

Kohlmann's work experience bolsters his credentials, as do several of his publications.[5] Defendants criticize Kohlmann's CV extensively, particularly deriding some of his published work. Such criticism is ideal fodder for a vigorous cross examination, to which Kohlmann will no doubt be subjected. It is not, however, a basis for excluding his testimony. The court finds that, in its discretion, Kohlmann's qualifications are sufficient. See Benkahla, 530 F.3d at 309 n.2 ("[Kohlmann's] qualifications were obviously substantial.").[6]

Defendants make much of the fact that Kohlmann's testimony is based on social science;

---

[4] Because many of these details are found throughout the record in various briefs and testimony from hearing, the court declines to regurgitate the specifics of Kohlmann's CV here, but rather discusses more generally Kohlmann's qualifications based on his experience, knowledge, education, and training.

[5] The court does not find that Kohlmann deliberately overstated his credentials at hearing, as Yaghi contends he did. To the contrary, Kohlmann was forthright about his experience, his work, and his critics, particularly when questioned by the court regarding issues of peer review.

[6] At hearing and in his supplemental *pro se* briefs, Subasic asserts that Kohlmann is unqualified as an expert because he does not understand what Subasic contends are fundamental precepts of Islam. The government communicated at hearing that it does not intend to offer Kohlmann as an Islamic expert.

however, this is not a basis for excluding his testimony. In performing its gatekeeping function, the court has closely considered Kohlmann's proposed testimony, including its subjectivity to peer review, Kohlmann's consultation with others in the field, and whether or not his research findings are based in a sound methodology. See Hammoud, 381 F.3d at 337 (affirming a different terrorism expert and considering these factors). The court questioned Kohlmann at hearing with particular emphasis on issues of methodology and peer review. Kohlmann communicated about the number of individuals who do the type of work he does, and he stated that he and these other individuals are for the most part looking at and analyzing the same sources. Kohlmann noted that he and the individuals who he considers his peers publish in various journals where their work can be critiqued, as well as attend conferences where ideas are shared.[7]

For the purposes of qualifying Kohlmann as an expert witness, the witness's responses were adequate to demonstrate Kohlmann's reliability as a particular type of social science expert. The court has discretion to consider whatever factors bearing on validity it finds to be useful, especially where social science is concerned. Wilson, 484 F.3d at 274. After close consideration of Kohlmann's methodology and subjectivity to peer review as well as Kohlmann's education, work experience, comparison with peer researchers, employees, publications, and history of being qualified in federal court, factors all explored in much more detail on the record, the court finds that Kohlmann's proposed testimony is reliable under Daubert.

---

[7] Yaghi's arguments that Kohlmann deliberately overstates the extent to which his work is peer reviewed is unsupported and finds no support in the record developed at hearing. Additionally, Yaghi's arguments that Kohlmann acknowledges that there are insufficient homegrown terrorist groups from which one could draw statistical pools or analysis is similarly unpersuasive. As discussed at length at hearing, it is widely understood that social science is not measurable or quantifiable as is traditional scientific data. The court is unaware, and defendant Yaghi fails to cite any persuasive authority, that for a social science expert to draw conclusions based on research there must be "statistical pools" or traditional statistical analysis. As with many of the other arguments presented by defendants, this one is better left for cross examination.

2.  Rule 403

Defendants also argue that if found to be relevant and reliable, Kohlmann's testimony still should be excluded because of the potential for unfair prejudice under Rule 403 of the Federal Rules of Evidence. The government contends that the probative value of Kohlmann's testimony far outweighs the potential for unfair prejudice, and that it is the facts themselves, not Kohlmann's testimony, that defendants attack.

In exercising its discretion in performing the gatekeeping function, the court must balance Rule 403 concerns to ensure that the probative value of the proffered testimony does not unduly prejudice defendants, confuse the issues, or mislead the jury. Fed. R. Evid. 403. While the court qualifies Kohlmann to testify about the trend of decentralized terrorism and homegrown terrorism, including the sub-topics within those broader categories referred to in his report, the court recognizes the danger of potential testimony on the entirety of the information included in Kohlmann's expert report.

Together with supplement, Kohlmann's report totals over seventy (70) pages, and includes painstaking detail with regard to certain topics. The court notes in particular the section on "adopting of hardline sectarian religious perspective" (DE # 1208-1 p. 19.) In this section, Kohlmann provides what could be considered excessive detail as to different publications, clerics, and propaganda sources. While the government argues that this information is relevant to educate the jury on certain materials defendants allegedly downloaded, read, or shared with one another, testimony on the specifics of all of these publications and the individuals behind them, depending on the evidence presented at trial, could become unfairly prejudicial if not simply irrelevant.[8]

---

[8] Yaghi asserts that certain words and phrases that appear in Kohlmann's report amount to fear mongering. The court does not find this to be the case, but notes that irrelevant evidence that could confuse the jury is inadmissible.

As defendants note, certain individuals and organizations named in Kohlmann's report are not on trial. The court will not order that these individuals or organizations cannot be mentioned; however, the government is on notice that only expert testimony relevant to the case is admissible and it should tailor its examination of Kohlmann accordingly.[9] As currently presented, however, the court does not find that Kohlmann's proposed testimony should be excluded based on danger of unfair prejudice.

3. Rule 704(b)

Defendants also raise concerns that Kohlmann will impermissibly testify about defendants' state of mind.[10] Rule 704(b) of the Federal Rules of Evidence provides that

> No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto. Such ultimate issues are matters for the trier of fact alone.

Fed. R. Evid. 704(b). Specifically, Hassan argues that if Kohlmann offers testimony on the subject of Hassan's 2007 overseas travel with defendant Yaghi, the testimony would have to be about Hassan's mental state in joining the conspiracy. This argument does not follow. Hassan is correct that Kohlmann may not testify about his mental state in joining the conspiracy. However, at hearing and upon review of Kohlmann's reports, it does not appear that the government intends to ask

---

[9] Defendants also make much of the fact that Kohlmann's report mentions certain designated foreign terrorist organizations ("FTO"), yet according to defendants none of the evidence presented thus far has directly connected them with a specific FTO. The court finds the government's response to this point to be apt; defendants are not charged with providing aid to a specific FTO, and the government is not required to prove that they were doing so. As such, Kohlmann's testimony, to the extent it provides relevant and helpful background that includes certain FTOs, is allowed. However, the government is again warned that information regarding certain FTOs that is irrelevant, and thus unhelpful to the jury, is inadmissible.

[10] More than one defendant have expressed concern regarding this issue; however, defendant Hassan's brief included the most involved discussion. The court's discussion is intended to address all defendants' objections.

Kohlmann about his opinion on the ultimate issue of any defendants' mental state.

The government's response to defendants' post-hearing briefs does not directly address this argument, yet affirms the government's suggestion at hearing, that Kohlmann will testify that the evidence he reviewed is consistent with the commonalities of a homegrown terrorist group, and thus indicates the presence of a homegrown terrorist group. (DE # 1383 p. 6.) This proposed testimony seemingly is different from prohibited testimony under Rule 704(b), that a certain defendant possessed a certain state of mind required to commit a crime. However, the court recognizes that the best determination of whether or not the testimony violates rule 704(b) will be made at trial. Therefore, the court declines to exclude Kohlmann's testimony because Hassan believes that the testimony might delve into the realm of ultimate opinion testimony. Hassan has not now shown that Kohlmann will testify as to the ultimate opinion.[11]

C.   Defendants' Objections

While many of defendants' objections have already been considered herein, some remain to be addressed. Much of the argument in the supplemental briefs amounts to what could fairly be characterized as a shouting match on paper. Both parties vehemently have argued their positions which have been considered thoroughly by the court. As noted at hearing, however, many if not

---

[11] The court has closely read the case law Hassan has cited on this issue, particularly United States v. Abu-Jihaad, 553 F.Supp.2d 121 (D. Conn. 2008) and United States v. Paracha, 2006 WL 12768 (S.D.N.Y. 2006). At present, the cases appear distinguishable from the present case; there is no indication yet that the government intends to use Kohlmann in the way that was prohibited in Paracha - such as having Kohlmann testify as to certain co-conspirators based on factual summaries provided to the defense that the government cannot affirmatively offer as evidence at trial. Paracha, 2006 WL 12768 at 22. However, defendant is, of course, free to renew this objection at trial if the situation changes. Additionally, the court is mindful of the limitation on Kohlmann's testimony in Abu-Jihaad, and agrees with that court that Kohlmann may not testify about "why" defendants would want to order certain videos or access certain publications. See Abu-Jihaad, 553 F.Supp.2d at 127. There being no indication that Kohlmann plans to testify about the "why" but rather about the "what" of certain videos, media, publications, etc., and the simple fact that there is evidence certain defendants did watch or acquire this media, the court declines to exclude his testimony at this time. But the court is cognizant of what rule 704(b) prohibits, and the government must be as well.

most of defendants' objections to Kohlmann's testimony are not bases for excluding his testimony or not qualifying him as an expert witness, but are valid points to be raised in cross examination at trial.

Yaghi makes the argument that Kohlmann's proposed testimony criminalizes conduct protected by the First Amendment. The court does not agree. Yaghi is free to argue about his right to look at certain material. The court reiterates again its holding in order entered July 12, 2011, lodged on the docket at entry 1222, that defendants may not argue that there is a First Amendment defense to the specific crimes with which they are charged.

Lastly, embedded in the text of Hassan's brief is a motion for an order prohibiting the introduction of certain types of evidence (DE # 1361 p. 4.) These include three defense exhibits introduced by defendant Hassan at hearing: (1) a "Global Terror Alert" chart; (2) various terms and events Kohlmann has previously mentioned in prior testimony; and (3) a summary of a ninety (90) minute movie produced by Kohlmann. Hassan acknowledges that at hearing the government conceded it did not intend to introduce any evidence not produced in discovery, and that these three pieces of evidence are outside the scope of discovery. As the government has conceded that it does not intend to introduce this evidence, defendant's motion in this respect is denied as moot, without prejudice to renewal, should the situation change during the course of trial.

## CONCLUSION

For the foregoing reasons, defendants' motions seeking to exclude testimony of Kohlmann (DE # 1123, 1161, 1075, 1109, 1159, 1132, 1127), are denied in large part, subject to parameters herein set forth. Where defendants move also to exclude the testimony of Sageman, these parts of their motions are denied as moot. In sum, the court qualifies government expert Evan Kohlmann

to testify regarding the trend of decentralized terrorism and homegrown terrorism, and specifically about the criteria included in his report that comprise the profile of a homegrown terrorist network. Included in this criteria are the topics addressed in Kohlmann's supplemental expert report, lodged on the docket at entry 1315, which includes topics about the manner and location of overseas travel as it relates to homegrown terrorist networks. Additionally, defendant Hassan's motion for court order prohibiting the introduction of certain evidence (DE # 1361) is denied as moot, without prejudice to renewal.

SO ORDERED, this the 16th day of September, 2011.

_____
LOUISE W. FLANAGAN
Chief United States District Judge