IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:09-CR-216-FL

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | |
| ) | |
| HYSEN SHERIFI; ) | |
| MOHAMMAD OMAR ALY HASSAN; ) | |
| and ) | ORDER |
| ZIYAD YAGHI, ) | |
| ) | |
| Defendants. ) | |

Various issues arose today during conduct of trial concerning treatment of government summary exhibit 745, presented as "Special Agent Greer - Files Personally Extracted from Imaged Drive," and other charts offered by the government in aid to its summary of voluminous underlying computer based evidence and for substantive purposes, where the evidence cannot be readily examined in court. This order summarizes the court's more particular review of the subject charts this evening, after close of the trial day, in aid to the trial processes.

The government wants exhibit 745 to be considered by the jury during its deliberations. It purports to summarize twelve (12) sets of digitalized media through reference to their hard drives, already entered into evidence at exhibit numbers 1150, 1175, 1125, 1225, 1285, 1100, 1275, 1250, 1325, 1600, 1500, and 1400, imaged in part onto discs, also made a part of the evidence. Nine drives are associated on the chart with Boyd,[1] one with Sherifi, one with Yaghi, and one with Subasic. The total number of associated discs related to Boyd media is ten (10). There is one disc entered into evidence made from Sherifi media, and one made from Subasic media. There are a total of four discs from Yaghi media.

The main purpose of this exhibit, as noted September 27, 2011, by counsel for the government, is to link files contained on the discs with their respective hard drive, to identify from whom images were seized. The summary chart also lists by name fifteen (15) printed documents to which particular reference may be made by succeeding witnesses also:

- Five of these were printed from disc 1125A, associated with the amorphous "Boyd." Exhibit 745 does not appear, as commented on, to distinguish between the three

---

[1] The court notes there are three Boyd co-defendants, all of whom have pleaded guilty. Exhibit number 745 does not distinguish ownership of the Boyd media.

different Boyd defendants. It simply recites that digital media at drive exhibit numbers 1150, 1175, 1125, 1225, 1285, 1100, 1275, 1250, and 1325 all were seized from "Boyd." The first such document made mention of, exhibit 727, is called "Join the Caravan." It is noted as coming from disc exhibit 1125A attributable to Boyd's AMD CPU, and also possessed by Subasic, with reference to "also on Subasic media - Ex. 1400A)." The other four listed documents printed from 1125A include "44 Ways of Supporting Jihad," "Defence of Muslim Lands," "Dr. Al-Zawahiri Suggests Three Steps for Reforming The Muslim Ummah," and "Text of Fatwah Urging Jihad Against Americans."

- Another of the printed documents, given number 722 entitled "A Message to Every Youth," is attributed to "Boyd computer (9 eMachines)." This document is noted as "(also on Sherifi media - Ex. 1600A)."

- Six printed documents are noted as coming from disc 1500A, which disc was taken from the hard drive of Yaghi's HP Pavilion computer. Two of these (given exhibit numbers 733 and 732) are noted as being on Boyd media at exhibit 1250A. These include "The Ruling Regarding Killing One's Self To Protect Information," at 733, and "39 Ways to Serve and Participate in Jihad," at exhibit number 732. Exhibit number 733 also is noted as coming off of Subasic's media at ex. 1400A. Also noted as coming off of Subasic's media is that exhibit numbered 735, "The Book of Jihad," which document of Yaghi's also is noted as being contained at 1400A, belonging to Subasic. The same is said for exhibit number 736, "Advice for the Seeker of Knowledge," copied from Yaghi's media. Two others noted as taken from Yaghi's media at 1500A, exhibit numbers 737 and 744 (the "Anarchy Cookbook" and "The Al Qaeda Manual"), which are not, however, found on any other defendant's computer.

- The last three entries copied, denoted on exhibit 745, come from Subasic's computer and loose media, recorded as taken from disc 1400A. These are documents listed as exhibit 721 "The Signs of Ar-Rahmaan In the Jihad of Afghanistan," at 726, "Constants on the Path of Jihad," (which document also was recorded at disc 1500A, copied from Yaghi), and at 734, "the Role of Women in Fighting the Enemy,"( which document also was recorded at disc 1125A, copied from Boyd's AMD CPU, and emailed by Sherifi to Mr. Eddarkoui as shown in ex. 184).

This chart identifies several times an exhibit as being printed from a certain disc, belonging to a certain defendant, when the document could just as readily have been copied from the disc of another defendant, it seems. For example, exhibit 727 is identified on the chart as being printed from a Boyd disc though it appears also on a Subasic one, exhibit 722 is identified as being printed from a Boyd disc, though it appears in Sherifi's media, exhibit 733 is identified as being printed from the Yaghi disc, though it is included in Boyd media, exhibit 732 is identified as being printed from the Yaghi disc, though it appears in Boyd media and in Subasic media, exhibit 735 is identified as being printed from the Yaghi disc, though it appears in Subasic media, exhibit 726 is identified as

being printed from the Subasic disc though it appears also in the Yaghi media, and exhibit 734 is identified as being printed from the Subasic disc though it appears in the Boyd media.

By identifying a document as being printed from a certain disc, the government seemingly suggests that the printed out documentary evidence should be weighed more against the particular defendant from whom the evidence was copied. Say with exhibit number 733, more against Yaghi than Boyd, who also had the document "The Ruling Regarding Killing One's Self to Protect Information." Too, the court has reviewed several times exhibit 742, a list of Boyd media, and nowhere does it discern any reference to "The Ruling Regarding Killing One's Self to Protect Information."[2]

The court agrees that the chart appearing as exhibit 745 is a useful aid, subject to limiting instructions, but the column "Documents Printed from Disc" is more prejudicial than probative, and therefore must be redacted. There also appear questions about the accuracy of this chart, when considered in the context of the individual media charts, which, if not satisfied, may require change in that column entitled "Exhibit # of Disc with Selected Files from the Copied Image," and could suggest some error, too, in the final column appearing therein.[3] Evidence marking can be used to seam the fifteen printed documents with defendant(s) from whose files they originate.

To aid in its understanding of this and other charts, and certain of defendants' renewed objections associated therewith, the court spent several hours assessing the individual charts after the close of the day today. In addition to its review of exhibit 745, its review has included charts designated as follows:

- 739 - Yaghi Media
- 740 - Sherifi Media
- 741 - Subasic Media
- 742 - Boyd Media

At least at first blush there are inconsistencies among these exhibits. Turning attention more particularly to exhibit 742, listing Boyd media, the court in its review noticed it lists eight files as being shared by Boyd and Subasic. Exhibit 741, listing Subasic media, designates however nine as

---

[2] That exhibit is dense, numbering some seven pages. Perhaps the government readily will show the court Wednesday where it overlooked this designation.

[3] Using the first document identified as being printed from any disc referenced on exhibit 745, that is "Join the Caravan," coming from exhibit 1125A, imaged off of 1125 which is Boyd's AMD CPU, the court attempted to trace it on exhibit 742. I noted similar reference on page three of seven of this chart, but exhibit 742 calls out not 1125A but 1325A, as the source of the file. This chart then has "Join the Caravan" as coming off of a Boyd computer (MacBook), but that is not the Boyd AMD CPU referenced as the document's source on exhibit 745. There is no mention that I could find of "Join the Caravan" or similar on this chart ofor relating to exhibit 1125Al. The same file is noted as appearing also in Subasic's media at exhibit 1400A, in both exhibit 745 and exhibit 742. However, when I reviewed Subasic's media chart, I could not locate mention in exhibit 741 detailing Subasic media, of "Join the Caravan." The court will hear further tomorrow on this.

3

being shared as between Subasic and Boyd. Again, nowhere in exhibit 741 did I see a reference to "Join the Caravan," possessed solely by Subasic or by him and Boyd. In fact, nowhere did I see on exhibit 741 any reference to any Boyd media at either 1125A or 1325A. A shared reference to media "Effect of Intention" appears on exhibit 742, listing Boyd media, but the court does not discern mention of this media as shared by Boyd and Subasic on exhibit 741.

The court has other questions about the individual media charts. It appears that each repeats information and therefore, where media is shared, repeatedly this is assessed against all defendants who have the same media. Where a defendant may have transposed a shared image repeatedly, this fact is "scored" in the totals reported on each chart. Where say Boyd had four copies of certain media, and another defendant one, the number of shared media similarly is weighted.

See, for example, on exhibit 742, Boyd is shown to have shared twenty-four (24) items or files with Yaghi. I reviewed exhibit 739 and and observed there that Yaghi shared with Boyd, according to the government, thirty-nine (39) items or files. It appears of the total thirty-seven (37) files Yaghi shared with co-defendants, that only twenty-two (22) individual ones were shared by Boyd; however, seventeen (17) more times some of those same files were taken into other Boyd media devices, of which there are a total of nine according to exhibit 745. This calculation could be said to weigh heavily against Yaghi.[4]

There are other discrepancies seemingly arising through the manner of this presentation where each chart presents itself as encompassing all files assessed by the agent appearing on the individual hard drives. I note that exhibit 739 shows that Yaghi shared one file with Sherifi, that is the file at Sherifi 1600A called "Defence$20of$20Muslim@20Lands." However, exhibit 740, listing Sherifi's media designates no media shared with Yaghi. I would gather from this that the file was not copied off of Sherifi's hard drive. However, it seems to the extent these four exhibits, each denominated "media" belonging to a named defendant, are viewed as presenting a unified picture of media "shared" among defendants, the exhibits are conflicting. There is also an underlying objection to the words "Shared Media Totals" heard today.

While these charts designated exhibit numbers 739, 740, 741, and 742, provide useful summary information of writings, recordings, or photographs which could not be conveniently examined in court, attempt to use these summaries to record not only files in the possession of these individuals but also in the possession of others, without more, necessitates their exclusion in current form under Rule 403 of the Federal Rules of Evidence on grounds that they confuse the issues, may mislead the jury, and raise risk of unfair prejudice. While desirous of hearing further, before making final determination on the admissibility of exhibit numbers 739, 740, 741, and 742, unless the government satisfactorily can address these concerns, the court likely will exclude the charts

---

[4] It is also not readily clear to me what accounts for the difference, excluding the duplicates ,as between the number of files shared by Boyd and Yaghi. When one looks at exhibit 740, depicting Sherifi's media, there is reference to four shared files with Subasic. Exhibit 741, depicting Subasic's media, lists only one file he shared with Sherifi. The fact that Subasic, it appears, had four copies of "Our Aqeedah," variously named, to Sherifi's one copy, seemingly skews the total amount of media files common as between the two.

4

in the form presented, without prejudice to the government's renewed introduction of summary charts which do not confuse, mislead, or unduly prejudice these defendants which may be received into evidence and considered by the jury.[5] In this regard, the court's order is issued to promote a more efficient discourse on the subject matter at hearing before the court convenes the jury tomorrow, and, as such, requested to be filed and served at the clerk's earliest opportunity, with paper copies also to be provided to counsel in the courtroom tomorrow morning.

SO ORDERED, this the 27th day of September, 2011.

/s/ Louise W. Flanagan
_____
LOUISE W. FLANAGAN
Chief United States District Judge

---

[5] A single, unified summary presentation that identifies common files without reference to sharing may be tendered, in recognition of defendants' objection heard today as to charts in the current form being delivered into the jury room, which objection, as the court has since parsed for an extended period of time these summary charts, sounds now with more emphasis. Separate supplemental charts listing files individually maintained by each defendant also as referred to by Agent Greer may be received where the court is mindful that the evidence being summarized is that which is on exhibit numbers 1150A, 1175A, 1125A, 1225A, 1285A, 1285B, 1100A, 1275A, 1250A, and 1325A for Boyd, 1600A for Sherifi, 1500A for Yaghi, and 1400A for Subasic. To the extent another defendant has the same file, this readily could be noted without need also to reference that this was "Shared Media."

5