UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA

------------------------------------------------X
Ziyad Yaghi,
                    Petitioner,                    Case No: 5:09-cr-00216-FL

v.

United States of America,
                    Respondent.
------------------------------------------------X

# EXPERT REPORT OF JEFF GOODWIN

## Expert Qualifications

I am a tenured Professor of Sociology at New York University and have been teaching sociology for over 25 years. I received my Ph.D in Sociology from Harvard University in 1988. My current research interests are social movements, revolutions, political violence, and terrorism.

I have published numerous articles on political violence and terrorism. My forthcoming publications on terrorism, include: (1) A *Theory of Terrorism*. This book examines, and attempts to explain, the decision of various states and political groups to kill—or to refrain from killing—ordinary civilians in pursuit of their political goals, and (2) *The Sociology of Terrorism*, in The Cambridge Handbook of Sociology, edited by Kathleen Odell Korgen (Cambridge: Cambridge University Press).

I have published numerous articles on the topic of terrorism, including: *Political Violence as Contentious Politics*, Mobilization, Vol. 17, No. 1, pp. 1-5 (2012); *Terrorism*, in The Wiley-Blackwell Companion to Political Sociology, edited by Edwin Amenta, Kate Nash, and Alan Scott (Oxford: Wiley-Blackwell), pp. 190-203 (2012); *'Religious Terrorism' as Ideology*, in Contemporary Debates in Terrorism, edited by Richard Jackson and Samuel Justin Sinclair (New

York: Routledge), pp. 127-34 (2012); *El enfoque relacional del terrorismo en Charles Tilly*, in *A propósito de Tilly: Conflicto, poder y acción colectiva*, edited by María Jesús Funes (Madrid: Centro de Investigaciones Sociológicas), pp. 223-30 (2011); *Terrorism*, in Contention and Trust in Cities and States, edited by Michael Hanagan and Chris Tilly (New York: Springer), pp. 169-73 (2011); *The Relational Approach to Terrorism*, Swiss Political Science Review, Vol. 15, No. 2, pp. 387-94 (2009); Commentary on Mark Juergensmeyer, *Terror in the Mind of God: The Global Rise of Religious Violence* (Berkeley, CA: University of California Press, 3rd edition, 2003), *Critical Studies on Terrorism* (August 2009), Vol. 2, No. 2, pp. 335-37; Review of Neil J. Smelser, *The Faces of Terrorism: Social and Psychological Dimensions* (Princeton, NJ: Princeton University Press, 2007), Contemporary Sociology (January 2009), Vol. 38, No. 1, pp. 39-40; *On Terrorism* (a review essay on Mike Davis, Buda's Wagon: A Brief History of the Car Bomb [London and New York: Verso, 2007], and Neil J. Smelser, *The Faces of Terrorism: Social and Psychological Dimensions* [Princeton, NJ, 2 Princeton University Press, 2007]), European Journal of Sociology, Vol. 49, No. 3, pp. 444-54; Review of Alan B. Krueger, W*hat Makes a Terrorist: Economics and the Roots of Terrorism* (Princeton, NJ: Princeton University Press, 2007), and Marc Sageman, *Leaderless Jihad: Terror Networks in the Twenty-first Century* (Philadelphia: University of Pennsylvania Press, 2008).

My work has been awarded and recognized by the American Sociological Association, the Eastern Sociological Society, and the Society for Comparative Research. I attached a copy of my resume with the details of my experience.

## Basis of Expert Opinion

In preparing my opinion, I reviewed the following material: Kohlmann Expert Report, Daubert Hearing, and Kohlmann Trial Testimony in *United States v. Hassan*, No. 5:09-CR-216-FL-7, 2012 U.S. Dist. LEXIS 5876 (E.D.N.C. Jan. 18, 2012); Expert Report submitted by Evan Kohlmann in *United States v. Mehanna*, No. 09-10017-GAO, 2011 U.S. Dist. LEXIS 93174 (D. Mass. Aug. 19, 2011); Kohlmann Expert Report and Daubert Hearing *United States v. Osmakac*, Case No.8:12-CR-45-T-35AEP; Daubert Hearing and Trial Testimony in *United States v. Mohamud*, No. 3:10-CR-00475-KI, 2012 U.S. Dist. LEXIS 151430 (D. Or. Oct. 22, 2012); and Kohlmann's article, *Homegrown Terrorists – Theory and Cases in the War on Terror's Newest Front*.

## Expert Opinion

I will focus my comments exclusively on the 5-factor theory of "home-grown terrorism" which Evan Kohlmann has presented in a number of cases, including *U.S. v. Daniel Patrick Boyd et al.* I should state at the outset that, as a social scientist, I find it quite appalling that Kohlmann has presented this speculative theory as a reliable, scientific method for determining which U.S. citizens are likely to be terrorists. I am especially disturbed that he has represented his theory in this manner in courts of law, where the freedoms of individuals are at stake. For Kohlmann's theory is just that—a theory or hypothesis. In a word, it is guesswork. He has never presented any systematic evidence which would demonstrate that his theory is actually valid (within some margin of error) or even plausible. So far as I am aware, his 5-factor theory has never been published in a peer-reviewed journal. Even if it were, it would remain just a theory unless he marshalled systematic evidence in support of it—evidence which others could closely review and assess. But it seems clear that he has no such systematic evidence. And yet he has

used his theory to tell courts, with great confidence, that there is a "high probability" that certain individuals are terrorists. In my personal opinion, this is not only shocking but morally reprehensible.

There are in fact several problems with Kohlmann's theory which I would like to highlight. To begin with, it is unclear what exactly Kohlmann proposes to explain with his theory, even though such clarity is of course essential in the social sciences for a theory to be tested and generally accepted. Most often, Kohlmann says or implies that his is a theory of "home-grown terrorism." This suggests that he is interested in explaining why particular U.S. citizens (and not others) engage in a certain kind of violent behavior. At other times, however, he implies that he is interested in explaining why certain citizens would form or join a network of individuals who are intent on committing violence, whether they actually do so or not. (Of course, forming or joining such a network are two very different things, but let us leave this issue to the side.) Now, there is a big difference between joining (or forming) a network of people and actually carrying out violence. I think Kohlmann wants to explain the latter, but it is not always clear from his writings and testimony. This makes it difficult to assess his theory.

One confronts yet another problem when trying to determine what exactly Kohlmann wants to explain. It is clear from his expert reports and court testimony that he is most interested, indeed *exclusively* interested, in individuals who have allegedly become terrorists because, among other reasons, they have adopted certain religious and more particularly *Islamic* beliefs. One would never know from Kohlmann's testimony that right-wing, antigovernment Americans have killed more of their fellow citizens since 9/11 than have Muslim Americans.[1] Kohlmann's

---

[1] Scott Shane, Homegrown Extremists Tied to Deadlier Toll Than Jihadists in U.S. Since 9/11, The New York Times, June 24, 2015, available at: http://www.nytimes.com/2015/06/25/us/tally-of-attacks-in-us-challenges-perceptions-of-top-terror-threat.html?_r=0; Ian Millhiser, You are more than 7 times as likely to be killed by a right wing extremist than by Muslim terrorists, Thinkprogress.org, November 20, 2015, available at:

4

repeated claim that individuals tend to become terrorists (other things being equal) when they have adopted "Salafi-Jihadi" or "Takfiri" Islamic beliefs is therefore patently false. Many and perhaps most "home-grown terrorists" have clearly *not* adopted such beliefs. (Whether such beliefs actually cause anyone to become a terrorist is an important but separate issue.) Kohlmann should be very careful to make it clear that his theory is not a hypothesis about home-grown terrorism per se, but a hypothesis about home-grown *Islamic* terrorism. Oddly, he has never done so, even though this obviously bears on the assessment of his theory.

Before turning to Kohlmann's evidence for his 5-factor theory—or lack thereof—I would also note that Kohlmann has presented his theory in somewhat different versions, while always claiming that his theory is valid. In his April 2011 expert report in the case of *U.S. v. Daniel Patrick Boyd et al.*, Kohlmann mentions that one factor (among five) that allegedly helps to predict who will become a terrorist is the acquisition by an individual of automatic weapons and sniper rifles (p. 5). Whether or not this is plausible, one should note that this factor is nowhere to be found among the five factors that Kohlmann claims explain home-grown terrorism in his February 2014 expert report in the case of *U.S. v. Sami Osmakac* (see p. 6). In this latter report, Kohlmann also includes as one of his five terrorism-predicting factors "the browsing of Internet Websites Run by or on Behalf of International Terrorist Organizations" (p. 6). But such web browsing is not to be found among the five factors which he claims explain home-grown terrorism in his April 2011 report. Such inconsistencies make it difficult, again, to assess Kohlmann's theory, and they raise troubling questions. Does Kohlmann think that acquiring automatic weapons was a factor that led U.S. citizens to become terrorists in 2011 (or earlier) but ceased to do so sometime afterwards? What might account for this? Does he think that browsing

---

http://thinkprogress.org/justice/2015/11/30/3725562/you-are-more-than-7-times-as-likely-to-be-killed-by-a-right-wing-extemist-than-by-muslim-terrorists/

certain websites led to terrorism in 2014 (or today?) but not in 2011? What could possibly explain this?

There is yet another problem in the way that Kohlmann presents his claims about particular individuals. He typically asserts that a certain individual or individuals "fit the classic profile of contemporary violent extremists" or simply "fit the profile of terrorists" (see his expert report for *U.S. v. Daniel Patrick Boyd et al.*, pp. 5, 59). These statements obviously assume that there actually exists a well known and widely accepted "profile" or "classic profile" for home-grown terrorists. But no such profile exists, as Kohlmann must surely know. The idea that there is a "classic profile" of terrorists implies that there is a consensus among scholars and other analysts about the factors that lead individuals to become terrorists or which accurately describe terrorists. But Kohlmann does not cite a single scholarly study, or set of studies, that would substantiate this claim. He does not because he cannot. There is not in fact a "classic profile" of home-grown terrorists in the scholarly literature; instead, there is a good deal of debate about whether such a profile is even possible. Besides, if there does in fact exist a well known "classic profile" of terrorists, why would Kohlmann not use this profile to assess the likelihood that a particular individual is a terrorist? Why would he propose his own 5-factor hypothesis instead? Is Kohlmann actually claiming that his own profile of terrorists is in fact that "class profile"? This simply makes no sense.

Let me turn now to the alleged evidence for Kohlmann's theory. I should note that almost all theories which come to be generally accepted as valid in the social scientists are rigorously tested by scholars other than the individual(s) who first propose them. (This is why, among other reasons, such theories need to be clearly and consistently stated and very clear about what they actually propose to explain.) This is obviously not the case for Kohlmann's theory. Kohlmann

himself claims that his theory is valid, but no other scholar has done so, so far as I am aware. In fact, no other scholar has independently tested Kohlmann's theory—in any of its versions—for the simple reason that he has never published his theory in a reputable, peer-reviewed journal nor made his evidence (such as it is) available to others. I myself read a lot of social-scientific research on political violence and terrorism, but I had never heard of Kohlmann's theory before I read his expert testimony.

But let us set aside this concern. What is Kohlmann's evidence for his 5-factor theory? On what evidentiary basis can Kohlmann testify in courts of law, with great confidence, that there is a "high probability" that certain individuals are home-grown terrorists? How was he able to conclude, for example, in his expert report for *U.S. v. Daniel Patrick Boyd et al.*, that "there is a high probability that the defendants fit the profile of terrorists" (p. 59). What kind of evidence stands behind this claim?

When Kohlmann says there is a "high probability" that certain individuals are home-grown terrorists, this raises certain expectations among social scientists. Such an assertion can only mean that he has examined *a random sample of U.S. citizens*, and that some high percentage of those individuals in this sample who are *proven terrorists* (convicted in a court of law, presumably) "fit" his five-factor theory. In other words, all five factors in his theory must describe a high percentage of individuals in his random sample, *and just those individuals*, who are actually terrorists. (Of course, this also means that some percentage of individuals in his sample who are described by all five of his factors are *not* terrorists, but let us leave this issue to the side.) Kohlmann is also suggesting that individuals who are described by four of his hypothetical factors are less likely to be terrorists than those described by all five, and that

7

individuals who are described by only two or three of his factors are even less likely to be terrorists, and so forth.

But a good social scientist would then ask: Just *how* "probable" or "likely" is it that an individual described by all five of Kohlmann's hypothetical factors is a terrorist? Would we expect that individual to be a terrorist 90 percent of the time, based on available evidence? 60 percent of the time? How likely is it, furthermore, that an individual described by four of Kohlmann's factors is a terrorist? 70 percent? 40 percent? Obviously, the answers to these questions are exceedingly important, especially in a court of law. But Kohlmann does not answer these questions. He never indicates precise probabilities in his reports and testimony. He does not because he cannot. And he cannot because he has not in fact conducted a scientific study of home-grown terrorism based on (1) a random sample of U.S. citizens and (2) reliable data about convicted (or otherwise proven) terrorists. Accordingly, he simply has no way of knowing whether an individual who is described by all five of his hypothetical factors has a high, medium, or low possibility of being a terrorist. Kohlmann's conclusion that certain defendants who are described by all five of his factors have a "high" probability of being terrorists is not simply wrong but completely illogical and unwarranted. It is not simply a miscalculation. Rather, Kohlmann lacks the evidence for even *attempting* such a calculation, no matter what evidence he possesses about a particular defendant.

While Kohlmann lacks the data necessary to predict whether an individual might or might not be a terrorist, he might be able to make, at least in theory, certain verifiable claims and generalizations about home-grown terrorists without examining a random sample of Americans. This requires, of course, that he has very good evidence about a significant number of such terrorists. But *what kind of evidence* about known home-grown terrorists does Kohlmann

actually have, either from his own independent research or from the FBI and other law-enforcement agencies?

For those interested in assessing Kohlmann's claims, the key questions are these: Regarding *how many* and *what percentage* of convicted or proven terrorists does Kohlmann have reliable information? Does he have reliable evidence about *each* of the five factors in his theory for *most* of these individuals? Does he have evidence about *some* of his factors for *some* of these individuals? Above all, one would want to know what percentage of American terrorists are in fact accurately described by all five of Kohlmann's factors? How many are described by four? Or by three? These are of course very simple and basic questions, but one searches in vain for a clear answer to even *one* of them in Kohlmann's expert reports and court testimony. At no point, so far as I can determine, has Kohlmann ever presented even basic descriptive statistics about the terrorists for whom he has reliable evidence. He has never even indicated precisely *how many* terrorists he has information about. But without answers to these basic questions, one cannot have confidence in *any* generalization that Kohlmann might make about home-grown terrorists.

In conclusion, Evan Kohlmann's five-factor theory of home-grown terrorism can only be regarded as unproven hypothesis. It is hardly, as he seems to have convinced certain courts, a reliable, scientific method for determining whether a particular individual is likely to be a terrorist. It is nothing of the sort. Again, as a social scientist, I am appalled that a so-called expert would dare to present such guesswork as a scientifically proven account of home-grown terrorism in a court of law. It is frightening to me to think that a judge or jury might make some decision, indeed any decision, based even in part on an unproven hypothesis like Kohlmann's.

_____  
Jeff Goodwin

Jan. 11, 2016  
_____  
Date