UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:09-CR-216-FL-8
5:15-CV-523-FL

**FILED**

ZIYAD YAGHI, )
)
Petitioner, )
)
v. )
)
UNITED STATES OF AMERICA, )
)
Respondent. )

FEB 0 7 2018

PETER A. MOORE, JR. CLERK
US DISTRICT COURT, EDNC
BY ~~MAGISTRATE~~ DEP CLK

OBJECTIONS TO ~~MAGISTRATE'S~~
JUDGE'S MEMORANDUM AND
RECOMMENDATION

Pursuant to Fed. R. Civ. P. 72(b), Petitioner objects to the
Magistrate's Memorandum and Recommendation (D.E. 2268) filed
December 21, 2017.

The Magistrate Judge erred in recommending that the Court deny
Petitioen's motio nto vacate and granting Respondent's motion
to dismiss and motion for summary judgment.

## BACKGROUND

Petitioner incorporates by reference his prior briefing of the
facts of this case. See Motion to Vacate under 28 u.S.C. 2255
(D.E. 2207); Memorandum of Law in Support of Motion to Vacate
(D.E. 2217); Response to Government Motion to Dismiss, or, in
the laternative Motion for Summary Judgment (D.E. 2243). He
summarizes below only those facts most pertinent to the
instant pleading.

On October 2, 2015, Petitioner filed pro se his Section 2255

Motion to Vacate (D.E. 2207) and on January 29, 2016,
Petitioner's counsel filed a memorandum in support of the
petition. (D.E. 2217). On May 12, 2016, the REpsondent filed
its motion to dismiss, or in the alternative, for summary
judgment with a statement of material facts pursuant to Local
Civil Rule 56.1(a)(2).

On December 21, 2017, the Magistrate issued a Memorandum and
Recommendation which recommended that "Petitioner's motion be
dismissed in its entirety pursuant to Fed. R. Civ. P.
12(b)(6); and, alternatively, that certain claims be denied
pursuant to Fed. R. Civ. P. 56. (D.E. 2268 at 1). As the
Petitionr's counsel had failed to file a statement of material
facts in response to the Respondent's summary judgment motion,
the Magistrate accepted the Respondent's statement of material
facts as undisputed. (D.E. 2268 at fn 6).

<u>STANDARD OF REVIEW</u>

The district judge reviews a magistrate's memorandum and
recommendation de novo. Fed.R.Civ.P. 73(b)(3). "The district
judge may accept, reject, or modify the recommended
disposition; receive further evidence; or return the matter to
the magistrate judge with instructions." Id. The district
judge must consider new legal arguments raised in objections
to a magistrate judge's memorandum during habeas proceedings.
Samples v. Ballard, 860 F.3d 266 (4th Cir. 2017)(citing United
States v. George, 971 F.2d 1113, 1119 (4th Cir. 1992)).

## OBJECTIONS

Petitioner objects to the Magistrate's Memorandum and Recommendation on the following grounds:

A. Magistrate erred in granting summary judgment motion in part when the government failed to meet its burden and material facts remain in dispute.

B. Magistrate erred in relying on information filed in support of summary judgment motion to dismiss the petition under 12(b)(6).

C. Magistrate erred in raising a procedural bar sua sponte when the claim clearly related back to the original pro se habeas petition.

D. Magistrate erred in failing to grant Petitioner an evidentiary hearing.

E. Magistrate erred in utilizing Stricklan test in rejecting Giglio claim.

A. MAGISTRATE ERRED IN GRANTING SUMMARY JUDGMENT WHEN GENUINE ISSUE

OF MATERIAL FACT ARE IN DISPUTE, SUCH AS TRIAL COUNSEL'S

a. FAILURE TO INTERVIEW AMBER MOHAMMED, b. FAILURE TO CHALLENGE

THE TESTIMONY OF KOHLMAN b. FAILURE TO CONDUCT A REASONABLE IN-

VESTIGATION OF PETITIONER'S TRAVEL TO JORDAN . (D.E. 2268 at 16;23

;29; 33)

## DISPUTE OVER MATERIAL FACTS REMAIN UNRESOLVED

The government has not established that there is an absence of genuine issues of material fact as to these claims. When making the determination on whether there is a genuine issue of material fact the Magistrate correctly noted, but did not properly apply that "all facts and inferences drawn from the facts must be viewed in the light most favorable to the non-moving party." Evans v. Techs Applications & Serv. Co., 80 F.3d 954, 958 (4th Cir. 1996)

While habeas counsel committed a serious procedrual error in failing to properly resond to the summary judgment motion, the government failed to meet the burden of proof required and the summary judgment motion should not have been granted.

The Magistrate erred in finding the petitoienr's failure to respond to the government's statement of materila facts, pursuant to Local Civil Rule 56.1(a)(2), meant that "petitioner has admitted the truth of such facts for purposes of the government's alternative motion for summary judgment." (D.E. 2268 at fn. 6) As the government never met its burden and all facts must be taken in the light most favorable to the on-moving party, the burden never shifted an summar judgment should not have granted.

a. Failure to Interview Amber Mohammed

1. Mr. Ayers stated in his Affidavit that he interviewed Amber Mohammed, and Ms. Mohammed stated in her sworn Affidavit that she was never interviewed by trial counsel Mr. Ayers.

2. The Magistrate disregarded the critical fact that Amber Mohammed, Jade Mohammed, Mosed Ghanim, and Bryant Rivea all confirmed that Jude was moving to Pakistan to live with his father and younger sisters. (D.E. 2217 at 10)

3. Where is Jude's father living and where is he from? Pakistan Did Jude live there in the past? Yes. Where are Jude's younger sisters living during the time period Jude traveled to Pakistan? In Pakistan. Strategy does not protect counsel who fails to undertake a reasonable investigation.

clearly deficient performance and highly prejudicial.

Magistrate disregarded the fact that Kohlman's testimony regarding the six factors had been restricted in other trials.

The Magistrate found no prejudice from failure to cross Kohlman because K Daniel Boyd "provided testimony crroborating Kohlman's testimony" (D.E. 2268 at 20). Daniel BOyd's testimony was described by the government as a "carbon-copy of exactly what Mr. Kohlman testified about." (D.E. 2217 at 7). Kohlman's testimony on the six factors of a Homegrown Terrorist was complete conjecture, based on no identifiable studie excluded by other courts and due to ineffective assistsance of counsel went competely unchallenged at trial.

c. Failure to REasonalby Investigate Petitioner's trips Overseas.

Counsel's "strategic choices made after thorough investigation are virtually unchallengebale; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judments support the limitations on investigation . In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Jackson v. United States 638 F. Supp. 2d 514. 545 (W.D.N.C. 2009) quoting STrickland. 466 U.S., at 690. 691.

Simply put, "[a] lawyer who fails adequately to investigate, and to introdu into evdidence, information that demosntrates his client's factual innocence, or that raises sufficeint doubts as to that question to undermine confidence in the verdict, renders deficient performance." Richey v. Bradshaw, 498 F.3d 344 362 (6th CIr. 2007) (quoting Reynoso v. Giurbino, 462 F.3d 1099 1112 (9th Cir. 2006).

Petitioner's convcition on count two, conspiracy to kill kidnap or maim overseas, required an overt act. The governmetn alleged that Petitioner's two trips overseas in 2006 and 2007 were the overt acts. Petitioner's co-defendant, Omar Hassan, was acquitted on count two and his only overt act was the 2007 trip with Petitioner. Mr. Ayers failed to condcut a reasonable investigation to rebut the allegatio that Petitioner's 2006 trip to visit his family in Jordan was an overt act (i.e. an ttempt to find a battlefield.)

Mr. Ayers inexplicalby relied on an unavailable defense of first Amendment. "The First Amendment provides no protection for the conduct of providing resources knowing and intending that they are to be used for crimes of violence." United States v. Sattar, 314 F. Supp. 2d 279. 302 (S.D.N.Y. 2004). "]t[here is... a clear line between First Amendment protected activity and criminal conduct for which there is no constituional protection... The First Amendment's guarantee of associational freedom is no license to supply terrorist organizations with resources or material support in any form, including service as a comb combatant. Those who choose to furnish such material support to terrorist cannot hide or shield their conduct behind the First Amendment." United States v. Lindh, 212 F. Supp, 2d 579 (E.D. Va. 2002). Furthermore, this trial judge made an order and instructed the jury that the First Amendment was not a defense to the crimes charged.

b. Failure to Challenge the Testimony of Evan Kohlman

When the prosecutions case rest on the credibility of one witness, as opposed to direct physical evidence, the failure to consult or even cross an expert is indicative of ineffective assistance of counsel. See Eze v. Senkowski, 321 F.3d 110, 127-28 (2d Cir. 2003); Pavel v. Hollins, 261 F.3d 210, 224 (2d Cir. 2001); Lindstadt v. Keane, 239 F.3d 191, 201 (2d Cir. 2001). SImilar to the sexual abuse cases cited above in which the case rests on the credibility of one witness, the victim and the expert who supports the victim's testimony. Here, the case relied on the credibility of one witness, Dnaiel Boyd and the xpert who suported his testimony, Evan Kohlman.

Failure to pursue a particular course of action is not considered strategic when it is not a "conscious, reasonably informed decision made by an attorney with an eye to benefitting his client." Pavel v. Hollins,261 F.3d 210, 218 (2d Cir. 2001)

Trial Counsel Mr. Ayers allowed the testimony of the governement's sole expert Kohlman to remain before the jury completely uncontested, a clear abandonment of his duty as an attorney. Mr. Ayers did not consult any terrorism or sociology experts. If trial counsel had consulted readily available experts on sociology and terorism, such as those who submitted expert reports on behalf of petitioner, then he would have had the ability to effectively cross-examine Kohlman. (D.E. 2217, Ex. 27; 28; 29; 30; 31.)

Instead Mr. Ayers relied on a Professor of Comparative REligion, Charles Kimball. (cite to affidavit). Mr. Kohlman was testifying as an expert on terrorism and sociology, not religion. (D.E. 1443 at 1. 6). This Court restricted Kohman's testimony as described by the Magistrate, however, it emphasized that Kohlman's testimony was "ideal fodder for a vigorous cross-exmaination." (CITE) Magistrate completely disragrded that trial counsel not only failed to cross-examine Kohlman but would have been unable to effectively cross Kohlman if he chose to do so because Mr. Ayers never even consulted with terrorism and sociology experts necessary for an effective cross. This cannot be described as strategy. Had Mr. Ayers consulted with readily available terrorism and sociology experts he would have been able to effectively cross Kohlman as demonstrated by the declarations of the experts submited with Petitoiner's habeas. Richey v. Bradshaw, 498 F.3d 344, 347-48 (6t hCIr. 2007)(counsel erred in retaining unqualified expert and as a result the State's "assertions that the fire was caused by arson went entierly unchallenged."

Mr. Ayers' statement that "[t]o ask questions, when the witness was prevented from commenting on the particular defendant, would have opened the door to additional testimony which was not otherwise allowed matter of trial strategy' is nonsensical. (D.E. 2268 at 22)

Magistrate erred in determining that failure to question Kohlman was not prejudicial because "the focus of the government's evidence was petitioner's actions and statements. not kOhlman's opinoin." (D.E. 2268 at 20) Kohlman's testimony was key to the jury's interpretatoin of Petitioner's actions whether they could in fact be to fight overseas or were the actions of an innocent Arab American teenager. Kohlman provided the basis for Petitoiner's convcition because without Kohlman's tstimony the jury would never have been introduced to the idea of a global jihad movement. (d (D.E. 2217 at 3). Kohlman further tied his testimony to the specific actions of Peitioner by noting that people traveled to places like JOrdan in hopes of joning fighter overseas. Id. at 3-4. COUnsel's complete failure to cross

6

Mr. Ayers' strategy change was based on a fundamental misunderstanding of the law. AFter the testimony of Daniel Boyd that he nevere had an agreement with me, Mr. Ayers supposedly changed his strategy and focused on the First Amendment. The conspiracy alleged by the prosection in the indictment, and elsewhere from the beginning however was the joing of a global jihad movement, not a simple agreement between myself and Boyd. The jury instruction as well as they indictment state that the agreement was between defendants and people KNOWN and UNKNOWN to the grand jury. Meaning whether or not there was an agreement between Boyd and defendants at trial or not does not rule out the possibility of an agreement as described in the indictment. Therefore. Mr. Ayers' supposed change of strategy was in fact based on nothing but a fundamental misunderstanding of the law and the crimes alleged.

B. THE MAGISTRATE ERRED IN GRANTING THE MOTION TO DISMISS AND FINDING THAT THE PETITIONER WAS NOT PREJUDICED BY COUNSEL'S DEFICIENT PERFORMANCE.

a. A motion to dimiss under Federal Rule of Civil Procedure(12)(b) tests the legal sufficiency of the complaint but "does not resolve contests surrounding the the facts, the merits of a claim, or the applicability of defenses." [Lewis v. United States, No. 4:12-CR-00068-FL-2, 2015 WL 2401514, at *2 (E.D.N.C. May 20, 2015)]

1. The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the compalint, not to resolve conflicts of fact or to decide the merits of the action. [Holder v. United States, 2017 WL 2861108, at *2 (E.D.N.C. May 20, 2015)]

b. A complaint states a claim under 12(b)(6) if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" {Lewis v. United States, 2015 WL 2401517, at *2 (E.D.N.C. July 3, 2017.)]

1. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(quoting Bell Atl. Corp v. Twonbly, 550 U.S> 544, 740 (2007)).

c. "Factual allegations must be enough to raise a right to relief above the speculative level." [Lewis v. United States, 2015 WL 2401517, at *2 (E.D.N.C. May 20, 2015)]

1. Twombly, 550 U.S. at 555.

d. In evaluating the complaint, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff." but does not consider "legal conclusions, elements of a cause of action, ... bare assertions devoid of further factual enhancement [,] ... unwarranted inferences, unreasonable conclusions, or arguments." [Lewis v. United States 2015 WL 2401517, at *2 (E.D.N.C. Apr. 27, 2017), report and recommendation adopted, WL 2842770 (E.D.N.C. July 3, 2017)]

The Supreme Court in Lockhart clarified that "an analysis focusing solely on mere outcome determination... is defective," Lockhart v. Fretwell, 506 U.S. 364, 369 (1993). Instead, a proper prejudice analysis must consider "whether the result of the proceeding was fundamentally unfair or unreliable." Id.

## C. MAGISTRATE ERRED IN RAISING A PROCEDURAL BAR SUA SPONTE WHEN THE CLAIM CLEARLY RELATED BACK TO THE ORIGINAL PRO SE HABEAS PETITION.

The Magistrate erred in raising a procedural bar sua sponte regarding petitioner's claim that counsel was deficient in failing to review discovery. The Magistrate disregarded that the audio is part of the larger failure of trial counsel to

investigate. The improtance of the audio is not simply in the tow lines that the Magistrate cites in the M&R, but rather it proves. (CITE)

On May 9, 2008, Jasmin Smajic can be heard on the recording stating "Hey, I'll be back in a second I gotta call". That phone call was from me, according to the phone logs also turned over in discovery. (D.E. 2217 Ex. 12 at 3) The discovery also showed that Jasmin Smajic was often at Daniel Boyd's store and was in fact visiting the three days prior May 6, 7, and 8. (Exhibit 2217 at 10 fn. 20). The discovery clearly proved that Petitiorn visited the store at the behest of Jasmin Smajic and that I never intended to introduce Jude Mohammed to Daniel Boyd. Furthermore, if trial counsel had listened to the recording he would have learned that Jude's father lived in Pakistan and that Jude had visited many times and intended to return in a year. The testimony of Hysen Sherifi, a co-defendant, woh credibility was destroyed on the stand is not sufficient.

a. Claims relate back to the original claims when both sets of claims arise out of the "conduct, transaction, or occurrence set out or attempted to be set out in the original pleading." Fed.R.Civ.P. 15(c)(1)(B).

1. Claims relate back to the original when they are supported by the facts of the same "time and type" as those in the original pleading. Mayle v. Felix, 545 U.S. 644, 650 (2005). "So long as the original and amnded petitions state

claims that ar etied to a common core of operative facts,
relation back will be in order." Id. at 664. Relation back is
proper when the amended claim merely tends to strengthen or
amplify without essentially altering the existing claims.
Maegdlin v. Int'l Ass'n of Machinists and Aerospace Workers,
Dist. 949, 309 F.3d 1051, 1053 (8th Cir. 2002); see also USX
Corp. v. Barnhart, 395 F.3d 161, 166-67 (3d Cir. 2004).

"[A]round nine hundred (900) hours of audio recordings were
made by the government in its investigation." D.E. 1397. The
government then differentiated between consensually obtained
recordings and surveillance recordings. Transcripts consisted
almost entierly of consensually obtained recordings.
According to the government, of the "170 consensually obtained
recordings, 159 have been transcribed." D.E. 399. The May 9,
2008 recording was consensually obtained as two government
informants were present that evening and it was not
transcribed. My trial attorney's failure to request that the
only house on which ih client appeared was clearly egregious
especially given that transcripts were a significant pre-trial
issue with numerous motions filed and orders issued. (D.E.
246; 260; 268; 346; 357; 399; 412; 1397). Mr. McCullough,
Yaghi's former attorney, emphasized "[m]erely because the
undersigned's defendant is not on a great many of the tape
recordings does not relieve the undersigned of the ethical
duty as well as the practical duty of listening to all tapes."
(D.E. 382 at 2.)

    2. Mr. Ayers did not understand that the breadth of

the conpsiracy the government was alleging. In closing, Mr.
Ayers argued "There are two counts in this case. One count is
material support of terrorism and the other count is a
conspiracy to maim, kill or kidamp. The witnesses in this
case have not substantiated either one those counts... There's
no agreement. The very basics and tenets of conspiracy law
require that the government prove this agreement." (D.E. 2034
at 155-56). he then went on to emphasize that the three Boyds
"acknowledged that there was no agreement... That's the best
evidence in the world, as far as I'm concerned about what did
or did not transpire." Id. at 156.

Mr. Ayers did not understand the fact that the government from
the very beginning had argued that the conspiracy was the
agreement to knowingly enter the global jihad movement. Mr
Ayers' fundamental misunderstanding of conspiracy law led to
his failure to come up with a viable defense strategy and
instead to rely on the unavailable first amendment defense.
The governement was not convicting me based on my speech but
rather my conduct, namely my 2006 and 2007 trips overseas.

D. THE MAGISTRATE ERRED IN FAILING TO GRANT PETITIONER AN
EVIDENTIARY HEARING.

The Magistrate improperly concluded that Petitioner should not
be granted an evidentiary hearing. (D.E. 2268 at 10).
Petitioner should be granted an evidentiary hearing as it is
not clear from the pleadings that petition is not entitled to
relief. United States v. Rashaad, 249 F. App'x 972, 973 (4th
Cir. 2007)(Raines v. United States, 423 F.2d 526, 529 (4th
Cir. 1970)).

    1. "Unless the motion and the files and records of the
case conlusively show that the prisoner is entitled to no
relief, the court shall grant a prompt hearing thereon." 28
U.S.C. § 2255(b).

Petitioner entitled to hearing on whether counsel's failure to
consult a handwriting expert was reasonable. United States v.
Tarricone, 996 F.2d 1414, 1418-20 (2d Cir. 1993))

"A hearing is required when movant presents a colorable Sixth
Amendment claim showing disputed material facts and a
credibility determination is necessary to resolve the issue."
United States v. Coon, 205 Fed. Appx. 972, 973 (4th Cir.
2006)(citing United States v. Witherspoon, 231 F.3d 923, 925-
27 (4th Cir. 2000)). United States v. Young, 644 F.2d 1008,
1013 (4th Cir. 1981)

    a. Court Should Have Held an Evidentiary Hearing under

Fourth Circuit precedent. United States v. King, 679 F. App'x
297, 299 (4th Cir. 2017)]

1. We therefore conclude that the district court
abused its discretion in prematurely rejecting the Kings'
claim absent an evidentiary hearing. [United States v. King,
679 F. App'x 297, 299 (4th Cir. 2017)]

2. Here, the Kings' affidavits and their attorneys'
declarations materially conflict with regard to numerous
matters, including what advice counsel provided regarding the
strength of the Government's case, the extent to which the
Kings were aware of the sentence they likely would face it
they went to trial, the extent to which counsel examined the
evidence and reviewed that evidence with the Kings, and when
and how counsel communicated plea offers to the Kings. [United
States v. King, 679 F. App'x 297, 298 (4th Cir. 2017)]

3. The supporting documents provided by the Government
do not fully resolve these material disputes. [United States
v. Kings, 679 F. App'x 297, 298 (4th Cir. 2017)]

4. Although "there is no prohibition against a court
making credibility determinations based on competing
affidavits in certain circumstance," Strong v. Johson, 495
F.3d 134, 139 (4th Cir. 2017)]

5. Importantly, while counsel's statements are more
detailed and more fully supported by documentary evidence, we

cannot conclude that the Kings' contrary affidavits are so conclusory or so implausible as to warrant their outright rejection, or to otherwise dispel the material factual disputes at issue in their case. [United States v. King, 679 F. App'x 297, 299 (4th Cir. 2017)]

6. Because these factual disputes turn upon credibility determinations and "relate primarily to purported occurrences outside the courtroom and upon which the record could, therefore, case no real light," we conclude this action falls within the class of cases in which "an evidentiary hearing is especially warranted." See White, 366 F.3d at 302 (alteration, citations, and internal quotation marks omitted). [United States v. King, 679 F. App'x 297, 299 (4th Cir. 2017)]

7. We therefore conclude that the district court abused its discretion in prematurely rejecting the Kings' claim absent and evidentiary hearing [United States v. King, 679 F. App'x 297, 299 (4th Cir. 2017)]

E. MAGISTRATE ERRED IN UTILIZING STRICKLAND TEST IN REJECTING GIGLIO CLAIM.

a. The Magistrate failed to grant the Giglio because he did not consider Kohlman a material witness.

1. The Magistrate erred in finding that the Giglio

violation was not material. The materiality of a Giglio claim
is fact specific and must be determined on a case by case
basis. See United States v. Ellis, 121 F.3d 908, 918 (4th
Cir. 1997)(explaining that to determine whether evidence is
material for purposes of Brady, "we evaluate the whole case,
taking into account the effect that the suppressed evidence,
had it been disclosed, would have had on the evidence
considered at trial"). Here, the evidence against me was
underwhelming and entirely circumstantial, so any impeachment
of the credibility of the government's expert is material.


    b. The Magistrate committed the same error in
evaluating the materiality of the Giglio claim that he
committed in evaluating the prejudice resulting from trial
counsel's failure to challenge the testimony of Kohlman, the
Magistrate failed to recognize the importance of Kohlman's
testimony.


    1. The jury's estimate of the truthfulness and
reliability of a given witness may well be determinative of
guilt or innocence, and it is upon such subtle factors as the
possible interest of the witness in testifying falsely that a
defendant's life or liberty may depend." Napue v. Illinois,
360 U.S. 264, 360 (1959).


    2. Giglio claims have been found material even when
the impeachment evidence applies to only one critical
government witness. See, e.g., Giglio, 405 U.S. at 154-55,

(awarding new trial because of suppression of impeaching evidence on one witness); Spicer v. Roxbury Corr. Inst., 194 F.3d 547, 560-61 (4th Cir. 1999)(same); Crivens v. Roth, 172 F.3d 991, 998-99 (7th Cir. 1999)(same); United States v. Service Deli Inc., 151 F.3d 938, 944 (9th Cir. 1998)(same). Like the Giglio material in these aforementioned cases, the Kohlman information here would have undermined the credibility of the government's only expert whose testimony was key to the understanding of the facts and conduct alleged by the government in the case, especially when the credibility of the government's star witness, Daniel Boyd, had already been undermined.

5. The Magistrate erred in finding that I received a fair trial when clearly material Gigilio evidence was suppressed and the credibility of a critical government witness was uncontested. There is not only a reasonable, but a substantial likelihood that the impeachment of the government's only expert witness would have resulted in a different outcome.

b. Kohlman's testimony was key and the Mgistrate did not give it the weight it should have been given and that effects the prejudice prong of the Strickland test and the materiality prong of the Giglio claim.

1. The Magistrate's statement that "the focus of the government's evidence was petitioner's actions and statement" is true and Kohlman's testimony was key to the interpretation

of these facts. As the government aptly stated. "[t]he notion that the facts of this case do not consist of the matter discussed by Mr. Kohlman is simply inane. The defense claims, "[Mr.] Kohlman is nothing more than a summary fact witness." (D.E. at p.3). Mr. Kohlman is able to provide additional valuable background information related to the evidence ALREADY existing. Mr. Kohlman's reports display that he is providing additional information to further describe the evidence in existence." D.E. 1383 at 7 (emphasis in original)

2. The government then went on to describe the specific acts and statements that Kohlman's testimony would explain to the jury. In a section entitled "Focus on Travel" emphasizes that "Home Grown Terrorism seeks to accomplish the goals of the Global Jihadist Movement. To do so, this often entails schemes to travel to what the Islamic Extremists consider war fronts. Mr. Kohlman is able to explain where these locations are geographically, routes commonly utilized to enter these areas, and why the extremists consider them battle fronts. The evidence will display that these are areas the defendants traveled to or discussed traveling to - which, in context is exteremely relvant for the jury's consideration." D.E. 1383 at 5-6. All three of the Boyd co-defendants testifying on behalf of the government denied the existence of an agreement between themselves and I. Therefore the conspiracy was the alleged agreement to enter into the so called global jihad movement. Kohlma's testimony established the existence of the global jihad movement. other experts have questioned whether the global jihad movement even exists.

(Feldkamp Affidavit, Martha Crenshaw, There is no Global Jihad Movement, The Atlantice, March 11, 2015)

3. I never had actual contact with terrorists. The govnerment used Kohman's testimony for the arguemtn that the Global Jihadist Movement is able "to increase its ranks with individuals who have never had any actual contact with recognized terrorist group." D.E. 1383 at 5. As the government said, "Mr. Kohlman's testimony is highly relevant andin fact necessary." (D.E. 1383 at 14)(emphasis added).

4. The Magistrate's assertion that trial counsel made a strategic decision not to cross examine Kohlman because he was afraid that it would open the door to Kohlman testifying about my mental state is mertiless. This Court, after denying the Daubert motion, specifically encouraged cross-examination to demonstrate the weakness of Kohlman's testimony. "Vigorous cross-examination, presentation of contrary evidence, and careful instructio non the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579, 596 (1993). Moreover, the government itself encouraged the corss examination of Kohlman, stating that Kohlman's testimony "is subject to the most thorough form of testing known to law, cross-examination." (D.E. 1383 at 16).

CONCLUSION

Petitioner respectfully objects to conclusions of the Magistrates M&R based on the foregoing reasons stated herein, he respectfully moves this Honorable Court to reject the Magistrate's M&R findings, recommend and remand for an evidentiary hearing before a new Magistrate, or in the alternative before this Honorable Court.

Respectfully submitted on this 1 day of February 2018

Ziyad Yaghi 51771-056

PRO SE REPRESENTATION

Under the penalty of perjury pursuant to Title 28 U.S.C. § 1746, I do swear that I am, Ziyad Yaghi; that the foregoing statement contained in this affidavit are true and correct to the best of my knowledge and I have reviewed and affixed my signature thereto.

Ziyad Yaghi 51771-056

USP Florence-High

PO Box 7000

Florence, CO 81226

CERTIFICATE OF SERVICE

I, Ziyad Yaghi, HEREBY CERTIFY that a true and correct copy of this foregoing instrument has been mailed first class postage prepaid on this 31 day of January 2018, to the United States Attorney, United States Attorney's Office, 310 New Bern Ave., Suite 800, Raleigh, N.C. 27601.

Executed under penalty of perjury pursuant to 28 U.S.C. § 1746, on this 1 day of February 2018.

Ziyad Yaghi 51771-056

USP Florence-High

PO Box 7000

Florence, CO 81226