DECLASSIFIED BY: NSICG C32W33B91
ON 04-19-2019
This redacted version only

Filed with Classified
Information Security Officer
CISO _D.M. Guerrero Randall_ **FILED**
Date ____04/02/2019____

MAR 2 9 2019

PETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC
BY _____ DEP CLK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
### WESTERN DIVISION

NO. 5:09-CR-216-FL-8
NO. 5:15-CV-523-FL

COPY

| | |
|---|---|
| ZIYAD YAGHI | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) ORDER |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

This matter is before the court on petitioner's motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 (DE 2207), the government's motion to dismiss, or in the alternative, motion for summary judgment, (DE 2235), and petitioner's motion to access sealed documents (DE 2271). Pursuant to 28 U.S.C. § 636(b)(1)(B), United States Magistrate Judge James E. Gates, entered a memorandum and recommendation ("M&R") (DE 2268), wherein it is recommended that the court deny petitioner's § 2255 motion and grant respondent's motion to dismiss. Petitioner timely filed objections to the M&R, and in this posture, the issues raised are ripe for ruling. For the reasons stated herein, the court denies petitioner's motion to vacate, and grants respondent's motion to dismiss or alternative motion for summary judgment. The court denies as moot counsel's request to access sealed documents.

1

## BACKGROUND

Upon de novo review of the record, the court adopts and incorporates herein pertinent portions of the background section in the M&R, where it accurately reflects the case history and court rulings. (See M&R (DE 2268) at 1-5). Petitioner was charged in this case along with his seven co-defendants in an initial indictment returned on July 22, 2009 (DE 3), a superseding indictment returned on September 24, 2009 (DE 145), and a second superseding indictment, the final indictment, returned on November 24, 2010 (DE 670). The operative indictment charges petitioner with conspiracy to provide material support to terrorists from no later than November 9, 2006, through at least July 2009, in violation of 18 U.S.C. § 2339A (Count One); and conspiracy to murder, kidnap, maim, and injure persons in a foreign country during the same period, in violation of 18 U.S.C. § 956(a) (Count Two).

Petitioner was represented initially by J. Douglas McCullough ("McCullough"). (See Am. Notice of App. of McCullough (DE 59)). On December 21, 2010, James M. Ayers, II ("Ayers"), entered his appearance as counsel for petitioner (DE 689) and on January 14, 2011, following a transitional period of dual representation with McCullough, proceeded as sole counsel for petitioner. (See (DE 688)).

Petitioner was tried before a jury with two co-defendants — Hysen Sherifi ("Sherifi") and Mohammad Omar Aly Hassan ("Hassan") — from September 19, 2011, to October 13, 2011, encompassing 17 trial days. (See, e.g., Minute Entries (DE 1463, 1503)). Petitioner was convicted on both counts. (See Verdict (DE 1508)). On January 13, 2012, he was sentenced to

180 months of imprisonment on Count One and 380 months on Count Two to run concurrently. (See Judgment (DE 1666)).

Petitioner appealed on January 26, 2012. See Notice of Appeal (D.E. 1678). The United States Court of Appeals for the Fourth Circuit affirmed judgment against petitioner on February 4, 2014. United States v. Hassan, 742 F.3d 104 (4th Cir. 2014). On October 6, 2014, the United States Supreme Court denied petition for writ of certiorari. Yaghi v. United States, 135 S. Ct. 192 (2014) (Mem).

Petitioner filed his § 2255 motion pro se on October 2, 2015. Three days later, on October 5, 2015, counsel noticed appearance on petitioner's behalf. On January 19, 2016, with leave of court (see DE 2216), and through counsel, petitioner filed memorandum (DE 2217) with 34 exhibits (DE 2217-1 to 2217-34) in support of the petition. Petitioner relies upon hearing transcripts and trial transcripts (DE 2217-2 to 2217-11); declarations by individuals who petitioner argues should have been called to testify at trial (DE 2217-12 to 2217-23); transcripts of FBI recordings of phone conversations (DE 2217-24 to 2217-26); declarations by proffered experts on the reliability of the trial testimony of Evan Kohlmann ("Kohlmann") (DE 2217-27 to 2217-31); and the declaration of Joshua Dratel that the government withheld material constitutionally required to be turned over to defense counsel (DE 2217-32).

On May 12, 2016, the government filed its motion to dismiss or, in the alternative, for summary judgment (DE 2235) with a statement of material facts pursuant to Local Civil Rule 56.1 (E.D.N.C.) and other supporting documents, including a notice of filing with the classified information security officer of a classified appendix to the motion (DE 2239), and a redacted

version of a portion of the classified appendix (DE 2240). The government also entered into the record an appendix to the statement of material facts (DE 2241), consisting of a table of contents (pp. 1-2), a declaration by Ayers (pp. 3-12). Ayers makes reference in his declaration to various memoranda and notes made by him during the course of his representation, together with certain correspondence sent by him to petitioner.

On January 5, 2018, petitioner's counsel filed his motion to access sealed documents in this case. Less than two weeks later, petitioner indicated he wished to discharge counsel, and asked that counsel request a continuance on his behalf to file objections to the M&R. (McDonald Decl. (DE 2273-1) ¶¶ 4-7). Subsequently, counsel moved for an extension of time to file objections and moved to withdraw as petitioner's attorney on January 23, 2018.

On February 7, 2018, petitioner filed his objections to the M&R. The next day, the court denied as moot petitioner's motion for extension of time to file objections, and granted petitioner's counsel's motion to withdraw.

On February 13, 2018, the government responded in opposition to petitioner's objections, relying heavily on the magistrate judge's reasoning. Nine days later, the government also responded in opposition to petitioner's former counsel's motion to access sealed documents.

On July 13, 2018, the court allowed petitioner to file a supplemental memorandum in support of his objections to the M&R. The government responded in opposition to petitioner's supplemental memorandum on August 7, 2018.

▮▮▮

## COURT'S DISCUSSION

A.   Standard of Review

The district court reviews de novo those portions of the M&R to which specific objections are filed. 28 U.S.C. § 636(b). The court does not perform a de novo review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir.1983). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

A petitioner seeking relief pursuant to 28 U.S.C. § 2255 must show that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the Court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). "Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255(b). "The Federal Rules of Civil Procedure and the Federal Rules of Criminal Procedure, to the extent that they are not

▮▮▮

inconsistent with any statutory provisions, or the [§ 2255 Rules], may be applied to" § 2255 proceedings. Rules Governing Section 2255 Proceedings, Rule 12.

B.    Analysis

Petitioner asserts several grounds for relief under § 2255. These include ineffective assistance of counsel by his trial counsel; the government's violation of <u>Giglio v. United States</u>, 405 U.S. 150 (1972); and improper admission of government expert Evan Kohlmann's testimony. Petitioner also urges his actual innocence, and he complains about the government's alleged misconduct regarding witnesses.

Petitioner raises numerous objections to the M&R. Petitioner contends his § 2255 motion and supporting evidence raises genuine issues of material fact; the magistrate judge improperly relied upon information filed in support of a summary judgment motion in recommending dismissal of the § 2255 petition; the M&R should not raise a procedural bar sua sponte when the claim related back to the original pro se habeas petition; and the test for ineffective assistance of counsel articulated in <u>Strickland v. Washington</u>, 466 U.S. 688 (1984) is inapplicable to his <u>Giglio</u> claim. Petitioner also complains about the magistrate judge's failure to grant petitioner an evidentiary hearing. The court analyzes these assignments of error in the context of each claim on which petitioner bases his request for relief under § 2255.

1.    Petitioner's Objection to the M&R's Finding That No Hearing is Necessary

Upon de novo review, the record is manifestly conclusive that the prisoner is entitled to no relief for the reasons set forth below, and thus petitioner is not entitled to a hearing in this matter. 28 U.S.C. § 2255(b).

2.     Ineffective Assistance of Counsel

Petitioner's specifically objects to four portions of the M&R pertaining to alleged ineffective assistance of counsel: defense counsel's failure to challenge the testimony of Kohlmann, to interview Amber Mohammad, to interview witnesses regarding petitioner's travel to Jordan, and to review the recording of the meeting between Jude Mohammad and Daniel Boyd (M&R (DE 2268) at 14–33). The court reviews these challenges to sufficiency of counsel de novo.[2]

In order to establish ineffective assistance of counsel, a petitioner must satisfy a two-pronged test. See Strickland v. Washington, 466 U.S. 688, 687 (1984). Under the first prong, a petitioner must show that his counsel's representation "fell below an objective standard of reasonableness." Id. at 688. The court must be "highly deferential" to counsel's performance and must make every effort to "eliminate the distorting effects of hindsight." Id. at 689. Therefore, the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. The second prong requires a petitioner to show that he was prejudiced by the ineffective assistance by showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

_____

[2] Petitioner does not specifically object to any other sections of the M&R's findings regarding ineffective assistance of counsel. The court has reviewed the remaining sections of the M&R pertaining to ineffective assistance of counsel and finds no clear error with respect to those sections.

7

███████

### a. Failure to Challenge the Testimony of Evan Kohlmann

Petitioner asserts that counsel's questioning of the government's expert witness Kohlmann fell below an objective standard of reasonableness, and that counsel's failure to adequately question Kohlmann prejudiced the outcome of his trial. For the reasons stated below, counsel's performance with respect to questioning Kohlmann at trial was not deficient.

On August 16, 2011, the court held evidentiary hearing on defendants' motion to exclude expert testimony by Kohlmann pursuant to Daubert v. Merrell Dow Pharamceuticals, Inc., 509 U.S. 579 (1993). Following hearing, Kohlmann was qualified by the court as an expert in trends of decentralized terrorism and home-grown terrorism, including certain criteria that comprise the profile of a home-grown terrorist network and such topics as the manner and location of overseas travel as it relates to home-grown terrorist networks. (See 16 Sept. 2011 Ord. (D.E. 1443) ("Daubert Ord.") at 6; Trial Day 6 Tr. (DE 2217– 7) 180:7–272:12 (Kohlmann's trial testimony); Trial Day 7 Tr. (DE 2217-3) 15:20–32:11 (same); Kohlmann's Supp. Rep. (DE 1315–1); see also Trial Day 2 Tr. (DE 2217–6) 71:12–72:2; 81:7-13; 84:25–85:11 (references to Kohlmann in government's opening statement); Trial Day 15 Tr. (DE 2217–11) 14:3–17:2; 26:9-12; 37:12-14; 63:23–64:2; 83:21–24 (references to Kohlmann in government's closing argument)).

Petitioner first contends that Kohlmann's theory had never been scientifically tested, and that counsel should have more vigorously questioned Kohlmann about his methods at the Daubert hearing evaluating his qualifications to testify as an expert. (Pet. Supp. Mem. (DE 2290) at 9–10). Specifically, he contends that counsel should have questioned whether Kohlmann's theories had ever been scientifically tested. As the magistrate judge correctly noted,

███████████

counsel's choice of questions for Kohlmann at the <u>Daubert</u> hearing is a strategic matter due deference. Counsel focused on the extent to which Kohlmann had studied statistics relating to association of marriage and jihad. (<u>Daubert</u> Hrg. Tr. (DE 2217–2) 96:8–102:12). These questions, which supplemented other questions raised by other defense counsel and defendant Subasic on use of open source materials and translations in his research, the subject matter of prior reports and testimony by Kohlmann, the sources upon which he relied in this case, and the conclusions he reached in this case, (<u>id.</u> at 41:5–96:6), are questions that fall within an objective standard of reasonableness.

Next, petitioner contends that counsel's decision not to question Kohlmann about his methodology during cross-examination at trial was not a strategic choice because "[c]ross examining Kohlmann about that methodology could only have benefitted petitioner." (Pet. Supp. Mem. (DE 2290) at 11). Petitioner further argues that counsel should have attacked Kohlmann's ability "to opine that the evidence in <u>this case</u> showed a conspiracy of home grown terrorists." (<u>Id.</u> (emphasis in original)).

Counsel's decision not to cross-examine Kohlmann at trial was a strategic choice entitled to deference. Petitioner's counsel had joined in a motion to restrict Kohlmann from testifying as to any defendant's mental state. In securing that limitation, counsel acted to restrict Kohlmann's testimony, and acted within a professional standard of reasonableness in his approach to cross-examination. Contrary to petitioner's assertion, questioning an expert about his or her methods before the jury can help or harm the party conducting the cross-examination, depending on the expert's response. Therefore, the court rejects the assertion that "[c]ross[-]examining Kohlmann

about that methodology could only have benefitted petitioner." (Pet. Supp. Mem. (DE 2290) at 11).

The court grants the government's motion for summary judgment on the issue of counsel's strategic choices in the cross-examination of Kohlmann.

    b. Defense Counsel's Failure to Interview Amber Mohammad

Petitioner asserts that a genuine issue of material fact exists as to whether or not Ayers interviewed Amber Mohammad ("Amber"), and that Ayers's failure to interview Amber was deficient performance by counsel and prejudiced petitioner. Amber is the daughter of Elena Mohammad and the sister of the co-defendant Jude Mohammad. Petitioner asserts Amber's testimony would have impeached Elena Mohammad's testimony that petitioner convinced Jude Mohammed to engage in violent jihad. Petitioner proffers Amber's testimony for the purpose of showing that Jude Mohammad, her brother, traveled to Pakistan to live with his father. (See Amber Mohammad Decl. (DE 2217-16) ¶¶ 11-15). Petitioner reasons that counsel's performance was deficient because he did not sufficiently cross-examine Elena Mohammad, and petitioner was prejudiced by not calling Amber Mohammad as a witness.

Amber testified in declaration relied upon by petitioner that she was never contacted by Ayers or anyone in connection with petitioner's defense. (Amber Mohammad Decl. (DE 2217-16) ¶ 16). Ayers testifies that he did interview Amber. (Ayers Decl. (DE 2241) ¶ 27, p. 30). No genuine issue of material fact exists because, even taking Amber's assertion as true, petitioner has still not established ineffective assistance of counsel.

Amber asserts that "[t]he main motivation for Jude's moving back to Pakistan was that he learned that one of our younger sisters was being molested by a close relative and he felt that he needed to protect her." (Amber Mohammad Decl. (DE 2217-16) ¶ 15). Petitioner argues that Ayers's performance was deficient because he could have used this assertion to impeach the testimony of Elena Mohammad, who testified that petitioner had convinced her son Jude to move to Pakistan to engage in violent jihad.

The court rejects petitioner's claim that Ayers's performance was deficient. Counsel did cross-examine Elena Mohammad, pointing out inconsistencies in her testimony in an effort to impeach her. (Trial Day 8 Tr. (DE 2217-10) 137:7-23). Moreover, Ayers makes clear that "strategically it was not, in my opinion, necessary to berate Jude Mohamm[a]d's crying mother [Elena Mohammad]. She had nothing good to say about [p]etitioner. A crying mother that blames [p]etitioner for her missing son and who is determined to compromise petitioner is best removed from the stand as soon as possible." (Ayers Decl. ¶ 20). The court must give deference to trial counsel's strategic decision to limit cross-examination of Elena Mohammad, who was an adverse witness to petitioner.

Moreover, petitioner does not show that counsel's failure to use Amber's testimony at trial prejudiced the outcome of trial. Amber testifies that "[t]he main motivation" for Jude Mohammad's moving back to Pakistan was to be with his family. (Amber Mohammad Decl. (DE 2217-16) ¶ 15). Petitioner concludes that this statement shows that he did not convince Jude Mohammad to go to Pakistan to engage in violent jihad. However, even taken as true, Amber's

▉▉▉▉▉

declaration does not show a reasonable probability that her testimony would have changed the outcome of petitioner's trial.

At trial, the jury was presented with evidence that Jude Mohammed wanted to travel back to Pakistan to be with his father. (See, e.g., Trial Transcript Day 12 (DE 1838) 14:2-16). The weight of the testimony also overwhelmingly defeats assertion that Jude Mohammad did not intend to engage in violent jihad when traveling to Pakistan. For example, at trial Dana Tamer ("Tamer"), a computer center coordinator at Wake Technical Community College, testified to an encounter she had with Jude Mohammad. (See Trial Tr. Day 8 (DE 2217-10) 138:22-141:16). Tamer described how Jude Mohammad made several statements which caused her to file an incident report, including that "he was going to die young" and that he was "going to the mountains of Pakistan" to die. (Trial Tr. Day 8 (DE 2217-10) 140:21-141:8). Similarly, Holden Eliason ("Eliason"), an individual close to Jude Mohammad from mosque, testified that Jude Mohammad believed that "he was really called to going overseas and fighting, and he called to revolting against the government and to fighting American troops overseas." (Trial Tr. Day 8 (DE 2217-10) 145:23-146:19). Eliason also testified that petitioner shared the same views as Jude Mohammad and that petitioner watched propaganda videos advocating "raising up and fighting against American forces who were overseas." (Trial Tr. Day 8 (DE 2217-10) 152:1-22).

Contrary to petitioner's assertion, Amber's proffered testimony neither adds new evidence the jury had not considered nor rebuts the testimony of Dylan Boyd and others that Jude Mohammad also intended to travel to Pakistan to engage in violent jihad. Therefore, petitioner has failed to show a reasonable probability that, but for counsel's failure to interview

▉▉▉▉▉

12

■■■■■■

Amber, the outcome of the trial would have been different. The court grants the government's motion for summary judgment on petitioner's ineffective assistance of counsel claim for purported failure to interview Amber Mohammad.

   c. Defense Counsel's Failure to Investigate Petitioner's Trips to Jordan

Petitioner asserts in his objection to the M&R that counsel failed to adequately investigate and present evidence as to his 2006 and 2007 trips to Jordan. He argues that several witnesses, including Mohammad Shibley Yaghi, Ahmed Yaghi, Aamir Tariq, Walid Musafer Al-Shishani, Adnan Shishani, and Saleh Hamdan and Naji Sarsour would have presented evidence that he was searching for a wife in his 2006 trip to Jordan, that counsel's performance was deficient because he did not investigate or present the testimony of these individuals in defense, and that but for the exclusion of these witnesses, the outcome of his trial would have been different. Additionally, petitioner argues that, had counsel interviewed and introduced testimony of Adnan Shishani and Walid Musafer Al-Shishani, their testimony would have shown that petitioner's 2006 trip to Jordan was benign.

None of petitioner's proffered testimony shows a reasonable probability of changing the outcome of petitioner's case. Mohammad Shibley Yaghi, petitioner's cousin once removed, mentions no interest in marriage at all. (See Mohammad Shibley Yaghi Decl. (DE 2217–14); Adnan Shishani Decl. (DE 2217–17)). The declarations of Saleh Hamdan and Naji Sarsour only show that they met their own wives in the Middle East. (See Saleh Hamdan Decl. (DE 2217–20) ¶ 5; Naji Sarsour Decl. (DE 2217–21) ¶ 5). None of these declarations address the issue of

petitioner's intent in traveling to Jordan in 2006. These individuals' testimony not being introduced at trial did not prejudice petitioner.

The only declarations that petitioner submits to the court which even address petitioner's intent are those of Aamir Tariq and Walid Musafer Al-Shishani. Aamir Tariq testifies "[d]uring my meetings with [petitioner] in Jordan we discussed that he was in Jordan to visit his relatives and find a bride." (Aamir Tariq Decl. (DE 2217–15) ¶ 8). Walid Musafer Al-Shishani testifies "I was aware that [petitioner] was traveling to Jordan and my understanding was that he was going there to find a wife." (Walid Musafer Al-Shishani Decl. (DE 2217–19) ¶ 13). Ahmed Yaghi, petitioner's uncle, testifies that a relative of petitioner in Jordan suggested that he find a wife in Jordan, and that petitioner sought to arrange a marriage. (Ahmed Yaghi Decl. (DE 2217–13) ¶¶ 4, 12, 13). However, counsel's alleged failure to investigate or present this evidence at trial does not prejudice petitioner because the notion that petitioner was seeking a wife was considered by the jury.

Petitioner's counsel mentioned in his opening statement that petitioner was attempting to find a wife (Trial Day 2 Tr. (DE 2217–6) 130:25–131:8). During trial counsel's cross-examination of FBI Special Agent Michael Greer, the government's witness acknowledged that petitioner made internet searches about finding a wife, conducted email conversations with regard to becoming married, and met with people in Jordan about becoming married. (Trial Day 6 Tr. (DE 2217–7) 130:8–131:2). Moreover, Majed Musa testified at trial that petitioner told him he was going to Jordan "to get married." (Trial Day 5 Tr. (DE 1742) 134:17–18). This evidence was considered by the jury and petitioner was still convicted. Therefore, the

■■■■■

declarations of Aamir Tariq and Walid Musafer Al-Shishani asserting petitioner's intent to find a wife during his 2006 trip to Jordan do not show a reasonable probability that the outcome of petitioner's trial would be different.

Similarly, petitioner asserts that counsel failed to investigate or present testimony from Adnan Shishani, Walid Al-Shishani, Bryant Rivera, Saleh Hamdan, and Naji Sarsour and failing to introduce that evidence prejudiced his case because such evidence would have shown that he was not traveling to engage in violent jihad. First, petitioner argues that Adnan Shishani and Walid Al-Shishani would have testified that going to Mosque Al-Shishani was benign because "it is used by the locals [of Zarqa] as a meeting point." (Walid Al-Shishani Decl. (DE 2217–19) ¶ 12; see Adnan Shishani Decl. (DE 2217–17) ¶¶ 6–7). These statements, taken as true, merely establish that the mosque was a well-known meeting point in the city. The statements do not speak at all to petitioner's intent in going to the mosque, nor do they contradict the testimony of Daniel Boyd, where he testified that he recommended to petitioner that he go to the mosque to meet others seeking to engage in violent jihad. (Trial Day 7 Tr. (DE 2217–3) 62:15–63:7; Trial Day 8 Tr. (DE 2217–10) 31:17–33:22). Therefore, failure to introduce the testimony did not prejudice the outcome of petitioner's trial.

Petitioner also asserts that Bryant Rivera, Saleh Hamdan, and Naji Sarsour's testimony showed that the term "good brother" or "best brother" was not a code word for a violent jihadist. Petitioner argues that, had counsel presented these individuals as witnesses, they would have testified that those terms mean "a good Muslim and a person of good character." (Bryant Rivera Decl. (DE 2217–18) ¶ 8; see Saleh Hamdan Decl. (DE 2217–20) ¶ 7; Naji Sarsour Decl. (DE

███████

2217–21) ¶ 11). However, these statements do not meaningfully contradict Daniel Boyd's testimony. The essence of a code word is that it has some additional meaning known only to the speaker and listener in addition to those discernible to other individuals. Here, Daniel Boyd testified that, when petitioner asked him where he could find the "best brothers" in Jordan, he understood petitioner to mean people that "were going to pray, and you know, keep [petitioner] within the bonds of fellowship and Islam and these kind of things. But, yes, up to and including the understood obligation of jihad at that point." (Trial Day 7 Tr. (DE 2217–3) 63:3–7; see Trial Day 8 Tr. (DE 2217–10) 32:14–21). The statements offered by petitioner do not show a reasonable probability that, but for counsel's alleged failure to investigate and present the statements into evidence, the outcome of trial would be different.

Petitioner fails to address the evidence against him at trial concerning his 2007 trip to Jordan. While discussing his travel plans, petitioner prompted Daniel Boyd and Hassan to show him a rifle hidden in the modified center console of the vehicle in which they were traveling and told petitioner they used it for "target practice and training." (Trial Day 7 Tr. (DE 2217–3) 88:11–89:21). Daniel Boyd understood such training to include preparing "to go and fight somewhere." (Id. at 89:4–9).

For all of these reasons, petitioner's ineffective assistance of counsel claim fails as to counsel's alleged failure to investigate his trips to Jordan. Therefore, the court dismisses petitioner's claim under Rule 12(b)(6).

███████

d.  Defense Counsel's Failure to Review Recording of Meeting Between Jude
Mohammad and Daniel Boyd

Petitioner also raises in support of his ineffective assistance of counsel claim that trial
counsel did not adequately cross-examine Daniel Boyd, the architect of the conspiracy to engage
in violent conflict against the United States and the government's primary witness. Petitioner
asserts counsel should have used a recorded conversation wherein Boyd made statements
showing prior knowledge of Jude Mohammad. Petitioner contends that these statements prove
petitioner did not introduce Jude Mohammad to Daniel Boyd, and therefore there is no evidence
that he intended to violate the laws for which he is convicted. Petitioner also contends that he is
not procedurally barred from raising his claim, and that the court should address the merits of his
claim.

Even assuming without deciding that petitioner has not procedurally defaulted on his
claim that trial counsel was ineffective by not reviewing the recording and not cross-examining
Daniel Boyd on it, petitioner's claim fails on the merits, because petitioner has failed to show
that a reasonable probability that, but for counsel's allegedly deficient performance, the outcome
of the trial would have been different.

First, petitioner contends that had counsel used the recording at trial, it would have
impeached Daniel Boyd's testimony that petitioner introduced him to Jude Mohammad. In the
recording, Daniel Boyd does refer to having previously met Jude Mohammad at the community
center. However, the recording in this case does not impeach Daniel Boyd's trial testimony,
where he testified that he "saw [Jude Mohammad a couple times at the Islamic center" before
meeting him through petitioner. (Trial Day 7 Tr. (DE 2217-3) 112:4-7).



Additionally, counsel developed the argument that petitioner did not introduce Jude Mohammad to Daniel Boyd on cross-examination of Hysen Sherifi ("Sherifi"), who testified that petitioner had come to Daniel Boyd's store in May 2008 to wrestle Jasmin Smajic. (See Trial Day 14 Tr. (DE 2217-8) 100:19-101:7). Sherifi testified that he was aware that petitioner "was there to wrestle with Smajic." (Trial Day 14 Tr. (DE 2217-8) 101:5-7). Sherifi also testified that petitioner "just purchased a few things, and asked for water," did not discuss "killing or maiming anybody" or "providing material support to anybody," and that "he did not have any discussions with anybody at that time." (See Trial Day 14 Tr. (DE 2217-8) 101:8-21).

In the face of overwhelming evidence, the transcript of the recording would add little to the evidence presented to the jury, failing to show a reasonable probability that the outcome in the case would have been different. Consequently, the court dismisses petitioner's ineffective assistance claim under Rule 12(b)(6).

3.     Alleged Giglio Violation

Petitioner's second ground for relief in his § 2255 motion is that he was denied evidence by the prosecution which would have allowed him to impeach Kohlmann.

■

"The Due Process Clause requires the prosecution to disclose upon request evidence that is favorable to the defense and material to guilt or punishment." United States v. Sterling, 724 F.3d 482, 511 (4th Cir. 2013) (citing United States v. Higgs, 663 F.3d 726, 734–35 (4th Cir.2011)). Evidence is favorable if it is exculpatory, Brady v. Maryland, 373 U.S. 83 (1963), or if it may be used for impeachment, Giglio v. United States, 405 U.S. 150 (1972). "The government breaches its duty if it fails to produce evidence that it is obligated to turn over to the defense, or if it fails to timely comply with a discovery order in turning over required evidence." Sterling, 724 F.3d at 511. "A failure to disclose violates due process only if the evidence in question (1) is favorable to the defendant because it is either exculpatory or impeaching; (2) was suppressed by the government; and (3) is material in that its suppression prejudiced the defendant." Id. (citing Strickler v. Greene, 527 U.S. 263, 281–82 (1999); Vinson v. True, 436 F.3d 412, 420 (4th Cir. 2006)). Undisclosed evidence is material when its cumulative effect is such that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Kyles v. Whitley, 514 U.S. 419, 433–34 (1995) (internal quotation marks and citation omitted). A reasonable probability is one sufficient to undermine confidence in the outcome. Id. at 434.





None of the documentation contained in ███████ addresses the facts of this case or the conduct of petitioner████ ████████████████████. (See ████████████ (United States v. Kabir, ED No. CR 12-00092(B)-VAP *2 (C.D. Cal. Aug. 18, 2014))).

Kohlmann testified at trial that "[s]ince approximately 2003, I have provided ongoing support and assistance to the FBI in a number of different matters." (████████████ ██ Trial Tr. Day 6 at 189:15-19). Additionally, Kohlmann testified as to how much money that he had been paid by the FBI as compensation for his work. (██████████ Trial Tr. Day 6 at 189:20-25). Kohlmann's testimony provided the jury with the information it needed to evaluate Kohlmann's testimony for bias: that Kohlmann had a prior relationship working with law enforcement, and that he was paid for his work. Thus, the ████████████ ████████████████████████ are not material, because there is no "reasonable probability that, had the evidence been disclosed to the defense, the result of the

20

proceeding would have been different." Kyles, 514 U.S. at 433–34 (internal quotation marks and citation omitted).

Petitioner asserts that ██████████████ is "critical to a jury's assessment of Mr. Kohlmann's credibility, bias, and independence." (See Dratel Decl. (DE 2217-32) ¶ 25). Petitioner's assertion is without merit. Nondisclosure ████████████████████ ██████████████ did not prejudice petitioner, because the jury already knew of the risks to bias, credibility and independence posed by the working relationship. ████████████ ████████ (United States v. Kabir, ED No. CR 12-00092(B)-VAP *2-3 (C.D. Cal. Aug. 18, 2014))). Consequently, the court dismisses petitioner's second ground for relief under § 2255 for failure to state a claim pursuant to Rule 12(b)(6).

   4.   Admission of Kohlmann's Expert Testimony

Petitioner's third alleged ground for relief is that Kohlmann's testimony amounts to "junk science." (Pet. Supp. Mem. (DE 2290) at 9–10). Challenging the admissibility of Kohlmann's testimony in petitioner's § 2255 petition is procedurally barred because the issue was raised on direct appeal and rejected by the court of appeals. United States v. Hassan, 742 F.3d 104, 130–31 (4th Cir. 2014); United States v. Roane, 378 F.3d 382, 396 n.7 (4th Cir. 2004) (citing Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir. 1976)). Petitioner's third ground for relief in his § 2255 petition is dismissed for failure to state a claim under Rule 12(b)(6).

   5.   Actual Innocence

Petitioner does not specifically object to any finding of the M&R as to his claim that he is actually innocent. See Orpiano, 687 F.2d at 47. The M&R finds that petitioner is procedurally

barred from asserting his actual innocence, and that petitioner failed to show actual innocence based on the strength of the evidence against him. (See M&R (DE 2268) at 36-38). The court finds no clear error in the M&R and adopts the analysis set forth therein. Petitioner's claim of actual innocence is dismissed under Rule 12(b)(6).

6.    Government Misconduct

Petitioner does not specifically object to any finding of the M&R as to his claim that the government threatened witnesses. See Orpiano, 687 F.2d at 47. The M&R finds that petitioner's claim is procedurally barred because he did not raise the issue on direct appeal, and he does not allege facts supporting his allegations of new evidence and his attorney's failure to assert the claim. (See M&R (DE 2268) at 38). The court finds no clear error in the M&R and adopts the analysis set forth therein. Petitioner's claim of government misconduct is dismissed for failure under Rule 12(b)(6).

C.    Access to Sealed Documents

On January 5, 2018, petitioner's counsel moved for access to sealed documents "to ensure substantive accuracy in its references to the actions of [p]etitioner's trial counsel." (Mot. To Access (DE 2271) at 1). Subsequent to filing the motion, counsel filed his motion to withdraw from the case on January 23, 2018, which was granted by the court on February 8, 2019. In the meantime, instead of continuing to seek access to the sealed information, petitioner filed his objections to the magistrate judge's M&R on February 7, 2018. Where the court has disposed of petitioner's § 2255 motion, and where counsel withdrew from the action, counsel's previous motion for access to sealed documents is denied as moot.

D.   Certificate of Appealability

A certificate of appealability may issue only upon a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The petitioner must demonstrate that reasonable jurists could debate whether the issues presented should have been decided differently or that they are adequate to deserve encouragement to proceed further. Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000). After reviewing the claims presented on collateral review in light of the applicable standard, the court finds that a certificate of appealability is not warranted.

## CONCLUSION

For the foregoing reasons the government's motion to dismiss, or in the alternative, for summary judgment (DE 2235) is GRANTED, and petitioner's motion to vacate, set aside, or correct his sentence (DE 2207) is DENIED. Petitioner's motion for access to sealed documents (DE 2271) is DENIED AS MOOT. A certificate of appealability is DENIED. The government is DIRECTED to serve on petitioner a redacted copy of this order within 21 days of the date below. The clerk is DIRECTED to close this case.

SO ORDERED, this the 29th day of March, 2019.

LOUISE W. FLANAGAN
United States District Judge

23

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:09-CR-00216-FL-8
No. 5:15-CF-523-FL

ZIYAD YAGHI                          )
                                     )
        Petitioner,                  )
                                     )
        v.                           )          CERTIFICATE OF SERVICE
                                     )
UNITED STATES OF AMERICA,            )
                                     )
        Respondent.                  )


        This is to certify that I have this 19th day of April 2019, served a copy of the

foregoing redacted unclassified version of the classified order denying petitioner's

motion (DE 2207) to vacate, set aside, or correct his sentence upon the defendant by

mailing a copy of the same via the United States Postal Service to:

        Ziyad Yaghi, Register Number 51771-056
        FCI Ray Brook
        Federal Correctional Institution
        P.O. Box 900
        Ray Brook, NY    12977


                        ROBERT J. HIGDON, JR.
                        United States Attorney

                By:    /s/ Jason M. Kellhofer
                        JASON M. KELLHOFER
                        Assistant United States Attorney
                        United States Attorney's Office
                        310 New Bern Avenue, Suite 800
                        Raleigh, NC 27601
                        Ph: 919-856-4530;Fax: 919-856-4487
                        Email: jason.kellhofer@usdoj.gov
                        OH Bar # 0074736