UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA (WESTERN DIVISION)

CASE NO.: 5:09-CR-00216-FL-8

UNITED STATES OF AMERICA,

v.

ZIYAD YAGHI,

Defendant.

FILED
MAR 2 2 2021
PETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC
BY _____ DEP CLK

MOTION FOR RESENTENCING PURSUANT 18 U.S.C. § 3582(c)(1)(A)(i)

TABLE OF CONTENTS

INTRODUCTION..................................................1

FACTUAL BACKGROUND PROCEEDING YAGHI'S ORIGINAL SENTENCING.....................2

YAGHI HAS EXHAUSTED HIS ADMINISTRATIVE REMEDIES UNDER 18 U.S.C. § 3582(c)(1)(A)(i)..................................................3

BECAUSE THE JURY RETURNED A GENERAL VERDICT THAT DOES NOT SPECIFY UNDER WHICH PRONG OF 18 U.S.C. § 956(a) IT BASED ITS JUDGMENT, YAGHI'S ADVISORY GUIDELINE RANGE SHOULD HAVE BEEN CALCULATED ON THE LEAST-PUNISHABLE OFFENSE UNDER THE STATUTE, i.e., CONSPIRACY TO MAIM, SETTING A 35 YEAR STATUTORY MAXIMUM, PURSUANT APPRENDI v. NEW JERSEY, 530 U.S. 466, 490 (2000)................................4

THE 32 YEAR SENTENCE IMPOSED UPON YAGHI IS DISPROPORTIONATE TO OTHER DEFENDANTS CONVICTED OF SIMILAR AND MORE CULPABLE CONDUCT................6

YAGHI'S DEMONSTRATED ESCHEWAL OF HIS YOUTHFUL FOLLY OVER THE LAST 12 YEARS OF HIS IMPRISONMENT IS EXTRAORDINARY AND COMPELLING............................7

# INTRODUCTION

It's nothing new. During World War II, Japanese citizens were placed in internment camps, right here in America. Elsewhere, Jewish people were marked with a Yellow Star. In the early 2000s, people of middle eastern descent were the pariaha. Alas, it's fundamental human nature. A xenophobia born out of the basest survival instincts: Terrorists are bad. Many terrorists are middle eastern. Hence, middle eastern people are the enemy. Such is the logic of the frenzied hunt that became a domestic war against middle eastern young men back at the turn of the millenium. (See: "Is History Repeating Itself? Sentencing Young American Muslims in the War on Terror." The Yale Law Journal. By: Sameer Ahmed [2017])

Against that backdrop, consider then-18-year-old Ziyad Yaghi, who, back in 2006, wasn't even a man grown. Rather, he was an adolescent, of middle eastern descent and raised in the muslim faith. Imagine the bullying, the prejudice belittling, Yaghi faced each day of his highschool years directly following the 9/11 tragedy and the nascent War on Terror. Imagine the turmoil and confusion alive in his burgeoning teenage mind. Now, recall that, at that time, Federal Agents, actively seeking a target, began investigating this kid. What did they uncover? Why, they uncovered nothing more than an angst-filled young man desperately seeking an identity, gasping to be accepted. And, accepted he was, albeit by men of not so innocent notions. Ultimately, after gathering the musings of a young, misguided man, i.e., some admittedly frightening rap lyrics, and, perhaps, strong rhetoric, painted in a light that is gilded by law enforcement zealousness, the government ensnared Yaghi in a loosely-structured terrorism conspiracy. There was never any real, flesh and blood, victim, and no one was harmed. Yet, after trial before this Court, Yaghi was convicted under 18 U.S.C. §§ 956, 2339A, and sentenced to more than 30 years. The evidence was heard by a jury and confirmed on appeal,

all that's water under the bridge. United States v. Hassan, 742 F.3d 104 (4th Cir. 2014)

And, Yaghi doesn't seek to rehash the facts here.

Rather, pursuant 18 U.S.C. § 3582(c)(1)(A)(i), Yaghi asks this Court to consider that hindsight is 20/20. A lot has changed. After all, the government itself admits Yaghi was not a part of his co-conspirator's "inner circle" by late 2007. Id. at 120

And, though he is convicted of maintaining ties with others beyond that point, it is beyond dispute that any such conduct ceased by 2009, when Yaghi was arrested and confined. Id.

Thus, Yaghi remains imprisoned for more than 30 years for some inchoate offenses based on an aggressive investigation into his folly-filled associations and whimsical teenage ideas -- ideas that were cultivated by a culture that, at least at the time, hated everything about his nationality and heritage, and men who capitalized off that to suit their own ends. Now, he asks this Court to consider the extraordinary circumstances of these facts and find that they compel his release to government supervision forthwith pursuant § 3582(c)(1)(A)(i). See United States v. McCoy, 981 F.3d 271 (4th Cir. Dec. 2, 2020) (Holding that District Courts have unlimited authority to determine what is compelling and extraordinary under 18 U.S.C. § 3582(c)(1)(A)(i) and requiring a fresh evaluation of the sentencing factors under 18 U.S.C. § 3553(a), as applied to the facts as they stand today.)

### FACTUAL BACKGROUND PROCEEDING YAGHI'S ORIGINAL SENTENCING

Early on, Yaghi was imprisoned in some of the most violent Federal Penitentiaries in the Nation due to the Federal Bureau of Prison's (FBOP's) point-based classification system, which awarded Yaghi a high custody score due to his young age and offense(s) of conviction. Despite the terrible violence in places such as USP Coleman in

2

Florida and USP Florence in Colorado (prisons far from Yaghi's home and family), Yaghi stayed above the fray, and availed himself of myriad programming, educational, and job opportunities -- no small feat in such places. Ultimately, Yaghi's clear-conduct caused his point-based score to reduce down to require his placement in medium-security, which is where he is currently confined, at FCI-Ray Brook, in New York. While at FCI-Ray Brook, Yaghi has continued to participate in available programming, educational, and employment opportunities. However, beginning in early 2020, the FBOP entered a prolonged modified lockdown due to COVID. For many months, all prisoners were confined to their cells for all but 20 minutes a day to shower or call home. As the virus tore through the prison, various levels of restrictions have been imposed. To date, FCI-Ray Brook continues to confine its prisoners to overcrowded cellblocks and multiple-occupant cells, without regard for CDC recommendations. Social distancing and proper hygiene is impossible. Especially since Ray Brook has increased its prisoner population by more than 200 inmates over the last several months of the most-severe COVID outbreaks. (See Exhibit A, attached); and see United States v. Douglas, 2021 U.S. Dist. LEXIS 10755, at 20, 22 (Dist. of DC, January 21, 2021) (Detailing horrid conditions at FCI-Ray Brook and finding same relevant to release of convicted muderer under § 3582.)

## YAGHI HAS EXHAUSTED HIS ADMINISTRATIVE REMEDIES UNDER 18 U.S.C. § 3582(c)(1)(A)(i).

Frankly, the administrative remedy process within the FBOP is a farce. See United States v. McCoy, 981 F.3d 271; 2020 U.S. App. LEXIS 37661, at 7 (4th Cir. Dec. 2, 2020); United States v. Brooker, 976 F.3d 228, 232 (2d Cir. 2020)

Nevertheless, Yaghi has requested the Warden submit a motion under § 3582 on his behalf, and 30 days have lapsed since Yaghi has made that request. Id. (See Exhibit B)

3

BECAUSE THE JURY RETURNED A GENERAL VERDICT THAT DOES NOT SPECIFY UNDER WHICH PRONG OF 18 U.S.C. § 956(a) IT BASED ITS JUDGMENT, YAGHI'S ADVISORY GUIDELINE RANGE SHOULD HAVE BEEN CALCULATED ON THE LEAST-PUNISHABLE OFFENSE UNDER THE STATUTE, i.e., CONSPIRACY TO MAIM, SETTING A 35 YEAR STATUTORY MAXIMUM, PURSUANT APPRENDI v. NEW JERSEY, 530 U.S. 466, 490 (2000).

18 U.S.C. § 956(a) lists three (3) separate offenses, i.e., Murder, Kidnap, or Maim. Each of these offense prongs sets a different Statutory sentencing range -- Conspiracy to Murder imposes 0-LIFE; Conspiracy to Kidnap imposes 0-LIFE; but, Conspiracy to Maim imposes 0-35 years. Id.

Here, the jury rendered a general verdict without specifying on which prong of § 956(a) it found Yaghi guilty. (Dkt. No. 1508) Thus, the default penalty provision under § 956(a) must apply, and that default Statutory maximum must be the 35 years under Conspiracy to Maim, because it is the least-punishable offense under the Statute. Cf. United States v. Collins, 415 F.3d 304, 312-315 (4th Cir. 2005) (Analyzing the effect of a general verdict in a drug conspiracy and holding that the least-punishable Statutory sentencing range must be applied to set the Statutory maximum sentence under Apprendi.)

Given the default Statutory maximum of 35 years applies, the controlling advisory guideline provision in this case should have been, and is, U.S.S.G. § 2X1.1 (general conspiracy). Following the instruction of U.S.S.G. § 1B1.2, Application Note 4, runs contrary to Apprendi because it permits the Court to substitute itself for the jury's determination of which provision of § 956(a) Yaghi is convicted of. 530 U.S. at 490

Thus, the advisory guideline for Conspiracy to Maim, U.S.S.G. § 2A2.2 (aggravated assault), controls and dictates a BOL of 14. Id.

When sentencing Yaghi, the Court overlooked the implications of the general verdict vis-a-vis Apprendi, consequently imposing a LIFE Statutory maximum as its guidelines starting point. See Dkt. No. 1655 ("[T]he court concluded that

4

the [probation] officer correctly determined the advice of the Guidelines to be... life on count 2.")

Respectfully, this was error.

And, though Yaghi is sentenced below the 35 year Statutory maximum, this error was prejudicial because the Court must always begin its guidelines analysis at the proper starting point, which here was CHC III, BOL 14, with a Stautory maximum of 35 years. Had the Court properly calculated the guideline range under these factors, which it is required to do as a matter of law, it would likely have arrived at an entirely different sentencing result. Cf. In re Hubbard, 825 F.3d 225, 235 (4th Cir. 2016) ("[A]lthough available sentences are technically controlled by Statute, the Sentencing Guidelines hardly represent a mere suggestion to courts about proper sentences defendants should receive.")

Yaghi has not previously argued this, however, under § 3582(c)(1)(A)(i), this Court must reasses the factors listed under § 3553(a) anew, one of which is consideration of the proper guidelines calculation. Cf. United States v. Hall, 2020 U.S. Dist. LEXIS 235238, at 7 (E.D. of North Car., Dec. 15, 2020) (Flanagan, J.); McCoy, 2020 U.S. App. LEXIS at 12

Additionally, given the difference this miscalculation makes in the available sentences under which Yaghi may be punished, the Court is free to consider this extraordinary and compelling, and previously uncorrected, error in deciding this motion. McCoy, 2020 U.S. App. LEXIS at 27 ("[D]istrict courts are 'empowered...to consider any extraordinary and compelling reason for release that a defendant might raise.'")

5

## THE 32 YEAR SENTENCE IMPOSED UPON YAGHI IS DISPROPORTIONATE TO OTHER DEFENDANTS CONVICTED OF SIMILIAR AND MORE CULPABLE CONDUCT.

In line with its reassesment of the § 3553(a) factors and above guidelines recalculation, this Court should consider the terrible incongruity of imposing 32 years imprisonment upon a youth, now 12 years older, in comparison to the terms of confinement imposed upon others convicted of similar and/or more culpable conduct nationwide. Indeed, this Court has imposed far less severe sentence in more significant circumstances, where it found defendants to have repeatedly sought "to travel overseas for the purposes of violent jihad[,]" yet issued judgments of 98 months and 108 months, respectively, against those defendants. See United States v. Brown, No. 1:14-cr-00058 (E.D.N.C.)

Such examples are myriad. See United States v. Muhtorov, 329 F. Supp. 3d 1289, 1306-1313 (Dist. Colorado, Aug. 30, 2018) (Listing and comparing terrorism-related sentences, and classifying defendant as a mid-level terrorism defendant.)

By comparison to the cases listed and analyzed above, Yaghi's youthful, fleeting, infatuation with ideals he had been spoonfed and is worlds away from now, does not justify the draconian imprisonment he is condemned to. After all, the National average sentence for murder was 291 months in 2018 -- years less than the sentence imposed upon Yaghi consequent his passionate youthful ideas. Cf. United States v. Decator, 2020 U.S. Dist. LEXIS 60109, at n. 9 (Dist. Maryland, April 6, 2020)

Even John Walker Lindh, the so-called "American Taliban," an American citizen caught actively fighting for the Taliban post 9/11, received a sentence less severe than Yaghi did. And, he has been sentenced to more time in prison than other more culpable co-conspirators in this case, e.g., Boyd (who received 18 years imprisonment)

Accordingly, Yaghi implores the Court to reconsider these disparities when

6

conducting its de novo sentencing analysis under McCoy, Supra.

YAGHI'S DEMONSTRATED ESCHEWAL OF HIS YOUTHFUL FOLLY OVER THE LAST 12 YEARS OF HIS IMPRISONMENT IS EXTRAORDINARY AND COMPELLING.

Over the last 12 years Yaghi has avoided any serious disciplinary issues in environment's extremely prone to violence. Additionally, he has completed myriad recidivism-risk reduction and ongoing education programs, far too many to list here. (See Exhibit C) This is not the norm -- especially not for so young a man sentenced to so long a time. Recall, also, despite extreme COVID restrictions imposed on prisoner movement for more than a year now, Yaghi has still maintained clear conduct, programming completion, and educational employment as a GED tutor. (Exhibit C) This Court is instructed by decisions like McCoy and Brooker, Supra., to analyze the § 3553(a) factors in a contemporary lens, considering the facts and circumstances as they exist today. Cf. Hall, 2020 U.S. Dist. LEXIS 235238, at 7 (Flanagan, J.)

Yaghi's behavior and determination to better himself, despite the abysmal circumstances he is confronted with each day, is extraordinary and compelling, and he prays this Honorable Court exercise its discretion to revisit his sentence with a measure of mercy and grace for all of the foregoing reasons.

March 15, 2021

Respectfully submitted,

Ziyad Yaghi
Prisoner No.: 51771-056
FCI-Ray Brook, P.O. Box 900
Ray Brook, NY 12977

7

CERTIFICATE OF SERVICE

I. Ziyad Yaghi, swear, under the pains and penalties of perjury, pursuant 28 U.S.C. § 1746, that I caused the foregoing motion to be served upon the United States Attorney for the Eastern District of North Carolina (Western Division) by placing same in the Prison Mailbox, appropriately addressed, and affixed with First Class U.S. Postage, pre-paid, on today.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY MARCH 15, 2021.

X: _____
     Ziyad Yaghi

8

Case 5:09-cr-00216-FL   Document 2362   Filed 03/22/21   Page 9 of 9